IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JENNIFER HARRIS, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| vs. | § | Civil Action 4:21-cv-1651 |
| | § | |
| FEDEX CORPORATION, | § | **JURY DEMANDED** |
| | § | |
| *Defendants*. | § | |

**PLAINTIFF'S ORIGINAL**
**COMPLAINT AND JURY DEMAND**

TO THE HONORABLE COURT:

Plaintiff Jennifer Harris presents her Complaint for unlawful discrimination in violation of 42 U.S.C. § 1981.

**PARTIES**

1. Jennifer Harris is a citizen and resident of the United States, residing in Tarrant County, Texas.

2. FedEx Corporation is a domestic corporation and may be served with process by serving its registered agent, C T Corporation System, at its registered address, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

**JURISDICTION AND VENUE**

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331.

4. This is a suit authorized and instituted pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); and declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5. Venue of this Court is pursuant to 28 U.S.C. § 1391(b), the judicial district in which a substantial part of the events giving rise to this claim occurred.

## BACKGROUND

### Foreseeability of the Problem

6. Discrimination and retaliation are foreseeable because employers know that discrimination and retaliation are prevalent in the United States.

7. A Glassdoor survey reports that 61 percent, or about three in five U.S. employees have witnessed or experienced discrimination in the workplace.[1]

8. The same survey reports that 42 percent of employed adults in the U.S. have experienced or witnessed racism in the workplace; the highest percentage of the four countries surveyed.[2]

9. A report noted by the EEOC states that 75 percent of employees who spoke out against workplace mistreatment faced some form of retaliation.[3]

10. A report by Ethics & Compliance Initiative finds that when employees at all levels are held accountable, retaliation is not as prominent; however, the

[1] https://about-content.glassdoor.com//app/uploads/sites/2/2019/10/Glassdoor-Diversity-Survey-Supplement-1.pdf (Last visited April 14, 2021).

[2] *Id.*

[3] https://www.eeoc.gov/select-task-force-study-harassment-workplace#_ftn65 (Citing Lilia M. Cortina & Vicki J. Magley, *Raising Voice, Risking Retaliation: Events Following Interpersonal Mistreatment in the Workplace*, 8:4 J. Occupational Health Psychol. 247, 255 (2003)).

retaliation rate is only 16 percent when managers are held accountable compared to approximately 40 percent when managers are not held accountable.[4]

**The Purpose of the Law**

11. Foreseeability is important because the law is meant to be preventative.

12. The federal anti-discrimination laws primary objectives are prophylactic, chiefly aimed not to provide redress but to avoid harm.

13. Employers may be liable for punitive damages who do not make good-faith efforts to prevent discrimination in the workplace to accomplish the objective of motivating employers to detect and deter discrimination violations.

14. The right to expect that corporations hire human resources (HR) representatives qualified to follow discrimination and retaliation laws is essential to our community.

15. The right to expect that corporations will adequately train managers to follow discrimination and retaliation law is essential to our community.

16. The right to expect that corporations will supervise managers to follow discrimination and retaliation law is essential to our community.

17. The right to expect that corporations will prevent any form of discrimination or retaliate against persons who report discrimination is essential to our community.

[4] https://www.ethics.org/knowledge-center/increasing-employee-reporting-free-from-retaliation/ (Last visited April 14, 2021).

18. The right to expect that corporations must care about workplace laws to protect us from damages is essential to our community.

**FedEx Is Worldwide**

19. FedEx ships and delivers packages of all shapes and sizes in the United States and all over the world.

20. FedEx has offices around the world employing over 600,000 employees.

21. FedEx knows that discrimination and retaliation are foreseeable as potential problems in its workplace.

**FedEx's Serious System Failure**

22. FedEx hires HR personnel who are not qualified to follow policies prohibiting discrimination and retaliation laws.

23. FedEx fails to adequately train its managers to follow policies prohibiting discrimination and retaliation laws.

24. FedEx fails to supervise its managers to ensure they follow policies prohibiting discrimination and retaliation laws.

**Consequences of Failure to Enforce**

25. Because FedEx fails to hire qualified HR personnel and adequately train and supervise managers, the corporation discriminates and retaliates against by first disciplining the employee because of race and then terminating the employee after the employee reported concerns of violations.

26. FedEx discriminated against and fired Jennifer Harris for opposing discrimination in the workplace, although she was recognized as a high performer and one of the most successful sales managers at the company.

27. If FedEx had evaluated Ms. Harris equally with her peers, she would not have been terminated.

28. But for ignoring how Ms. Harris compared with her peers, she would still be employed at and contributing to the success of FedEx.

29. Although foreseeable, FedEx failed to prevent discrimination against Ms. Harris.

30. Although foreseeable, FedEx failed to prevent retaliation against Ms. Harris when she reported discrimination.

31. FedEx failed to conduct a fair investigation of Ms. Harris's complaints.

32. FedEx chose not to talk to all important witnesses in its investigation of her complaints.

33. FedEx chose not to look at all important documents in its investigation of her complaints.

34. FedEx chose not to evaluate Ms. Harris with her peers in its investigation of her complaints.

35. FedEx chose not to adequately train mangers on the signs to recognize discrimination.

36. FedEx chose not to adequately train mangers on the signs to recognize retaliation.

37. FedEx failed to monitor the workplace for signs of discrimination because managers and employees did not know how to recognize and prevent discrimination.

38. FedEx failed to monitor the workplace for signs of retaliation because managers and employees did not know how to recognize and prevent retaliation.

39. FedEx mangers recognize discrimination if someone makes racist comments, but managers are not adequately trained to look for signs of discrimination absent racial comments.

40. FedEx chose not to adequately train managers that employees who discriminate are not going to admit to discriminating against employees.

41. FedEx chose not to adequately train managers that retaliators are not going to admit to retaliating against employees.

42. FedEx chose not to adequately train managers that people are afraid to report discrimination and retaliation because the discrimination and retaliation will only get worse.

**History of Discrimination and Retaliation**

43. Ms. Harris is not the only person to have complained of discrimination or retaliation at FedEx.

44. Many other persons have complained of discrimination and retaliation at FedEx.

45. FedEx does not adequately keep records of prior discrimination or retaliation complaints.

46. In continuing rather than eliminating retaliation, Ms. Harris became the person being investigated rather than the manager being complained about.

47. FedEx managers ignored the signs of discrimination and retaliation and did not respond to prevent the discrimination and retaliation.

48. FedEx ignored Ms. Harris's excellent history of performance at FedEx.

49. Ms. Harris was promoted throughout her tenure at FedEx until FedEx placed Michelle Lamb as Ms. Harris's manager.

50. FedEx ignored Ms. Lamb's completely different attitude about Ms. Harris from other managers.

51. Ms. Lamb ignored Ms. Harris's performance, and treated her differently than other employees who were not African American, asking her to step down to a lower position because she was "so good" at what she was doing.

52. When Ms. Harris declined to be demoted, the negative treatment escalated, and Ms. Lamb removed some of Ms. Harris's commissions.

53. When Ms. Harris complained to HR about the discriminatory treatment, HR began to retaliate.

54. FedEx refused to protect Ms. Harris from retaliation during the investigation; instead, she became the target of both HR and management for adverse actions.

**Policies Do Not Enforce Themselves**

55. FedEx has written polices created for the purpose of following laws against discrimination and retaliation.

56. FedEx knows that the written polices do not enforce themselves.

57. FedEx's policies promised to protect Ms. Harris from discrimination and retaliation.

58. FedEx violated its own policies by discriminating and retaliating against Ms. Harris.

59. FedEx breached its promise to protect Ms. Harris from discrimination and retaliation.

60. FedEx refused to examine records of Ms. Harris's evaluations as compared to other persons similarly situated to her.

61. FedEx refused to compare Ms. Harris's good performance with other persons similarly situated to her who were not African American.

**Ms. Harris Was a Rising Star**

62. Ms. Harris's sales team was one of the top teams at FedEx nationally, being award President's Club.

63. FedEx never gave Ms. Harris a warning or performance write-up before receiving Ms. Harris's report of discrimination.

64. Ms. Harris's team members at FedEx had not complained about her performance or management.

65. Ms. Harris's team members praised her.

66. FedEx gave Ms. Harris good performance evaluations before she reported discrimination to HR.

67. FedEx hired Ms. Harris in 2007 as an Account Executive – Inside Sales, which is an entry level Inside Sales Representative.

68. FedEx promoted Ms. Harris to Sales Executive – Inside Sales because of her exceptional performance.

69. FedEx then promoted Ms. Harris to Field Sales Account Executive, which is an outside sales representative position.

70. FedEx promoted Ms. Harris again, this time to Field Sales Executive.

71. Then FedEx promoted Ms. Harris to Inside Sales Manager and asked her to move to FedEx's headquarters in Memphis, Tennessee.

72. FedEx then moved Ms. Harris to Houston for another promotion, to a Business Sales Field Manager over the Houston and Atlanta areas.

73. FedEx next promoted Ms. Harris to District Sales Manager for Field Sales.

74. Each time FedEx promoted Ms. Harris, it was because of her excellent performance.

75. FedEx placed Ms. Lamb as Ms. Harris's manager in Ms. Harris's last position as a District Sales Manager for Field Sales.

**Bumping Up Against the Discriminatory Ceiling**

76. Ms. Harris eventually bumped up against FedEx's discriminatory ceiling.

77. Ms. Lamb asked Ms. Harris to take a demotion on March 8, 2019.

78. Ms. Lamb did make the same request to other similarly situated persons who were not African American.

79. Ms. Harris reported discrimination to FedEx's Human Resource department on March 11, 2019.

80. Ms. Lamb then issued Ms. Harris a Letter of Counseling for "unacceptable performance" on June 26, 2019, without a documented discussion as required by FedEx's policies.

81. Ms. Lamb created the alleged performance issues by sabotaging Ms. Harris's commission structures, even though Ms. Harris's performance continued to be exceptional.

82. On August 23, 2019, Ms. Harris reported discrimination and retaliation again by Ms. Lamb for not assigning a customer in Ms. Harris's district to Ms. Harris.

83. Ms. Lamb then gave Ms. Harris a written warning on September 13, 2019, even though Ms. Harris was doing as well or better than her peers who also reported to Ms. Lamb.

84. FedEx conducted a sham investigation of Ms. Harris's claims and terminated her on January 7, 2020.

**FedEx Discriminated Because Of Race**

85. Corporations must not discriminate against persons because of race.

86. FedEx did not evaluate Ms. Harris as the same as her peers when it disciplined and terminated her employment.

87. Ms. Harris was performing as good or better than her peers.

88. The difference is she is Black.

89. Ms. Harris and her sales team were one of the top performers and performing teams in the company.

90. Ms. Harris received six promotions since she started working at FedEx in 2007.

91. In 2010, Ms. Harris and her team reached the President's Club.

92. Ms. Harris won the prestigious President's Club award, ranking in the top 6% sales at FedEx, nation-wide, in 2011.

93. She won the Ambassador's Club award, ranking in the top 12% of sales at FedEx in 2012.

94. In 2017, Ms. Harris and her team reached the President's Club again.

95. FedEx was constantly changing Ms. Harris's goals or moving Ms. Harris's accounts around so that it would negatively affect Ms. Harris's sales.

96. When the discrimination began, FedEx artificially set Ms. Harris's quota too high based on a customer that was moved out of her district to another district.

97. Even though Ms. Harris no longer had responsibility for the customer, FedEx set her goals as though she still had responsibility for the customer.

98. FedEx did this intentionally make her performance look artificially bad.

99. Ms. Harris's white supervisor, Ms. Lamb, belittled Ms. Harris to Ms. Harris's peers.

100. Although Ms. Harris was meeting all her goals, FedEx allowed Ms. Harris's supervisor to adjust Ms. Harris's sales numbers and goals to negatively impact Ms. Harris's performance.

**FedEx Retaliated for Opposing Discrimination**

101. When Ms. Harris reported racial discrimination the Human Resource department, the white HR advisor told Ms. Harris to not worry about it and said, "Just go on with your job, it'll all blow over."

102. It did not all blow over.

103. Ms. Harris's white supervisor began writing Ms. Harris up.

104. FedEx allowed Ms. Harris's supervisor to place Ms. Harris on an unwarranted performance improvement plan and terminate her.

105. When Ms. Harris went to HR, that was the nail in the coffin.

106. Ms. Harris was damaged severely because she lost her job, her career.

107. Ms. Harris had to move across the state just to find another job in her industry, for a lower pay than what she was getting at FedEx.

## CAUSES OF ACTION

**Section 1981 Violation**

108. Ms. Harris's claim for recovery under Section 1981 is based upon 42 U.S.C. § 1981, which provides that all persons within the United States shall have

the same right to make and enforce contracts and to the full and equal benefit of all laws as is enjoyed by white citizens.

109. This law entitles a person of color to equal opportunity and treatment in employment.

110. When an employer acts adversely against a person of color because of that person's race, the law has been violated and the person of color may file suit and recover damages.

111. A person is also entitled to file suit and recover damages under Section 1981 for retaliation for opposing or reporting violations of Section 1981, or for participating in an investigation of a violation of Section 1981.

112. Ms. Harris belongs to a protected group and was subjected to unwelcome harassment based on her race, including a hostile work environment.

113. FedEx knew or should have known of the harassment but took no prompt remedial action.

114. Ms. Harris was subjected to ridicule or insult or other improper conduct based on Ms. Harris's race.

115. The harassment was constant, obscene, obnoxious, shocking to the conscience of the ordinary person.

116. The harassment was severe and pervasive, interfering with the terms and conditions of her employment with FedEx.

117. The constant harassment for over a year was severe and humiliating.

118. Ms. Harris escalated the hostility on at least three different occasions and made reasonable efforts to prevent hostility.

119. These actions over a year period leading up to and including Ms. Harris's termination by FedEx constitute the required adverse employment action prohibited by Section 1981.

120. The harassment and termination were sufficiently severe or pervasive to alter the conditions of Ms. Harris's employment with FedEx.

121. The harassment was objectively and subjectively offensive.

122. The disparaging racial treatment or other improper conduct was unwelcomed and undesirable or offensive to Ms. Harris.

123. The harassment of Ms. Harris altered a term, condition, or privilege of her employment at FedEx.

124. A reasonable person would find that the harassment created and was abusive working environment.

125. Employees of FedEx participated in the harassment of Ms. Harris.

126. FedEx knew or should have known of the harassment and failed to take prompt, remedial action to eliminate the harassment.

127. FedEx has a pattern and practice of discriminating based on race and retaliating against those who oppose or report discrimination.

128. Ms. Harris opposed FedEx denying persons the "right to make" contracts and denying the same "security of persons and property as is enjoyed by

white citizens” in the United States as required by federal law. *See* 42 U.S.C. § 1981.

129. FedEx treated Ms. Harris adversely after she opposed and reported unlawful discrimination.

130. FedEx engaged in material adverse actions against Ms. Harris, that might well dissuade a reasonable person from opposing or reporting the discrimination had they known they would face the adverse actions.

131. The termination of Ms. Harris from FedEx materially altered her employment, as well.

132. FedEx violated the federal statute by intentionally discriminating and retaliating against Ms. Harris; and, as a direct result of the discrimination and retaliation caused damages to Ms. Harris.

133. The liability can be either actual or constructive under the *McDonnell Douglas* framework.

134. FedEx knew or should have known that its White employees were discriminating against African Americans and taken corrective action to prevent the discrimination within its control.

135. Prevention is the best tool for the elimination of harassment.

136. FedEx did not take the steps necessary to prevent the harassment from occurring, such as affirmatively raising the subject, expressing strong disapproval, developing appropriate sanctions, informing employees of their right to

raise and how to raise the issue of harassment, and developing methods to sensitize all concerned.

**Compensatory and Equitable Relief**

137. Ms. Harris sustained damages, including lost wages and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses for which she is entitled to recovery under her causes of action.

138. Ms. Harris is also entitled to declaratory relief that a violation has occurred.

139. Ms. Harris is also entitled to equitable relief in the form of reinstatement and an injunction against future discrimination or retaliation.

**Attorneys' Fees**

140. Ms. Harris is also entitled to attorneys' fees, interest, and costs of court for services rendered in this cause, including trials and appeals.

**Exemplary Damages**

141. Ms. Harris is also entitled to receive punitive damages because FedEx engaged in a discriminatory or retaliatory practice or in discriminatory or retaliatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

## JURY DEMAND

142. Ms. Harris request a trial by jury to the extent allowed by law.

WHEREFORE, Ms. Harris requests that Defendant FedEx answer and that on final trial, Ms. Harris have judgment against Defendants for compensatory, declaratory and equitable relief, and exemplary damages, attorneys' and expert fees, costs of suit, and interest as provided by law, and any further relief to which they may be entitled.

Respectfully submitted,

*/s/ Brian P. Sanford*

Brian P. Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com
Elizbeth "BB" Sanford
Texas Bar No. 24100618
esanford@sanfordfirm.com

**THE SANFORD FIRM**
1910 Pacific Ave., Suite 15400
Dallas, TX 75201
Ph: (214) 717-6653
Fax: (214) 919-0113

**ATTORNEYS FOR PLAINTIFF JENNIFER HARRIS**