**EXHIBIT A**

Pages 249-251

Q: I think I can get all the rest of the information from your counsel on that. Have you talked to any FedEx employees since your termination from FedEx?

Mr. Sanford: I'm going to instruct you not to answer that claim work production for any communications.

Q: Did you have do you understand my question ma'am?

A: Yes.

Q: Are you going to listen to your attorney's advice and not answer it?

A: Yes.

Q: Okay. I'm going to lay some foundation. Did you have I don't think your attorney wants you to tell me who so listen to my question carefully ok. Have you spoken to anyone who worked at FedEx since your termination from FedEx outside the presence of your attorneys or anyone that works for your attorneys?

Mr. Sanford: And I instruct you not to answer that question either.

The Witness: Okay.

Q: What's the basis of that?

Mr. Sandford: Work Product.

Mr. Babcock: Who a nonlawyer talks to?

Mr. Sanford: Yes work product applies to parties and attorneys. The rule has it the initial case talks about it Yes.

Q: Did you understand my question ma'am?

A: Yes.

Q: You're not going to answer the question, you're going to listen to your attorney's advice?

A: Yes.

Page 251 – 253

Q: Handed you what has been marked as Exhibit 61. This is a copy of your initial disclosures have you seen this document before miss?

A: Yes.

Q: Okay. Starting at the bottom of page 1 and is to page 8 you list several numerous individuals. And have you spoken to any of these individuals since you termination from FedEx?

Mr. Sandford: I instruct you not to answer. Work product.

1

Q: Do you understand my question?

A: Yes.

Q: If I ask the same question – I guess let me set the – let me lay the foundation for the first one and see what we can do. So you identify Chelsea Bullock on the bottom of page 1, right?

A: Yes.

Q: It says you don't know the person's address; is that true?

A: Yes.

Q: And, also says that the telephone number is unknown at this time is that true?

A: Yes

Mr. Sandford: You can answer that.

Q: And you the resuscitate on the top of page 2 what you believe the subject of the information that is Bullock may have to support your claims against FedEx, correct?

A: Yes.

Q: Okay. When was the last time you spoke to Ms. Bullock?

Mr. Sanford: If at all.

Mr. Babcock: I'll rephrase my questions. Sorry Mr. Sanford.

Q: Have you spoken to Ms. Bullock since your termination from FedEx?

Mr. Sanford: I instruct you not to answer that question based on work product doctrine.

Q: Do you understand my question, ma'am?

A: Yes, I understand your question.

Q: Do you intend to follow your attorney's advice and not provide an answer?

A: Yes, that's correct.

Q: Would that be the same scenario if we go through all of those individuals?

Mr. Sanford: Yes.

A: Ending in Marion Zapata.

Mr. Sanford: We claim if for all witnesses after she was terminated.

Page 254

Q: Okay. Did any of those occasions – have you spoken to Ms. Hunter since your termination from FedEx?

Mr. Sanford:  Instruct you not to answer that question based on work product.

Q: Did you understand my question, ma'am?

A: Yes.

Q: Do you intend to follow your attorney's advice not to answer that question?

A: Yes.

Page 255-256

Q: Okay. And did you ever speak to this unnamed individual in California about your concerns of racial discrimination at FedEx?

Mr. Sanford:  The question is I'm going to limit it.

Mr. Babcock: I'm sorry.

Mr. Sanford:  You know my.

Q: Let me rephrase it don't answer that question yet. Did you have any discussions with this unnamed individual prior to your termination from FedEx about the concerns you had about racial discrimination at FedEx?

A: No.

Q: Have you spoken to that individual – have you ever – did you ever speak to that individual on the telephone while you worked at FedEx?

A: Yes when she was scheduling her shadowing to come to Memphis.

Q: Yes. And have you spoken to that individual since you termination from FedEx?

Mr. Sanford:  I instruct you not to answer based on work product.

Q: Did you understand my question, ma'am?

A: Yes.

Q: Are you intending to listen to your attorney's advice and not answer that question.

A: Yes.