**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JENNIFER HARRIS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | Civil Action 4:21-cv-1651 |
| | ) | |
| FEDEX CORPORATION, | ) | |
| | ) | |
| *Defendant.* | ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ...........................................2

ISSUES AND STANDARD OF REVIEW .........................................................2

STATEMENT OF MATERIAL FACTS ...........................................................3

LEGAL ARGUMENT......................................................................................12

    I.      Standard of Review......................................................................12

    II.     Ms. Harris's Claims are Barred by a Contractual Limitations Period ..............12

    III.    Legal Framework for Ms. Harris's Claims ......................................13

          A.  Race Discrimination..................................................................14

          B.  Retaliation ...............................................................................15

    IV.    Ms. Harris's Race Discrimination Claim Fails as a Matter of Law................17

          A.  Ms. Harris Cannot Prove a *Prima Facie* Case of Discrimination..............17

          B.  FedEx Had a Legitimate, Non-Discriminatory Reason for the Termination................................................................................17

          C.  Ms. Harris Cannot Establish Pretext..........................................19

    V.     Ms. Harris's Retaliation Claim Must be Dismissed.........................23

CONCLUSION...............................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adevereaux v. Sports and Fitness Clubs of Am., Inc.*,
   No. 3-03-cv-2824, 2004 U.S. Dist. LEXIS 29733 (N.D. Tex. Feb. 17, 2004) ...............12

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...........................................................................................................12

*Barfield v. Federal Express Corp.*,
   351 F. Supp. 3d 1041 (S.D. Tex. 2019) .........................................................................13

*Basse Truck Line, Inc. v. First State Bank*,
   949 S.W.2d 17 (Tex. App. 1997).....................................................................................12

*Canfield v. Bank One, Texas, N.A.*,
   51 S.W.3d 828 (Tex. App. 2001).....................................................................................12

*Celetex Corp. v. Catrett*,
   477 U.S. 317 (1986)...........................................................................................................12

*Dye v. Associates First Capital Corp. Cafeteria Plan*,
   No. 2:03-cv-289, 2006 U.S. Dist. LEXIS 64561 (E.D. Tex. Sept. 11, 2006).................12

*EZ Pawn Corp. v. The Honorable Fernando Mancias*,
   934 S.W.2d 87 (Tex. 1996)...............................................................................................12

*Fisher v. Vassar Coll.*,
   114 F.3d 1332 (2d Cir. 1997).........................................................................................20

*Johnson v. DaimlerChrysler Corp.*,
   No. C.A. 02-69GMS, 2003 U.S. Dist. LEIS 28026 (D. Del. Mar. 6, 2003)....................13

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)...........................................................................................................14

*Morgan v. Federal Express Corp.*,
   114 F. Supp. 3d 434 (S.D. Tex. 2015) ............................................................................13

*Owens v. Circassia Pharms., Inc.*,
   3 F.4th 814, No. 21-10760, 2022 U.S. App. LEXIS 13016
   (5th Cir. May 13, 2022) .................................................2, 14, 15, 16, 17, 20, 21, 22, 23

*Reeves v. Sanderson Plumbing Products, Inc.*,
   530 U.S. 133 (2000)..................................................................................................14

*Salazar v. Lubbock Cnty. Hosp. Dist.*,
   982 F.3d 386 (5th Cir. 2020) .....................................................................................20

*Smith v. ExxonMobil Corp.*,
   No. CV H-18-367, 2020 U.S. Dist. LEXIS 170720 (S.D. Tex. Sept. 17, 2020) ..........17

*Swanson v. GSA*,
   110 F.3d 1180 (5th Cir. 1997) ....................................................................................16

*Taylor v. Blue Cross & Blue Shield of Texas, Inc.*,
   55 F. Supp. 2d 604 (N.D. Tex. 1999) .........................................................................18

*Thompson v. City of Waco*,
   764 F.3d 500 (5th Cir. 2014) .....................................................................................20

*Univ. of Texas SW. Med. Ctr. v. Nassar*,
   570 U.S. 338 (2013)...................................................................................................16

*Willis v. Cleco Corp.*,
   749 F.3d 314 (5th Cir. 2014) .....................................................................................15

**Statutes**

42 U.S.C. § 1981...............................................................................2, 13, 14, 15, 17

42 U.S.C. § 1983 ......................................................................................................13

42 U.S.C. § 2000e ("Title VII").................................................................................13

**Other Authorities**

Fed. R. Civ. P. 56.......................................................................................................2

Fed. R. Civ. P. 56(a) .................................................................................................12

## INTRODUCTION

Jennifer Harris began her employment with FedEx in 2007.  As part of her application for employment, she executed an agreement that included a limitation clause requiring her to file a lawsuit, such as the instant case, within six (6) months.  Ms. Harris filed this action more than one (1) year following the termination of her employment.  Accordingly, her claims are barred by a contractual limitation period, which is consistent with prior rulings of this Court as to identical provisions.  However, this motion addresses also the merits of Ms. Harris's claims in the event the Court departs from precedent and declines to enforce the limitation provision.

Throughout her tenure, Ms. Harris was promoted into various roles and was promoted to a District Sales Manager in 2016.  In June 2017, Ms. Harris began reporting to Managing Director Michelle Lamb and was domiciled out of a FedEx office located in Houston, Texas.  As FedEx managers, both Ms. Harris and Ms. Lamb are responsible for managing their team members' performance issues, up to and including termination.  Both Ms. Harris and Ms. Lamb issued progressive discipline to their employees – Ms. Harris issued progressive discipline to Thomas Seagraves and Ms. Lamb issued progressive discipline to Ms. Harris and Richard Holley. Following FedEx procedure, both Ms. Harris and Ms. Lamb submitted Request for Termination documents to FedEx Human Resources for review and approval, including review for compliance with FedEx policy against race discrimination.  Both Ms. Harris and Ms. Lamb have testified their actions as FedEx managers of issuing progressive discipline and terminating their employees were not racially motivated and were because their employees were performing poorly. Ms. Harris brought this lawsuit after Ms. Lamb terminated her employment.

Ms. Harris's discrimination and retaliation claims fail for the simple reason that the adverse employment actions she relies on, including her termination, were all taken for legitimate, non-

discriminatory and non-retaliatory reasons related to Ms. Harris's job performance. Although in discovery Ms. Harris had advanced several arguments as to why FedEx's reasons are pretext, each of those arguments fail, including because even if the facts supporting her pretext arguments are true, they do not rise to the standard of "substantial" evidence of pretext set by the Fifth Circuit. That standard requires that a plaintiff establish more than simple factual disputes as to whether FedEx's decisions were correct, logical, fair, or reasonable.  Instead, a plaintiff's evidence must actually permit a reasonable inference of discrimination.  Ms. Harris's evidence falls short of this standard.

Accordingly, Ms. Harris cannot present evidence that creates genuine issues of fact regarding any of her claims against Defendant FedEx Corporate Services, Inc.  And, the Court should enter summary judgment in favor of such defendant under Fed. R. Civ. P. 56 on all claims.

## NATURE AND STAGE OF THE PROCEEDING

Ms. Harris's lawsuit alleges race discrimination and retaliation in violation of 42 U.S.C. § 1981.  Discovery is now closed, and this motion for summary judgment has been submitted by the Court's June 15, 2022 deadline.  *See* Docket No. 19.

## ISSUES AND STANDARD OF REVIEW

FedEx's Motion for Summary Judgment seeks an order dismissing all of Ms. Harris's claims for employment discrimination and retaliation.  The standard of appellate review for granting a motion for summary judgment is *de novo*.  *Owens,* No. 21-10760, 2022 U.S. App. LEXIS 13016, at *12[1] (5th Cir. May 13, 2022).

---

[1] *Owens* is published in the federal reporter at 33 F.4th 814.  However, as of the date of this brief, the federal reporter pagination is not yet available in the LEXIS version of the case being used by FedEx's undersigned counsel.  Accordingly, we use the LEXIS citation and pagination for ease of reference. A copy of the LEXIS version is included with FedEx's evidentiary Appendix, filed and served herewith, at Apx 333.

## STATEMENT OF MATERIAL FACTS

FedEx submits the following undisputed facts for purposes of its Motion for Summary Judgment ("SOF").

1.      Ms. Lamb never uttered a racial slur or ever referred to Harris in a racially derogatory way.  Harris Dep. 140:20-141:1 (FedEx's Evidentiary Appendix ("Apx") at 244-245).

2.      During Ms. Harris's employment, FedEx maintained policies and procedures designed to prevent race discrimination, including: EEO policy (Ex. A- Apx 12[2]), Internal EEO policy (Ex. B- Apx 15) Progressive Corrective Action policy (Ex. C- Apx 18), Antiharassment policy (Ex. D- Apx 23), Code of Conduct, Explore policy (Ex. E- Apx 26), and an Alert Line that employees can use to submit internal complaints of race discrimination.  Ms. Harris was aware of such policies and procedures.  Harris Dep. 113:9-114:5 (Apx 232-233); 114:23-25 (Appx 233); 115:12-16 (Apx 234); 337:18-20 (Apx 288).

Ms. Harris's Role at FedEx.

3.      As a District Sales Manager, Ms. Harris supervised a team of Account Executives whose primary job duty was to find new revenue and maintain existing revenue.  As a member of the Sales team at FedEx, and as a District Sales Manager, this was one of Ms. Harris's job duties as well.  Harris Dep. 122:7-17 (Apx 237).

4.      Some of the duties of Ms. Harris's District Sales Manager position are set forth in the Sales Manager job description.  Harris Dep. 116:18-117:9 (Apx 235-236); Ex. 3 (Apx 125).  Included among the Sales Manager's job duties are requirements to:

---

[2] All lettered Exhibits cited in this Memorandum are attached to the Declaration of CoAnn Sims Ressler.  These documents are part of FedEx's evidentiary Appendix, filed in support of FedEx's Motion for summary judgment.

- "Achieves assigned district goals through the effective management of an account executive team".

- "Provides day to day supervision of activities including training, manpower planning, motivation, and performance evaluation of Sales Representatives and support personnel".

- "Ensures sale objectives are met within company strategies".

*Id.*

5.      Harris believes the following criteria indicates a successful District Sales Manager:

[C]onsistency of territory management, performance with maintaining, growing and finding new revenue, all of those components aligned with each other, and it's an ongoing evaluation.  It just doesn't stop with those steps. You have to go back to see if the existing strategy that you're utilizing is working or if there's opportunity for change.

Harris Dep. 122:18-123:3 (Apx 237-238).

6.      Ms. Harris agreed that a team being led by a strong coach would be able to meet their FedEx objectives and metrics.  Harris Dep. 49:25-50:4 (Apx 221-222).

7.      As a District Sales Manager, Ms. Harris's performance was measured in part by the degree to which the Account Executives reporting to her met their revenue goals from year to year. *Id.*  The revenue goals are adjusted annually, not by an individual Managing Director like Ms. Lamb, but by the Organization and the goals are based upon a territory's revenue from last year with a growth goal added for the current year.  Burchett Dep. 25:13-19; 26:1-22 (Apx 314-315). Accordingly, high performance in one year could have the effect of increasing the following year's revenue goals.  *Id.*

8.      In October 2018, Ms. Harris requested weekly "one-on-ones" with Ms. Lamb. Harris Dep. 195:11-16 (Apx 250); Ex. 28 (Apx 157).  A "one-on-one" is a term used at FedEx for

a type of meeting in which a manager and a direct report discuss the report's performance and methods to improve performance, and Ms. Lamb would often inform Ms. Harris of the topics to discuss in a calendar invite. *See e.g.*, Harris Dep. 146:19-22 (Apx 246) ; Ex. 6 (noting a summary of one-on-one meeting and calendar invite providing agenda items) (Apx 147). Ms. Lamb agreed to do the one-on-ones and met with Ms. Harris regularly for the remainder of Ms. Harris's employment. Ex. F- OneNote summary of meetings) (Apx 29); Ex. G (Apx 34) (noting weekly phone calls and 27 one-on-one meetings in previous 2 years).

March 2019 Meeting Between Ms. Lamb and Ms. Harris

9.      One of Ms. Lamb's job duties was to monitor the performance of District Sales Managers such as Ms. Harris, including the performance of the managers' teams and the managers' success in managing those teams. Ex. H (Managing Director Job Description) (Apx 38).

10.     In early 2019, FedEx rolled out a new program for its Sales Mangers, called "Coach2Grow." Coach2Grow was a coaching and performance development program intended to be used by District Sales Mangers as a tool to improve their teams' performance. Burchett Dep. 20:9-17; 22:1-11(Apx 313-315); Lamb Dep. 70:20-22(Apx 302). Ms. Lamb met repeatedly with Ms. Harris about Ms. Harris's rollout of Coach2Grow to her team. Harris 48:5-8 (Apx 220); Lamb Dep. 69:23-71:15 (Apx 301-303). During one of the meetings Ms. Harris and Ms. Lamb had about Coach2Grow, Ms. Lamb suggested to Ms. Harris that she might want to consider reverting to being an Account Executive, a role in which Ms. Harris had excelled previously. Harris Dep. 241:16-18 (Apx 273).

June 2019 Letter of Counseling

11.     Ms. Lamb issued a Letter of Counseling to Ms. Harris on June 26, 2019. Harris Dep. 199:11-17 (Apx 251); Ex. 31 (Apx 158). Prior to issuing the Letter of Counseling, Ms. Lamb

submitted it to a FedEx Human Resources Advisor, Kristie Castilow, for review.  Castilow Dep.

28:3-10 (Apx 320). The Letter of Counseling states, in part:

> You are being issued a Letter of Counseling (LOC) for poor performance and
> failure to address performance deficiencies on your team. At 91.6%
> (unadjusted) YTD attainment in FY19, your district had the lowest YTD goal
> attainment in [Ms. Lamb's Region.]  0 out of 8 AE's at or above plan
> (unadjusted) in Q4FY19.  Your District failed to meet plan 4 out of 4 quarters
> in FY19.
>
> Despite these deficiencies, and our multiple conversations on the subject, you
> have no performance plans in place for any members of your team.  It is your
> responsibility as a leader to address on-going performance deficiencies on your
> team.

Harris Dep. Ex. 31 (Apx 158).

12.    After receiving her Letter of Counseling, Ms. Harris worked with Ms. Lamb to

create a Performance Improvement Plan ("PIP") to resolve the performance issues outlined in the

Letter of Counseling; the PIP contained seven strategies that Ms. Harris was going to work on.

Harris Dep. 202:14-203:18 (Apx 254-255); Exs. 32 (Apx 159); 33 (Apx 162) (color copy of PIP,

with Ms. Harris's original suggested categories; Ms. Lamb's comments/questions in "red" and Ms.

Harris's responses in "yellow").  Ms. Lamb also worked with Human Resources on finalizing the

PIP.  Castilow Dep. 29:3-30:2 (Apx 321-322).

September 2019 Warning Letter

13.    Ms. Harris and Ms. Lamb met in September 2019 to discuss Harris's performance

progress in the seven categories of her PIP and Ms. Lamb informed Ms. Harris she was successful

on only one of seven categories.  Harris Dep. 204:21-205:11; 206:1-5 (Apx 256-258); Ex. 34 (Apx

164) (bold face is the category and regular type is Lamb's comments/grade).

14.    Ms. Lamb issued Ms. Harris a Letter of Warning on September 13, 2019.  Harris

Dep. 221:1-4 (Apx 259); Ex. 37 (Apx 165).  Prior to issuing the Warning Letter, Ms. Lamb

submitted the Letter of Warning to Ms. Castilow in HR for review.  Castilow Dep. 28:17-29:2 (Apx 320-321).  The Letter of Warning states, in part, that Ms. Harris's district failed to meet plan; had the lowest pricing activity in the Region; that she "did not meet Action Plan objectives which you [Ms. Harris] created to improve performance."  Harris Dep. Ex. 37 (Apx 165).

15.     As a result of the Warning Letter, Ms. Lamb placed Ms. Harris on a second Performance Improvement Plan.  Harris Dep. 221:22-24; 223:7-12 (Apx 259-260); Ex. 38 (Apx 167).  Ms. Lamb created the five categories of the second PIP (taken from the first PIP) and went over them with Ms. Harris.  Harris Dep. 91:2-5; 224:20-225:5; 229:24-230:3 (Apx 229; 261-262; 264-265).

16.     One of the items in the second PIP, as well as the first PIP, related to revenue attainment (meeting revenue goals). Harris Dep. Ex. 34 (1st PIP) (Apx 164) and Ex. 38 (2nd PIP) (Apx 167).  In an effort to make the second PIP more feasible for Ms. Harris, Ms. Lamb reduced Ms. Harris's goal from 100% of goal to the average attainment of all of the District Sales Managers reporting to Ms. Lamb.  Burchett Dep. 27:1-11; 28:23-29:11 (Apx 316-317); Harris Dep. Ex. 38 (Apx 167).  Because the average attainment was less than goal, this resulted in a reduction from 100% to 94.8% in overall revenue attainment and attainment per FedEx service offering ranging from 85.01% to 98.42%.  *Id.*

Termination

17.     During the pendency of the two PIPs, Ms. Lamb and Ms. Harris continued to hold regular "one-on-one" meetings, the purpose of which included coaching Ms. Harris on strategies she could use to meet the terms of the PIPs.  Ex. F - OneNote summary of meetings) (Apx 29); Ex. G (noting weekly phone calls and 27 one-on-one meetings in previous 2 years)  (Apx 34).

18.     On December 6, 2019, Ms. Harris and Ms. Lamb met about Ms. Harris's performance in the categories on her second PIP.   Exhibit I – OneNote summary of 12/6/19 meeting (Apx 40).   Ms. Harris failed to satisfy the requirements of her PIP in that she met only one (1) of five (5) criteria.   *Id.*   Ms. Harris does not dispute that she had a conversation with Ms. Lamb about her second PIP, but she does not recall any of the details of the conversation.   Harris Dep. 231:20-235:11 (Apx 266-270); Ex. I (noting that only 1 out of 5 categories met) (Apx 40).

19.     Pursuant to FedEx's procedure for involuntary termination, Ms. Lamb submitted Request For Termination documentation to Human Resources due to Ms. Harris's failure to meet the terms of her second PIP.   Lamb Dep. 71:22-72:20 (Apx 303-304); Ex. G (Harris Request For Termination) (Apx 34).   The request for termination states, in part:

> Jennifer Harris's sales district has missed revenue targets the past 7 out of 8 quarters.   As her manager I have met with her one-on-one, for coaching purposes, 27 times in the past 24 months.   Additionally, she and I had weekly phone calls scheduled for coaching and to discuss opportunities in her district.   Jennifer has been placed on 2 Performance Planners, neither of which were completed to a satisfactory level.

> Jennifer Harris's team is not performing well under her leadership and I see no indication that performance will improve in the future.   Multiple leadership deficiencies have been identified including:  failure to follow [Coach2Grow] 2.0 rollout instructions, lack of awareness of major district decliners, slow district response to critical objectives/initiatives, failure to identify and close enough business to meet performance expectations.

Ex. G.  (Apx 34).

Ms. Harris's Internal Complaints

20.     After the March 2019 meeting with Ms. Lamb, Ms. Harris, with the help of her attorneys, summarized a number of concerns about Ms. Lamb in a March 20, 2019 email to Michael Clark in Human Resources.   Harris Dep. 247:25-249:13 (Apx 274-276); Ex. 46 (Apx

169).  Ms. Harris complained about micromanagement and unreasonable expectations, among other things. *Id.*  Ms. Harris *did not* specifically reference race discrimination in that email.  *Id.*

21.     However, Ms. Harris subsequently made several internal complaints, including allegations of race discrimination, and including a request to reverse her Warning Letter and her termination.  Harris Dep. 134:12-136:5 (Apx 240-242); Ex. 5 (March 2019 complaint) (Apx 143); 250:15-251:11 (Apx 277-278); Ex. 47 (June 2019 complaint) (Apx 175); 253:14-254:13 (Apx 279-280); Ex. 55 (December 2019 complaint) (Apx 181); Harris Dep. 221:5-7; 235:24-236:1 (two Explore submittals to reverse her Warning Letter and her termination) (Apx 259; 270-271).

22.     Pursuant to its Equal Employment Opportunity policy, FedEx investigated Ms. Harris's complaints about Ms. Lamb.  Ex. J - Clark June 2019 Report (Apx 42); Ex. K - Clark September 2019 Report (Apx 51); Ex. L - Clark December 2019 Report (Apx 82). In all three investigative Reports, Ms. Harris's allegations were not substantiated.  Ex. J - Clark June 2019 Report (Apx 48); Ex. K - Clark September 2019 Report (Apx 56); Ex. L - Clark December 2019 Report (Apx 86).

23.     In January 2020, after FedEx completed its investigation into Ms. Harris's internal complaints, Kristie Castilow (Human Resources) approved Ms. Lamb's request for termination of Ms. Harris.  Ex. M - January 2022 email string between Ms. Lamb, Ms. Castilow, Ms. Lamb's boss (Vice President - Dave Russell) and a FedEx attorney (Kristy Gunn) regarding Ms. Harris's termination (Apx 94).

24.     Ms. Harris's employment with FedEx was terminated effective January 7, 2020. Harris Dep. 235:20-23 (Apx 270); Ex. 39 (Apx 168).

Discipline Issued to Ms. Harris's White Peer, Richard Holley

25.      In May 2018 and March 2019, Ms. Lamb issued Richard Holley, Ms. Harris's White peer, two Letters of Counseling. Holley Dep. Ex. 2 (Apx 206); Holley Dep. Ex. 7 (Apx 207).  Ms. Lamb also issued Mr. Holley a Warning Letter on October 28, 2019 (Holley Dep. Ex. 11 (Apx 210)), placed him a Performance Improvement Plan (Holley Dep. Ex. 15 (Apx 211)) and submitted a Request For Termination (Ex. N (Apx 97)) when Mr. Holley did not successfully complete his PIP.

26.      In her Request For Termination documentation for Mr. Holley, Ms. Lamb informed Human Resources, in part:

> Richard Holley's team is not performing under his leadership and I see no indication that performance will improve in the future.  Multiple leadership deficiencies have been identified including:  failure to schedule coaching sessions with AE's, a disregard for LPSP, slow district response to critical objectives/initiatives, failure to identify and close enough business to meet performance expectations.

Ex. N (Apx 97).

27.      Although Mr. Holley notified FedEx of his intent to retire, he was told by Ms. Lamb that he was being required to resign his employment/retire in lieu of termination.  Holley Dep., at 109:5-113:25, Holley Dep. Ex. 9 (Apx 327-331; 208).

Ms. Harris's Purported Evidence of Pretext

28.      As purported evidence of pretext, Ms. Harris contends (a) that the revenue attainment numbers cited in her Letter of Counseling were incorrect, because FedEx erroneously included the increased goal associated with customer BJ Services in fiscal year 2019 (Jun 1, 2018 to May 31, 2019) (because revenue attainment goals are based on the prior fiscal year's performance) and did not give her revenue credit for customer 4G Dental; (b) she was required to go through every slide of the Coach2Grow program when her White peers were not required to do

the same; (c) Ms. Lamb's alleged aggressiveness with Ms. Harris in emails and in conducting

regular one-on-one meetings; (d) being treated differently for the Pathways event; and (e) Ms.

Harris had White peers who had worse performance than Ms. Harris from time to time during the

course of the pendency of her PIPs. Harris Dep. 65:11-14; 82:15-18, 88:8-25; 90:7-11; 137:2-18;

223:19-224:4, 225:23-226:8, 319:14-320:10, 331:13-332:15, 358:19-362:13 (Apx 224; 226-228;

243; 260-263; 282-285; 292-296).

29.     However, Ms. Harris agrees for example that even if the BJ Services revenue

figures had not inflated her revenue attainment goals, she still would have failed to meet them.

Harris Dep. 137:2-18 (Apx 243).  And, presuming the BJ Services inflated goal impacted two of

her Account Executives, at best only two (2) out of her eight (8) Account Executives would have

been at or above plan.  Harris Dep. 200:8-25 (Apx 252).

Ms. Harris Agreed to a 6-Month Limitation Period

30.     Ms. Harris's employment was terminated effective January 7, 2020.  Harris Dep.

235:20-23 (Apx 270); Ex. 39 (Apx 168).  Ms. Harris's complaint in this action was filed on May

20, 2021 (Docket No. 1), more than 1 year later.  However, Ms. Harris was required to bring her

claim within six months of the termination of her employment.  Ms. Harris executed an Application

for Employment on April 16, 2007.  Declaration of Mac Chonoles (detailing the requirements of

FedEx employees to complete an employment application during the hiring process (Apx 6-7);

Exhibit O – Jennifer Harris Application for Employment (Apx 101).  The application contains an

Employment Agreement, which states, in pertinent part:

> (15) This agreement constitutes the entire and final agreement between the parties
> and all other prior agreements, arrangements, or understandings, oral or written, are
> merged into and superseded by the terms of this agreement. I understand that should
> any part of this agreement be held unenforceable, the enforceability of the
> remaining provisions shall not be impaired. To the extent the law allows an
> employee to bring legal action against the Company, I agree to bring that complaint

within the time prescribed by law or 6 months from the date of the event forming the basis of my lawsuit, whichever expires first.

*Id.* (Apx 107).

## **LEGAL ARGUMENT**

### I.      **Standard of Review**

Summary judgment must be granted when the moving party "shows that there are no genuine disputes as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If the non-moving party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper.  *See Celetex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When considering the material facts on the record, mere allegations or denials in the non-movant's pleadings will not defeat an otherwise properly-supported motion for summary judgment, nor will a mere scintilla of evidence be sufficient for the non-moving party's claim to survive summary judgment.  *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 251-52 (1986).

### II.      **Ms. Harris's Claims are Barred by a Contractual Limitation Period**

Ms. Harris agreed to a six-month limitation period for filing this action but waited more than 1 year to do so. *See* Statement of Material Facts ("SOF") 30.  Texas courts have long enforced contractual limitations periods shortening the period to file suit if they are reasonable. *See e.g., Basse Truck Line, Inc. v. First State Bank*, 949 S.W.2d 17, 21-22 (Tex. App. 1997) ("We hold that the shortened statutes of limitations contained in Bank One's and Del Rio's depository agreements are not contrary to public policy."); *Dye v.Associates First Capital Corp. Cafeteria Plan*, 2006 U.S. Dist. LEXIS 64561, *10 (E.D. Tex. Sept. 11, 2006); Canfield v. Bank One, Texas, N.A., 51 S.W.3d 828, 836 (Tex. App. 2001); *Adevereaux v. Sports and Fitness Clubs of Am., Inc.*, 2004 U.S. Dist. LEXIS 29733, *2 (N.D. Tex. Feb. 17, 2004). Additionally, Texas courts have found that

a six-month contractual statute of limitations is reasonable. *See e.g., EZ Pawn Corp. v. The Honorable Fernando Mancias*, 934 S.W.2d 87, 88-91 (Tex. 1996) (The Texas Supreme Court upheld an arbitration agreement in which an employer and employee mutually agreed to initiate arbitration no later than six months after a cause of action accrued.).

In fact, in *Morgan v. Federal Express Corp.*, 114 F.Supp.3d 434 (S.D. Tex. 2015), a § 1981 race discrimination case, the United States District Court for the Southern District of Texas, Houston Division, held that a very similar six-month contractual limitations period to the one at issue in this case, accepted voluntarily and knowingly by the employee was "clear and unambiguous" and operated to bar the plaintiff's claims.  And, though § 1981 does not contain a statute of limitations or exhaustion of remedies requirement (like § 1983 and Title VII claims), the *Morgan* Court recognized that other courts have applied contractual provisions to limit the time to bring an action in Title VII claims (which do have statutory limitations periods and an exhaustion of remedies requirement).  *Id.* at 444 (citing *Johnson v. DaimlerChrysler Corp.*, No. C.A. 02-69GMS, 2003 WL 1089394 at *2-3 (D. Del. Mar. 6, 2003)).

Additionally, in *Barfield v. Federal Express Corp.*, 351 F.Supp.3d 1041, 1045, 1049-1052 (S.D. Tx. 2019), the Southern District of Texas reached exactly the same conclusion in an age discrimination claim, regarding the same contractual limitation language.  *Id.*

Because Ms. Harris failed to file her lawsuit within six months of the termination of her employment, her § 1981 claims are barred.

## III.  Legal Framework for Ms. Harris's Claims.

Even if the Court does not grant summary judgment based on the applicable limitation period (Section II, *supra*), the Court should grant summary judgment for the following reasons on the merits of Ms. Harris's claims.

A.   Race Discrimination

Ms. Harris asserts a claim of race discrimination in violation 42 U.S.C. § 1981 ("Section 1981"), which prohibits race discrimination in contracts, including in employment.  Pltf's Amd. Compl., Docket No. 11 at 1.  Because Ms. Harris does not purport to have any direct evidence of discriminatory intent on the part of FedEx (such as use of racial slurs, for example), then as with claims arising under the Federal Civil Rights Act of 1964, her Section 1981 claim must be decided under the burden-shifting framework established by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Owens*, 2022 U.S. App. LEXIS 13016, at *12 (citing *McDonnell Douglas*, 411 U.S. at 802-804.)

Under *McDonnell Douglas*, Ms. Harris must first make a *prima facie* case of discrimination. *Owens, supra* at *12. To do so, she must prove: (1) that she belongs to a group protected by Section 1981; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) either that she was replaced by someone outside of her protected group, or FedEx treated a similarly situated employee, outside of her protected group, more favorably. *Owens*, 2022 U.S. App. LEXIS 13016, at *12-*13.

If Ms. Harris proves such a *prima facie* case, the burden shifts to FedEx to prove that it had a "legitimate, nondiscriminatory reason" for the adverse employment actions on which Ms. Harris relies in her *prima facie* case. *Owens*, 2022 U.S. App. LEXIS 13016, at *12-*13. A defendant's burden in such a case is one of production, not of persuasion.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000).  *Any* proffered reason for the action(s) at issue that is unrelated to the plaintiff's race – even an unfair or unreasonable one – suffices to shift the burden back to the plaintiff.  *See Owens*, 2022 U.S. App. LEXIS 13016, at *14-*15.

If FedEx meets that burden, the burden then shifts to Ms. Harris to prove, by *substantial* evidence, that FedEx's proffered legitimate, non-discriminatory reason(s) are pretext. *Owens*, 2022 U.S. App. LEXIS 13016, at *12-*13. In the summary judgment context, "[e]vidence is substantial if it is of such quality and weight that reasonable and fair-minded [triers of fact] in the exercise of impartial judgment might reach different conclusions." *Owens, supra,* 2022 U.S. App. LEXIS 13016, at *15 (internal quotations and citations omitted). Where the defendant's proffered reasons for termination of employment were poor performance and lack of effort to change such poor performance, a plaintiff must show that "reasonable minds could disagree that these were, indeed, the reasons for her discharge." *Id.* at *14-*15.

In assessing Ms. Harris's evidence of pretext, if proffered, it is important for the Court to keep in mind that "[e]mployment laws do not transform federal courts into human resources managers, so the inquiry is not whether [FedEx] made a wise or even correct decision to terminate [Plaintiff]." *Owens, supra,* 2022 U.S. App. LEXIS 13016, at *15 (internal citations and quotations omitted). "Instead, [t]he ultimate determination, in every case, is whether, viewing all of the evidence in a light most favorable to the plaintiff, a reasonable factfinder could infer discrimination. . . Thus, evidence must be of sufficient nature, extent, and quality to permit a jury to reasonably infer discrimination." *Id.*

B. Retaliation

Section 1981 does not contain an express anti-retaliation provision, but the Fifth Circuit has consistently held, in light of the parallelism between Section 1981 and Title VII, that a Section 1981 plaintiff can assert a retaliation claim. *See e.g., Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (indicating the elements of a *prima facie* case of retaliation under Title VII and Section

1981).  Ms. Harris's retaliation claim is subject to the same burden-shifting framework as her discrimination claim.  *Owens, supra,* 2022 U.S. App. LEXIS 13016, at *35.

To prove a *prima facie* case of retaliation, Ms. Harris must show that "1) she engaged in a protected activity; 2) she suffered an adverse employment action; and 3) there is a causal connection between the two." *Owens, supra,* 2022 U.S. App. LEXIS 13016, at *35.  As protected activity in support of her retaliation claim, Ms. Harris cites to her internal complaints of discrimination which she began making after the March 2019 meeting with Ms. Lamb.  (SOF 20-21).  Ms. Harris has produced *no* evidence of a causal connection between these complaints and any adverse action, save for the fact of the timing itself, which does not necessarily support a *prima facie* case of retaliation in and of itself.  *See Swanson v. GSA,* 110 F.3d 1180, 1188 n.3 (5th Cir. 1997).

Even assuming Ms. Harris can assert a *prima facie* case of retaliation, she must nevertheless show that "but for" her internal complaints, she would not have been subjected to the adverse employment actions at issue.  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013); ("[R]etaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."); *Owens, supra,* 2022 U.S. App. LEXIS 13016, at *36. "This inquiry requires a greater showing than mere causal connection.  It requires that the plaintiff show that protected conduct was the reason for the adverse action." *Id.*  "In other words, even if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct." *Id* (internal citations and quotations omitted).

IV.    **Ms. Harris's Race Discrimination Claim Fails as a Matter of Law.**

For the following reasons, the Court should enter judgment in FedEx's favor on Ms. Harris's Section 1981 claim.

A.    **Ms. Harris Cannot Prove a *Prima Facie* Case of Discrimination.**

Because a *prima facie* case of discrimination requires Ms. Harris to prove that she was qualified for her position, then if Ms. Harris failed to meet performance expectations, she cannot present a *prima facie* case. *Smith v. ExxonMobil Corp.*, No. CV H-18-367, 2020 U.S. Dist. LEXIS 170720, 2020 WL 5576695, at *2 (S.D. Tex. Sept. 17, 2020). The *Smith* court reasoned "[w]hen an employee fails to meet his employer's legitimate expectations at the time of his termination, he cannot establish a *prima facie* case of discrimination." *Id* at *4[3].

Ms. Harris was placed on two Performance Improvement Plans setting forth specific expectations in terms of requirements for improved performance. (SOF 12, 15). In the first PIP, Ms. Harris proposed the seven categories and then worked with Ms. Lamb to finalize the PIP categories. (SOF 12). Ms. Harris failed to meet the terms of the PIPs. (SOF 13, 18). Accordingly, Ms. Harris was not qualified for her position and cannot prove a *prima facie* case.

B.    **FedEx Had a Legitimate, Non-Discriminatory Reason for Termination.**

Even if Ms. Harris is deemed to have made a *prima facie* case of discrimination, FedEx can easily satisfy its burden of producing evidence that it had a legitimate, non-discriminatory

---

[3] In *Owens*, the Fifth Circuit, in addition to recognizing that *Smith* is an unpublished case, criticized the defendant's reliance on *Smith* on the ground that the plaintiff in *Owens* had received consistently excellent performance reviews. *Owens,* 2022 U.S. App. LEXIS 13016, at *13 & n.6. That critique does not apply here, where Harris received multiple written criticisms of her job performance in the months leading up to her termination. (SOF 11, 13, 14, 17-18). Instead, here, the inherent logic of the reasoning in *Smith* (that an employee cannot prove she was qualified for her position if her performance was demonstrably unsatisfactory) stands.

reason for terminating Ms. Harris's employment. A defendant may satisfy its burden of production in this regard by producing documented critiques of an employee's performance. *Taylor v. Blue Cross & Blue Shield of Texas, Inc.*, 55 F. Supp. 2d 604, 613 (N.D. Tex. 1999).

FedEx's documentation in this regard is extensive. Ms. Lamb and Ms. Harris met regularly in one-on-one meetings. (SOF 8, 17). Ms. Lamb issued a Letter of Counseling to Ms. Harris "for poor performance and failure to address performance deficiencies on your team." (SOF 11). Ms. Harris noted that none of her eight Account Executives were at or above plan for the prior fiscal quarter. *Id.* Among the other deficiencies noted in the Letter of Counseling was that, despite the fact that Ms. Harris's Account Executives had the lowest revenue attainment in Ms. Lamb's region at the time, Ms. Harris had no one placed on a Performance Improvement Plan at the time the Letter of Counseling was issued. *Id.* Ms. Lamb's contemporaneous OneNote entry from 11:47 am on 6/20/19 indicates, in part:

> I told Jennifer to use this as an opportunity to drive home the need for change and action in her team. We are not in the business as usual position. She agreed and **referenced that her team is "at the bottom of the list" which is true.** She explained that she has been direct in 1:1 conversations with her team, **but still has yet to issue any PIP or documented emails.** I asked her why she is delaying addressing performance deficits and she stated that she first needed to show them "how to be successful" and "what good looks like". It is her job to address performance deficiencies and some should have been addressed long ago.

Ex. P – Summary of 6/20/19 phone conversation prior to Letter of Counseling being issued (Apx 108) (emphasis added).

Ms. Harris was then herself placed on two successive Performance Improvement Plans ("PIPs"), setting forth specific criteria for performance improvement, including the requirement to begin meeting revenue attainment goals and appropriately managing her Account Executives. (SOF 12-13, 15-16). Again, Ms. Harris helped write the first PIP herself. (SOF 12). Ms. Harris's

manager, Ms. Lamb, regularly met with Ms. Harris during the pendency of those PIPs, including weekly "one-on-one" meetings, to assist Ms. Harris in meeting the expectations set forth in the PIPs. (SOF 13, 17-18). After Ms. Harris failed to meet such expectations, her employment was terminated. (SOF 23-24).

Accordingly, FedEx has satisfied its burden of production of a legitimate, non-discriminatory reason for its adverse employment actions against Ms. Harris.

### C.    Ms. Harris Cannot Establish Pretext

Ms. Harris's purported grounds for pretext each fail, as follows:

(1)    Revenue Attainment Goals

Ms. Harris contends that her revenue attainment goals for FY 2019 were incorrectly calculated, due to inflated revenue numbers for certain FedEx customers. (SOF 28). However, she agrees that if FedEx pays the Sales professionals commission on inflated revenue and does not request the inflated commissions be re-paid to FedEx, then the inflated revenue will impact the stretch goals for the sales professionals the following year. Harris Dep. 158:23-159:2 (Apx 247-248). Indeed, Ms. Harris admits that even if the BJ Services revenue figures had not inflated her revenue attainment goals, she still would have failed to meet them. (SOF 29). And, presuming the BJ Services inflated goal impacted two of her Account Executives, at best only two (2) out of her eight (8) Account Executives would have been at or above plan. *Id.* Consequently, even if the Court were to accept this argument from Ms. Harris as true, her performance was till unsatisfactory.

She also refers, in her deposition testimony, to various errors she believes exists in the calculation of her revenue goals and performance numbers. *See e.g.,* Harris Dep. 35:4-18 (false data regarding certain opportunities) (Apx 215); 90:18-20 (falsely inflated numbers involving BJ

Services) (Apx 228); 307:7-10 (did not want inflated numbers to be considered for Sales awards) (Apx 281).   However, "[m]ere disputes over an employer's assessment of an employee's performance do not create issues of fact."  *Owens,* 2022 U.S. App. LEXIS 13016, at *25 (quoting *Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 389 (5th Cir. 2020).  Even where a plaintiff's factual disputes rise to the level where a reasonable trier of fact could find that an employer's proffered justification for termination is false, that is not enough.  *Owens,* 2022 U.S. App. LEXIS 13016, at *30.  Rather, "[t]he evidence must permit a reasonable inference that [the defendant's] false reason was pretext for the true, discriminatory, reason."  *Id.*  Ms. Harris has *no evidence whatsoever* that her *race* played a role in any of her discipline, other than the fact that she *is* African-American.  Harris Dep. 64:16-65:4; 223:19-224:4; 236:2-9; 240:5-8 (Apx 223-224; 260-261; 271-272).  Accordingly, even if "a juror could reasonably conclude that [FedEx] wanted [Plaintiff] gone for some reason other than her performance, but an 'inference of discrimination [would] be weak or nonexistant.'"  *Owens,* 2022 U.S. App. LEXIS 13016, at *32, quoting *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1338 (2d Cir. 1997).

(2)   Issues with Coach2Grow;

Ms. Harris asserts that Ms. Lamb's requirement that she go over every Coach2Grow PowerPoint slide with her team members is evidence of pretext because Ms. Harris alleges (without support or foundation) that her White peers were not required to go over every slide with their respective team members.  (SOF 28; Harris Dep. 331:22-332:7 (Apx 284-285)).  Even if this were true, being required to re-engage her team members about a new coaching and performance development program is not an adverse employment action.  *See Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) ("For Title VII and § 1981 discrimination claims, we have held that adverse employment actions consist of 'ultimate employment decisions' such as hiring, firing,

demoting, promoting, granting leave, and compensating"). While Ms. Lamb was not pleased with Ms. Harris's initial abbreviated rollout of Coach2Grow with her team, once Ms. Harris confirmed that she had gone over the materials with each of her employees, Ms. Lamb was satisfied that Ms. Harris had adequately rolled out Coach2Grow as required. Lamb Dep. 69:19-71:19 (Apx 301-303). Accordingly, the issues with the rollout of Coach2Grow do not rise to the level of "substantial" evidence of pretext. Ms. Lamb simply wanted to verify that Ms. Harris had explained the program in detail to her team. *See Owens*, 2022 U.S. App. LEXIS 13016, at *30.

> (3)    Pathways Event in Memphis

Ms. Harris alleges that she was not permitted to attend a "Pathways" event (a FedEx-sponsored career development program for its sales professionals) in Memphis, Tennessee while her White peers were permitted to attend a Pathways event in Dallas, Texas. (SOF 28; Harris Dep. 39:12-20 (Apx 216)). First, Ms. Harris was originally given permission to travel and attend the Memphis Pathways event, but her permission was rescinded based on cost control issues. Harris Dep. 39:8-24; 40:11-17; 319:14-21 (Apx 216; 217; 282). Second, Ms. Harris did attend the Memphis Pathways event, but FedEx did not reimburse her the cost of her travel. Harris Dep. 39:25-40:3; 43:3-7 (Apx 216-218). Admittedly, while Ms. Harris originally had to take vacation days to attend the Pathways event, she was reimbursed for these vacation days. Harris Dep. 43:8-44:7 (Apx 218-219). While Ms. Harris did not attend the Dallas Pathways event with her peers, she never asked to attend the event. Harris Dep. 44:23-45:1 (Apx 219-220). Instead, she went and attended the Memphis Pathways. Harris Dep. 321:11-18 (Apx 283). Accordingly, Ms. Harris's non-participation in the Memphis "Pathways" event does not rise to the level of substantial evidence of pretext. *See Owens*, 2022 U.S. App. LEXIS 13016, at *30.

(4)   Ms. Lamb's Alleged Aggressiveness with Ms. Harris in Emails and in Conducting Regular One-On-One Meetings.

Ms. Harris asserts that Ms. Lamb was "aggressive" with her in emails and in conducting regular meetings.  (SOF 28).  However, it was *Ms. Harris* who requested these meetings, which were for the purpose of helping her meet performance expectations.  (SOF 8).  Additionally, the documents that are in the record demonstrate nothing other than that Ms. Lamb discussed performance expectations and conducted coaching in a professional manner.  *See e.g.,* SOF 8, 11-18.  Moreover, Ms. Harris concedes that a manager can highlight issues or "areas of opportunity" in one-one-one meetings and in emails.  Harris Dep. 66:9-20 (Apx 225).  Accordingly, this does not constitute "substantial" evidence of pretext. *See Owens, supra*, 2022 U.S. App. LEXIS 13016, at *15.

(5)   Ms. Harris's Comparison with White Peers

In her deposition, Ms. Harris repeatedly referenced the allegation that her performance was superior to certain White peers as a basis for her allegation of pretext and discrimination.  *See e.g.*, Harris Dep. 64:23-65:4, 90:7-11, 223:19-224:4, 226:5-8 (Apx 223-224; 228; 260-261; 263).  Ms. Harris even cited to some documents that showed, from time to time, that there were White peers who were ranked lower than her in a particular metric at a specific date in time.  Harris Dep. 358:19-362:13 (Apx 292-296).  Ms. Harris does not provide evidence that any White peers had sustained performance issues like her, and Mr. Holley.  Nor does Ms. Harris provide evidence that any other White peers' performance warranted that peer (other than Mr. Holley) being issued a Letter of Counseling, a Warning Letter, or being placed on a Performance Improvement Plan. Indeed, such sporadic references to periodic performance problems experienced by White peers do not rise to the level of "substantial" evidence of pretext.  *See, e.g.*, *Owens, supra*, 2022 U.S. App. LEXIS 13016, at *16-*18.  Additionally, Ms. Harris's comparator evidence is negated by

the fact that the only true comparator, Richard Holley, a White male, was asked to resign or retire in lieu of termination, under similar circumstances and based on the same progressive discipline. (SOF 25-27).

## V.    Ms. Harris's Retaliation Claim Must Be Dismissed.

Although Ms. Harris made several internal complaints of discrimination and was subjected to adverse employment actions in the form of performance-related discipline and ultimately termination after doing so, Ms. Harris cannot, as required, establish that her internal complaint(s) were "the" reason why she was subjected to adverse actions. *Owens, supra,* 2022 U.S. App. LEXIS 13016, at *36.  By contrast, as is discussed in Section IV, B *supra*, FedEx terminated Ms. Harris's employment after extensive documentation of performance deficiencies, including a Letter of Counseling, a Performance Improvement Plan, followed by a Letter of Warning, and another Performance Improvement Plan.  (SOF 11-16, 18, 23-24).  Although, as is discussed in Section IV, C, *supra*, Ms. Harris has attempted to establish that these reasons were concocted and pretextual, her efforts to do so fall far short of the "but for" causation standard she must meet to prove her retaliation claim.  *Owens, supra,* 2022 U.S. App. LEXIS 13016, at *36. Her retaliation claim fails as a matter of law.

## <u>CONCLUSION</u>

For the reasons set forth above, FedEx respectfully requests that this Court enter judgment in FedEx's favor on all claims in this action.

DATED: June 15, 2022              Respectfully submitted,

                                  */s/ Barak J. Babcock*
                                  Barak J. Babcock
                                  Tennessee Bar No. 024021
                                  SD No. 2522941
                                  ATTORNEY-IN-CHARGE
                                  Christopher M. Ahearn
                                  California State Bar No. 239089
                                  (Admitted *Pro Hac Vice*)
                                  FEDERAL EXPRESS CORPORATION
                                  3620 Hacks Cross Road
                                  Bldg. B, 3rd Floor
                                  Memphis, TN 38125-8800
                                  Telephone: (901) 434-8523
                                  Facsimile: (901) 492-9930
                                  Email: barak.babcock@fedex.com
                                  Email: Christopher.ahearn@fedex.com

                       **ATTORNEYS FOR DEFENDANT**


                       **CERTIFICATE OF SERVICE**


        I hereby certify that the foregoing document was filed with the Clerk of the Court using

the CM/ECF system, which will send a copy to all attorneys of record.


                              s/Barak J. Babcock

DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT—Page 24