```
 1            IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
 2                    HOUSTON DIVISION

 3   JENNIFER HARRIS,            *
                                 *
 4        Plaintiff,             *
                                 *     CIVIL ACTION
 5   vs.                         *     4:21-cv-1651
                                 *
 6   FEDEX CORPORATE SERVICES,   *
     INC.,                       *
 7                               *
          Defendant.             *

 8

 9

10            *******************************

11            ORAL AND VIDEOTAPED DEPOSITION OF
                       MICHELLE LAMB
12                    APRIL 27, 2022
                    (Conducted Remotely)
13
              *******************************
14

15

16        ORAL AND VIDEOTAPED DEPOSITION OF MICHELLE

17   LAMB, produced as a witness at the instance of the

18   Plaintiff, and duly sworn, was taken in the above-styled

19   and -numbered cause on the 27th day of April, 2022, from

20   8:29 a.m. to 11:13 a.m., before Leah K. Osteen Dow, CSR

21   in and for the State of Texas, reported remotely by

22   machine shorthand, with the witness being located in

23   Houston, Texas, taken pursuant to the Federal Rules of

24   Civil Procedure and any provisions, stipulations, or

25   agreements stated on the record by counsel.
```

P R O C E E D I N G S

THE REPORTER: Going on the record at 8:29 a.m., April 27, 2022, for the deposition of Michelle Lamb, being conducted remotely in the matter of Jennifer Harris vs. FedEx Corporate Services, Inc.

My name is Leah Osteen, Texas CSR 3916, reporting remotely from Hurst, Texas. The witness is located in Houston, Texas.

Would counsel state their appearances and any agreements for the record.

MS. SANFORD: BB Sanford for the Plaintiff, Jennifer Harris. And Brian Sanford may be joining later, too, but he's not here now.

MR. BABCOCK: Good morning. Barak Babcock for FedEx.

And, Counsel, we've had email traffic, but just to reiterate what we wrote in our March 6, 2022, email, we believe that Zoom deposition recordings recorded in the Zoom app are objectionable to be submitted to the Court or a jury. So we'll just put that objection on the record.

THE REPORTER: Ms. Lamb, if you'll raise your right hand, I'll swear you in.

(Witness placed under oath.)

MICHELLE LAMB,

```
08:30   1   having been first duly sworn, testified as follows:
        2                        EXAMINATION
08:30   3   BY MS. SANFORD:
08:30   4       Q.   All right.  Good morning, Ms. Lamb.  My name is
        5   BB Sanford.  I'll be the one asking you most of the
        6   questions today.
08:30   7       A.   Okay.
08:30   8       Q.   Have you ever had your deposition taken before?
08:30   9       A.   No, I have not.
08:30  10       Q.   Okay.  I assume your attorney probably told you
       11   how this is going to go.  But he may make certain
       12   objections throughout the course of the deposition.  You
       13   may still continue to answer even if he objects unless
       14   he instructs you not so.
08:30  15                 Do you understand that?
08:30  16       A.   Yes, I do.  Thank you.
08:30  17       Q.   And where are you located today?
08:30  18       A.   I'm located in Houston, Texas.
08:30  19       Q.   Are you at your office?  Are you at your
       20   attorney's office?
08:30  21       A.   I am in a FedEx office, not my FedEx office.
08:31  22       Q.   Where is your FedEx office located?
08:31  23       A.   I work out of my home presently.
08:31  24       Q.   And when you don't, do you have an office?  Do
       25   you have a spot that you go to at a building that's not
```

10:25  1    Q.   Okay.  The district sales managers that you
2    approved and allowed FedEx to expense those costs,
3    who were -- who were those people?
10:25  4              MR. BABCOCK:  Object to the form.
10:25  5    A.   I recall Rebecca Callahan, Brian Conrey, and
6    possibly Casey Millner.
10:26  7    Q.   And -- sorry.  What?
10:26  8    A.   They carpooled to Dallas, there and back, same
9    day, without the need for airline expense nor hotel
10   expense.
10:26 11    Q.   So the three individuals that FedEx could
12   budget that you approved to go to the Dallas Pathways
13   Program, they were all white, true?
10:26 14    A.   True.
10:26 15    Q.   I don't want to take up too much more of your
16   time.
10:26 17             Could you explain to me what the
18   Coach2Grow2.0 Program was?
10:26 19    A.   Coach2Grow2.0 is a -- was a rollout of coaching
20   expectations for our managers, which would allow them
21   the ability to customize their coaching approach based
22   on the needs of the individual that they are coaching.
10:27 23    Q.   And it's fair to say you weren't pleased with
24   how Harris -- Ms. Harris was rolling out her -- the
25   Coach2Grow2.0 Program with her team; is that -- is that

1 accurate?

2 A. That's accurate.

3 Q. Describe what Ms. Harris was doing wrong, in
4 your opinion.

5 MR. BABCOCK: Object to the form.

6 A. My -- I spent three and a half hours with
7 Ms. Harris reviewing expectations for her rollout of
8 Coach2Grow2.0 with her team. At that meeting, she took
9 no notes and had no questions.

10 I later followed up with her to establish
11 how those conversations went, and she said to me that
12 she had abbreviated the rollout and had only discussed a
13 couple of the slides with her team, which was not
14 following the direction that I had given her.

15 Q. And so you confronted Ms. Harris about these
16 issues?

17 MR. BABCOCK: Object to the form.

18 A. Yes.

19 Q. How did you do so? How did you do that?

20 A. I started by asking her questions. I asked her
21 for the results of her Coach2Grow rollout and quickly
22 identified that there are these gaps. I explained to
23 her that I was very disappointed and I needed her to
24 make sure that she understood the material and was
25 capable of rolling out to her team as instructed and as

```
          1   her peers were doing.
10:29     2        Q.   What was Ms. Harris's response?
10:29     3        A.   She said she would consult with her peers to
          4   learn how to roll out the material.
10:29     5             And I said, No.  We are going to have
          6   another conversation.  I'm your manager.  I need to
          7   teach you this material.  Your peers are also learning
          8   it for the first time themselves.
10:30     9             And so I went through it with her yet
         10   again.
10:30    11        Q.   And what happened after that?
10:30    12        A.   After that, she proceeded to roll out the
         13   material to her team.  And I asked her for confirmation
         14   that it was done with each individual, and she provided
         15   that for me.
10:30    16        Q.   And it met your satisfaction?  You coached her,
         17   and she did it right?
10:30    18             MR. BABCOCK:  Object to the form.
10:30    19        A.   Yes.
10:30    20        Q.   All right.  Explain -- would you explain to me
         21   your process -- let me start over.
10:31    22             It was your decision to terminate
         23   Ms. Harris in January 2020, true?
10:31    24        A.   True.
10:31    25        Q.   When did you make that decision?
```

10:31  1    A.  I made that decision after the unsuccessful
       2 completion of her second performance improvement plan.
10:31  3    Q.  So if I'm remembering right, she had two -- you
       4 gave Ms. Harris two letters of counseling and two
       5 performance improvement plans?
10:31  6            MR. BABCOCK:  Object to the form.
10:31  7    A.  There was a letter of counseling, a letter of
       8 warning, and two performance improvement plans.
10:31  9    Q.  And what expectation -- or what did she not
      10 meet in the second performance improvement plan that led
      11 to her termination for you?
10:32 12    A.  There were five objectives outlined within that
      13 performance improvement plan.  Three of the five
      14 objectives were not met.  The details of that
      15 performance improvement plan are not in front of me at
      16 the moment, but I know that those documents have been
      17 provided.
10:32 18    Q.  The -- you created a request for termination
      19 form; is that true?
10:32 20    A.  That's true.
10:32 21    Q.  And in that -- okay.  So it looks to me that
      22 when you gave Ms. Harris the letter of counseling, the
      23 first performance improvement plan came with it, that it
      24 was like a bundle.
10:32 25            Is that right?

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
 2                       HOUSTON DIVISION

 3   JENNIFER HARRIS,              *
                                   *
 4         Plaintiff,               *
                                   *      CIVIL ACTION
 5   vs.                            *      4:21-cv-1651
                                   *
 6   FEDEX CORPORATE SERVICES,     *
     INC.,                          *
 7                                  *
           Defendant.                *
 8
            *******************************************
 9                    REPORTER'S CERTIFICATION
              ORAL AND VIDEOTAPED DEPOSITION OF
10                       MICHELLE LAMB
                        APRIL 27, 2022
11          *******************************************
```

12           I, LEAH K. OSTEEN DOW, Certified Shorthand
13   Reporter in and for the State of Texas, hereby certify
14   to the following:
15           That the witness, MICHELLE LAMB, was duly
16   sworn by me and that the transcript of the oral
17   deposition is a true record of the testimony given by
18   the witness;
19           I further certify that pursuant to FRCP Rule
20   30(f)(1) that the signature of the deponent:
21           _XX__ was requested by the deponent or a party
22   before the completion of the deposition and is to be
23   returned within 30 days from date of receipt of the
24   transcript.  If returned, the attached Errata contain
25   any changes and the reasons therefor;

1    ____ was not requested by the deponent or a
2    party before the completion of the deposition.
3             I further certify that I am neither counsel
4    for, related to, nor employed by any of the parties or
5    attorneys to the action in which this proceeding was
6    taken.  Further, I am not a relative or employee of any
7    attorney of record in this cause, nor am I financially
8    or otherwise interested in the outcome of the action.
9             Subscribed and sworn to on this the 19th day
10   of May, 2022.

15   _____
     LEAH K. OSTEEN DOW, Texas CSR
     Certification expires:  4/30/2023
16   Firm Registration No. 392
     Osteen & Associates Reporting Services
17   313 Northglen Dr.
     Hurst, Texas  76054-3024
18   (817) 498-9990
     osteenreporting@gmail.com