```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
 2                        HOUSTON DIVISION
 3   JENNIFER HARRIS,              *
                                   *
 4          Plaintiff,              *
                                   *     CIVIL ACTION
 5   vs.                           *     4:21-cv-1651
                                   *
 6   FEDEX CORPORATE SERVICES,     *
     INC.,                         *
 7                                 *
            Defendant.              *
 8
 9           **********************************
               ORAL AND VIDEOTAPED DEPOSITION OF
10               FEDEX CORPORATE SERVICES, INC.,
               BY AND THROUGH ITS REPRESENTATIVE
11                      BRIAN BURCHETT
                         MAY 24, 2022
12                    (Conducted Remotely)
             **********************************
13
14          ORAL AND VIDEOTAPED DEPOSITION OF FEDEX
15   CORPORATE SERVICES, INC., BY AND THROUGH ITS
16   REPRESENTATIVE BRIAN BURCHETT, produced as a witness at
17   the instance of the Plaintiff, and duly sworn, was taken
18   in the above-styled and -numbered cause on the 24th day
19   of May, 2022, from 3:03 p.m. to 5:05 p.m., before Leah
20   K. Osteen Dow, CSR in and for the State of Texas,
21   reported remotely by machine shorthand, with the witness
22   being located in Forest View, Illinois, taken pursuant
23   to the Federal Rules of Civil Procedure and any
24   provisions, stipulations, or agreements stated on the
25   record by counsel.
```

```
 1                A P P E A R A N C E S
                    (Appearing remotely)
 2

 3

 4   FOR THE PLAINTIFF:

 5        Ms. Elizabeth "BB" Sanford (videographer)
          THE SANFORD FIRM
 6        1910 Pacific Avenue
          Suite 15400
 7        Dallas, Texas   75201
          (214) 717-6653
 8        esanford@sanfordfirm.com

 9

10

11   FOR THE DEFENDANT:

12        Mr. Barak J. Babcock
          FEDERAL EXPRESS CORPORATION
13        3620 Hacks Cross Road
          Building B, 3rd Floor
14        Memphis, Tennessee   38125
          (301) 739-0512
15        barak.babcock@fedex.com

16

17

18

19

20

21

22

23

24

25
```

|  |  |
|---|---|
| 1 | P R O C E E D I N G S |
| 03:03  2 | THE REPORTER: Going on the record at 3:03 |
| 3 | p.m., on May 24, 2022, for the deposition of Brian |
| 4 | Burchett, being conducted remotely in the matter of |
| 5 | Jennifer Harris vs. FedEx Corporate Services, Inc. |
| 03:03  6 | My name is Leah Osteen, Texas CSR 3916, |
| 7 | reporting remotely from Hurst, Texas. The witness is |
| 8 | located in Forest View, Illinois. |
| 03:03  9 | Would counsel state their appearances and |
| 10 | any agreements for the record, and also identify anyone |
| 11 | else in attendance. |
| 03:03 12 | MS. SANFORD: BB Sanford for the |
| 13 | Plaintiff, Jennifer Harris. |
| 03:03 14 | MR. BABCOCK: This is Barak Babcock for |
| 15 | FedEx. There's no one else present or intending to join |
| 16 | the call. |
| 03:03 17 | And then as I previously indicated in our |
| 18 | April 6, 2022, email, FedEx asserts the use of the video |
| 19 | recording made in the Zoom platform is objectionable and |
| 20 | cannot be submitted to the Court or jury. |
| 03:04 21 | And then this is the third 30(b)(6) |
| 22 | deposition that Ms. Sanford and I have done in this |
| 23 | case, and, with the other two, I'm going to object to |
| 24 | form questions, as is the normal process, but I'm also |
| 25 | going to object with the phrase "object, outside the |

1 scope." And we've agreed that means that FedEx is
2 objecting to the witness providing 30(b)(6) testimony on
3 the question asked because we believe it's outside the
4 scope of what we designated the witness to testify on
5 behalf of FedEx for. But, of course, the witness will
6 be allowed to answer the question in the witness's
7 personal capacity.

03:04 8     But just so I don't have to say all that
9 after every question that I believe is outside the
10 scope, we've agreed that the phrase "object, outside the
11 scope" will mean that.

03:04 12     Is that fair, Ms. Sanford?
03:04 13     MS. SANFORD: Yes.
03:04 14     THE REPORTER: Mr. Burchett, if you'll
15 raise your right hand, I'll swear you in.
16     (Witness placed under oath.)
03:05 17     MR. BABCOCK: Oh, and, Ms. Sanford, before
18 you start, Mr. Burchett does have some notes in front of
19 him, and some other documents.
03:05 20     MS. SANFORD: Yes.
03:05 21     MR. BABCOCK: And I presume you want to
22 mark all that as Exhibit 1 to this deposition, or
23 whatever number you want to designate. And then
24 assuming I don't lose the stuff between Illinois and
25 Memphis, I will get them scanned in and sent over.

```
03:05   1                    MS. SANFORD:  Yeah.  We'll designate
        2   everything that he has in front of him as Exhibit 1.
03:05   3                    MR. BABCOCK:  Okay.  Yeah.  I got
        4   everything.  I'm eyeballing it, so I will take it.
03:05   5                    MS. SANFORD:  Awesome.
        6                    (Exhibit 1 marked.)
        7                    BRIAN BURCHETT,
        8   having been first duly sworn, testified as follows:
        9                         EXAMINATION
03:05  10   BY MS. SANFORD:
03:05  11        Q.   All right.  Good afternoon, Mr. Burchett.  My
       12   name is BB Sanford.  I'm one of the attorneys
       13   representing Jennifer Harris.
03:06  14             Do you understand who I am and who I
       15   represent?
03:06  16        A.   I do, yes.  Good afternoon.
03:06  17        Q.   What is your job title at FedEx?
03:06  18        A.   Manager of -- managing director of sales.
03:06  19        Q.   What is your region?
03:06  20        A.   My region is the Midwest region.  I'm
       21   responsible for Illinois, Iowa, and Wisconsin for the
       22   field sales organization.
03:06  23        Q.   Does that make you a peer of -- or I guess
       24   Michelle Lamb has a different job now.  Were you -- is
       25   that the same job as Michelle Lamb, just a different
```

|  |  |
|---|---|
| 1 | into central Illinois. |
| 03:08  2 | Q.   And what were the dates that you were a |
| 3 | district sales manager at FedEx, or years?  You don't |
| 4 | have to be exact. |
| 03:08  5 | A.   Yeah.  So three and a half years ago would have |
| 6 | been 2019, correct?  So 2015 to 2019. |
| 03:08  7 | Q.   And becoming a manager -- managing director of |
| 8 | sales after being a district sales manager, that is a |
| 9 | promotion, correct? |
| 03:08 10 | A.   That is a promotion, correct. |
| 03:08 11 | Q.   What did you have prior -- what was your role |
| 12 | prior to being district sales manager? |
| 03:08 13 | A.   Strategic development account executive. |
| 03:08 14 | Q.   Sorry.  Say that one more time. |
| 03:08 15 | A.   Strategic development account executive. |
| 03:08 16 | Q.   Is that an AE, for short? |
| 03:09 17 | A.   Yes, it is, with certain responsibilities. |
| 18 | Correct. |
| 03:09 19 | Q.   And you reported to a district sales manager in |
| 20 | that position, true? |
| 03:09 21 | A.   That is correct. |
| 03:09 22 | Q.   What years were you an account executive? |
| 03:09 23 | A.   Two thousand- -- so in two different |
| 24 | capacities.  So the first position was strategic |
| 25 | development.  Prior to that was market development.  But |

03:28  1    Q.   I believe one of the reasons for termination
2    you said was that Ms. Harris was not setting
3    expectations and holding her AEs accountable.
03:28  4    What do you mean by that?  Is that
5    different from the Coach2Grow attributes, or no?
03:28  6    MR. BABCOCK:  Object; it's outside the
7    scope.
03:28  8    Go ahead and answer.
03:28  9    A.   Yeah, so the -- the Coach2Grow behavior is --
10   or the Coach2Grow skills, if you will, is about the
11   development of our people.  So it is our intent as
12   coaches to take an underperforming employee and develop,
13   you know, the areas of opportunity in which they're
14   struggling at the moment.  And so those behaviors that
15   Ms. Harris was not demonstrating in terms of coaching
16   and delivering with her people are what I refer to as
17   Coach2Grow.
03:28  18   Then when we're talking about
19   accountability, there are certain expectations of the
20   job that you're expected to meet, such as closed
21   business metrics, being above attainment, et cetera.
03:29  22   And what I read in many of the
23   documentations was questions regarding holding specific
24   employees of Ms. Harris accountable.  And continuously
25   Ms. Harris was not doing so, which ultimately allowed

03:34  1            Is that true?
03:34  2            MR. BABCOCK: Object to the form.
03:34  3       A.   Yes. And there were -- and there were other --
       4  the other one would be being above attainment, which is
       5  a very critical expectation. And you mentioned the
       6  coaching of her team to develop those skills.
03:35  7       Q.   So attainment is a goal or expectation of an
       8  employee?
03:35  9       A.   Yes, absolutely.
03:35 10       Q.   The goal is -- the attainment goal is a hundred
      11  percent, true?
03:35 12       A.   That is correct.
03:35 13       Q.   And Ms. Lamb sets Ms. Harris's attainment
      14  goals, true?
03:35 15       A.   That is not true. The organization sets our
      16  goals based on last year's -- year-over-year revenue of
      17  the territory, and then they -- then the organization
      18  sets a growth goal, if you will, in terms of how much we
      19  want to grow for the year as a company.
03:36 20            MR. BABCOCK: I'm sorry. Ms. Sanford, I
      21  need to take a quick break. I apologize.
03:36 22            MS. SANFORD: Okay.
03:36 23            THE REPORTER: Off the record at 3:36.
      24            (Recess taken from 3:36 to 3:40.)
03:38 25            THE REPORTER: Back on the record at 3:40.

```
03:40  1       Q.   All right.  I think my last question to you was
       2   about attainment goals.  You said the organization sets
       3   the attainment goals based on last year's revenue plus
       4   growth.
03:40  5                Is that true?
03:40  6                MR. BABCOCK:  Object to form.
03:40  7       A.   That's correct.  In -- in sales in general,
       8   we're expected to be at a hundred percent to plan both
       9   at the AE level as well as the district, you know,
      10   managing director level and above, et cetera.
03:41 11                But as far as the setting of the goals,
      12   that comes from the organization.  It's based upon the
      13   revenue of -- the revenue that that particular territory
      14   or district performed last year times whatever our
      15   growth goal is for the year.
03:41 16       Q.   Who in the organization is actually setting the
      17   goal -- setting the goal, practically?
03:41 18                MR. BABCOCK:  Object; it's outside the
      19   scope.
03:41 20       A.   You know, my assumption would be finance and
      21   our -- and our executive leadership team and the board
      22   of directors, but I am not 100 percent certain.
03:41 23       Q.   Does Michelle Lamb have the power to go in and
      24   make adjustments for her district sales managers' goals?
03:41 25                MR. BABCOCK:  Object, outside the scope.
```

03:41  1    A.   She does not have the opportunity to make an
       2  adjustment to the -- the expectation of being at a
       3  hundred percent attainment.  However, you know, as I was
       4  reviewing the performance plans, in performance plan
       5  one, the expectation was set for Mrs. Harris to reach
       6  100 percent goal, which she did not do during the LOC
       7  period of time.
03:42  8              When she was advanced to the LOW, I did
       9  notice that Ms. Lamb reduced her expectation at that
       10 moment to -- to comply with the average of the remaining
       11 managers within the region at that -- at that time.
03:42  12   Q.   Okay.  So let's take that in pieces.  So I
       13 under- -- so, first of all, I understand a hundred
       14 percent is always going to be the goal for a district
       15 sales manager.
03:42  16             True?
03:42  17   A.   Correct.
03:42  18   Q.   But each district sales manager has a
       19 different -- how would you describe it?  They're not all
       20 the same, right?
03:42  21             MR. BABCOCK:  Object; it's outside the
       22 scope.
03:42  23   Q.   Am I making sense?
03:42  24   A.   Yeah.  Every territory is -- sorry.  Go ahead
       25 with your question.

| | | |
|---|---|---|
| 03:44 | 1 | MR. BABCOCK: Object to the form. |
| 03:44 | 2 | A. Yeah, Ms. -- Ms. Lamb reduced the expectations |
| | 3 | from reaching a hundred percent to -- to basically |
| | 4 | reaching the average attainment of all managers inside |
| | 5 | her region. That doesn't mean that the district or |
| | 6 | territory sizes is different. It just means the |
| | 7 | attainment of one manager to the other could be slightly |
| | 8 | different. |
| 03:44 | 9 | And so she took the average of all the |
| | 10 | performance within that region and lowered Ms. Harris's |
| | 11 | expectations from a hundred to meet the average. |
| 03:44 | 12 | Q. So it's fair to say that the average manager |
| | 13 | was not meeting their attainment goal -- |
| 03:45 | 14 | MR. BABCOCK: Object to the form. |
| 03:45 | 15 | Q. -- during that time? |
| 03:45 | 16 | MR. BABCOCK: Object as outside the scope. |
| 03:45 | 17 | A. Yes, that is correct. At that time, the |
| | 18 | average of the -- what I'm referencing here in her |
| | 19 | second PIP, the average attainment of that region was |
| | 20 | 93.7 percent at that time. |
| 03:45 | 21 | Q. That's less than a hundred percent? |
| 03:45 | 22 | A. Yes, it is. |
| 03:45 | 23 | Q. Did you conduct any independent investigation |
| | 24 | to determine if FedEx's alleged reasons for Ms. Harris's |
| | 25 | termination is true -- are true? |