Case 4:21-cv-01651   Document 56   Filed on 08/31/22 in TXSD   Page 1 of 6

United States District Court
Southern District of Texas
**ENTERED**
August 31, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JENNIFER HARRIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-01651 |
| | § | |
| FEDEX CORPORATION, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND ORDER

**I.**

Before the Court are the following motions; the plaintiff, Jennifer Harris' motion for leave to respond with supplemental evidence [DE 47]; the plaintiff's motion for leave to amend her complaint to add Title VII as a claim [DE 42]; the defendant, FedEx Corporation's opposition to the plaintiff's motion to amend [DE 49]; the defendant's motion for summary judgment [DE 27]; the plaintiff's response to the defendant's motion for summary judgment [DE 28]; and, the defendant's reply to the plaintiff's response [DE 43]. After a thorough review of the pending documents, the Court determines that the plaintiff's motions [DEs 42 and 47] should be Granted and the defendant's motion for summary judgment should be Denied.

**II.**

The plaintiff commenced her employment with the defendant in 2007 as an Account Executive, an entry level inside sales position. Over time, she was promoted to Sales Executive; Field Sales Account Executive, Field Sales Executive, Inside Sales Manager; Business Sales Field Manager and finally, District Sales Manager for Field Sales, the position she held when she was terminated on January 7, 2020.

As a District Sales Manager, the plaintiff supervised a team with a primary responsibility for generating revenue and maintaining existing customer accounts. The plaintiff's performance was measured, in part, by her team's success at meeting annual revenue goals that were adjusted from year-to-year based on the assigned territory's revenue from the previous year. Thus, "high performance in one year could have the effect of increasing" [revenue goals] for an impending or upcoming year.

Beginning in June 2017, the plaintiff reported to Managing Director, Michelle Lamb. The plaintiff took advantage of Lamb's leadership and, in October 2018, began one-on-one meetings with Lamb that continued throughout the plaintiff's tenure. In early 2019, the defendant introduced a new program called "Coach 2 Grow" designed to improve each sale teams' sales performance.

It appears that Lamb was unsatisfied with the plaintiff's rollout of the program for her team and, as a result, "met [frequently] with the plaintiff". On one occasion, during a meeting about the plaintiff's implementation of the new program, Lamb "suggested to the [plaintiff] that she might want to consider reverting to being an Account Executive, a role in which the [plaintiff] had excelled previously." The plaintiff did not accept Lamb's suggestion. Shortly, after that suggestion on June 26, 2019, Lamb issued a Letter of Counseling to the plaintiff. According to Lamb, the letter was a result of the plaintiff's failure to "meet plan 4 out of 4 quarters in FY 19," and failure to produce a "performance improvement plan ("PIP")" or put in place a plan "to overcome deficiencies."

After receiving the Letter of Counseling, Lamb met with the plaintiff to create a plan that would "resolve the performance issues outlined in the [PIP]". Apparently, unsatisfied with the plaintiff's improvement, Lamb issued a Letter of Warning [September 13, 2019] to the plaintiff

that included a second PIP. At the time, it appears that the plaintiff's revenue performance was 91.6% of her previous year's revenue. Lamb desired to make "the second PIP more feasible for the plaintiff and reduced her goal from 100% to 94.8%, a percentage that, at the time, was 3.2% above the plaintiff's then current standing by averaging the performance percentage of the District Sales Manager.

After the March 2019, meeting with Lamb, the plaintiff filed several internal complaints, including allegations of race discrimination [March 2019, June 2019 and December 2019]. According to the defendant, the plaintiff's complaints were investigated and found to be unsubstantiated in January 2020. On January 7, 2020, the plaintiff was terminated.

### III.

In its motions for summary judgment and related motions, the defendant asserts that there is no genuine issue or dispute as to any material fact that defeats the defendant's entitlement to a judgment as a matter of law based on the following: (a) the plaintiff's § 1981 claim is barred by a contractual six-month limitations period; (b) under the *McDonnel Douglas* burden-shifting framework, the plaintiff has not and cannot overcome the defendant's "legitimate, nondiscriminatory reason" for her termination based on race; (c) the plaintiff's retaliation claim fails because there is no evidence or insufficient evidence of a casual connection between the filing of the plaintiff's compliments the issuance of PIPs and the plaintiff's termination.

### IV.

The Court determines that the plaintiff's motion to supplement her response evidence [DE 47-4] should be granted. The Court views, the supplement merely as adding substantiation to a claim and facts already made [race discrimination], and, thereby, explaining the basis for any delay in filing her lawsuit. That aside, the Court is of the opinion that the defendant's contractual

limitation of six months within which a civil rights claim may be filed, months on a civil rights claim, whether a § 1981 or Title VII, fails on at least two bases.

     First, the burden of proof for a § 1981 claim is indistinguishable from the burden of proof for a Title VII.  Therefore, the defendant is not prejudiced by the added basis for the plaintiff's claims.  As well, the defendant was on notice prior to terminating the plaintiff that she had filed a formal complaint with the EEOC.  *See Jones v. Robinson Property Group, LP,* 427 F.3d 987, 992 (5th Cir. 2005).  Second, the contractual six-month period of limitations within which "any" suit might be filed against the defendant, cuts against public policy and sidesteps a federal administrative process designed to meet and defeat long-standing policies of bias and discrimination in the workplace.  *See Burnett v. Grattan*, 468 U.S. 42, 48 (1984); 28 U.S.C. § 1658; *see also Jones vv. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004).  Therefore, the defendant's claim for summary judgment based on contractual limitations is denied.

     The defendant's motion for summary judgment based on a lack of discrimination and retaliation are, likewise, denied.  In order to establish a *prima facie* case of discrimination, a plaintiff must establish that she belongs to a protected group, was qualified for her position, suffered an adverse employment action, and a similarly situated employee outside the plaintiff's protected group was treated more favorably.  *Watkins v. Tregre*, 997 F.3d 275, 282 (5th Cir. 2021).  With the exception of producing evidence of a causal connection between the adverse employment action and a plaintiff's protected activity, the plaintiff's *prima facie* burden for a retaliation claim and an employer's burden of persuasion are similar.  *See Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981).  In both instances, the evidence required may be direct or indirect.  *See West v. Nabors Drilling USA, Inc.,* 330 F.3d 379, 384 n. 3 (5th Cir. 2003).  As well, in a retaliation claim, temporal proximity between an in-house EEO complaint and an adverse employment action

is sufficient, as an inference, to establish a *prima facie* case of retaliation.  *See Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001).

In the case at bar, the undisputed evidence overcomes the defendant's proffered evidence of a legitimate, nondiscriminatory basis for terminating the plaintiff.  Whether the plaintiff initially asserted that race was a basis for Lamb's and the defendant's actions, is not necessary to establish a claim for racial disparity in treatment between the plaintiff and her white peers.  The statistics relied upon by the defendant to establish the plaintiff's failing are direct evidence of disparity in treatment.

During Lamb's counseling and/or meetings with the plaintiff, it became clear that the plaintiff's 91.6% revenue performance was greater than at least one of her white peers.  The average of 85.1% and 98.42% equals 94.8%.  According to the defendant, Lamb averaged the scores of two District Sales Managers to reach the 94.8% average.  A calculation that averages the scores should be based on the low of 85.01% and the high of 98.42%.  It is noted that the average between the low and the high is 91.715%.  By the averaging method, the plaintiff revenue performance was 0.11% below the average.  This calculation also establishes that at least one white District Sales Manager's score was 9.79% below the average (91.715) or 14.99% below his/her expected goal.

The letter of termination states that the plaintiff's termination was based solely on her lack of performance.  In fact, the defendant admits that job performance is measured "in part" by whether a District Sales Manager meets the defendant's revenue goal.  Because the plaintiff's termination was based solely on her failure to meet the defendant's revenue goal, when others not of her race but in similar positions were not terminated when they did not meet their revenue goals,

raises the inference that race could have been factor in the plaintiff's termination. Thereafter, the defendant's motion for summary judgment is Denied.

It is so Ordered.

SIGNED on August 31, 2022, at Houston, Texas.

_____
Kenneth M. Hoyt
United States District Judge