**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| JENNIFER HARRIS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | Civil Action 4:21-cv-1651 |
| | ) | |
| FEDEX CORPORATION, | ) | |
| | ) | |
| *Defendant.* | ) | |

**DEFENDANT FEDEX CORPORATE SERVICES, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR RECONSIDERATION RE RULING ON SUMMARY**
**JUDGMENT AND PLAINTIFF'S MOTION TO AMEND COMPLAINT**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................3

I.    INTRODUCTION ....................................................................................4

II.   NATURE AND STAGE OF THE PROCEEDING ......................................5

III.  ISSUES AND STANDARD OF REVIEW ...................................................5

IV.   LEGAL STANDARD FOR RECONSIDERATION....................................6

V.    THE MSJ ORDER CONTAINS FACTUAL ERRORS AS TO FEDEX'S MOTION FOR SUMMARY JUDGMENT ......................................................6

A.    Plaintiff Was *Not* Terminated Solely For Failure to Meet Revenue Attainment Goals ......... 7

VI.   THE MSJ ORDER CONTAINS LEGAL ERRORS AS TO FEDEX'S MOTION FOR SUMMARY JUDGMENT .................................................17

A.    The Court Failed to Follow, or even Discuss, the *Owens* Case........................................... 17

B.    The Court's Analysis Appears to Confuse Direct and Indirect Evidence ............................ 18

A.    If Summary Judgment is Granted in FedEx's Favor, Amendment to Allow Plaintiff's Title VII Claim Would be Futile .................................................. 19

B.    The Court's Ruling on FedEx's Contractual Limitation Period Is Incorrect......................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Amer. Civ. Lib. Un. of Ky.v. McCreary Cty.*,
   607 F.3d 439 (6th Cir. 2010) ....................................................................5

*Buehler v. Dear*,
   27 F.4th 969 (5th Cir. 2022) ....................................................................5

*Owens v. Circassia Pharms, Inc.*,
   33 F.4th 814 (5th Cir. 2022) ....................................................4, 16, 17, 18

*Rosenzweig v. Azurix Corp.*,
   332 F.3d 854 (5th Cir. 2003) ..................................................................18

*West v. Nabors Drilling USA, Inc.*,
   330 F.3d 379 (5th Cir.2003) ...................................................................18

**Statutes**

42 U.S.C. § 1981.................................................................................4, 18, 19, 20

42 U.S.C. § 1981a(b)(3)(D) ...........................................................................19

Civil Rights Act of 1964 Title VII.............................................................4, 18, 19, 20

**Other Authorities**

Federal Rules of Civil Procedure Rule 60 ...................................................3

FedEx's Statement of Fact 16 .....................................................................14

Local Rule CV-7(h), (i), I ............................................................................21

Rule 59(e)......................................................................................................5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| JENNIFER HARRIS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | Civil Action 4:21-cv-1651 |
| | ) | |
| FEDEX CORPORATION, | ) | |
| | ) | |
| *Defendant.* | ) | |

Defendant FedEx Corporate Services, Inc. (hereinafter, "Defendant" or "FedEx") hereby moves for reconsideration of the Court's order (ECF No. 056 – or the "MSJ Order") denying FedEx's motion for summary judgment (ECF Nos. 027-029) (the "MSJ") and granting Plaintiff's motion to amend her complaint (ECF No. 057). FedEx makes this motion pursuant to Rule 60 of the Federal Rules of Civil Procedure.

## I.      INTRODUCTION

FedEx respectfully requests that the Court correct errors in its MSJ Order, and that it reverse the order, grant summary judgment in FedEx's favor, and deny Plaintiff's motion to amend. The Court erred by:

(1) Incorrectly stating that Plaintiff's termination was based solely on sales performance/revenue goal attainment, when there were additional issues with Plaintiff's performance unrelated to those numbers;

(2) Incorrectly analyzing Plaintiff's revenue attainment numbers, in seeking to compare Plaintiff to her White peers;

(3) Failing to follow, or even discuss, the Fifth Circuit's decision in *Owens*, cited by FedEx. *Owens* is closely analogous to the instant case and effectively disposes of Plaintiff's pretext arguments.

(4) Referencing direct (as opposed to indirect/circumstantial) evidence of discrimination when none is present or even argued by Plaintiff;

(5) Allowing Plaintiff to amend her complaint to add a Title VII claim, when it should fail on the merits for the same reasons that her Section 1981 claim fails (including failure to show that FedEx's reasons for its employment actions were pretext);

(6) Denying summary judgment as to FedEx's contractual limitation period argument, based on the notion that the contract runs afoul of a federal administrative process that only applies to Title VII claims, and not to Section 1981 claims (thus exposing FedEx to additional compensatory and punitive damages available in a 1981 proceeding); and

(7) Allowing Plaintiff to amend her complaint in opposition to summary judgment, despite contrary Fifth Circuit authority.

## II.    NATURE AND STAGE OF THE PROCEEDING

Plaintiff is a former sales manager for FedEx who FedEx claims it terminated for performance. Plaintiff claims she was discriminated against on the basis of her race, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. A docket call re trial setting is scheduled for September 12, 2022 at 11:30 a.m. and a Telephone Conference regarding the docket call is set for September 8, 2022 at 9:30 a.m.

## III.    ISSUES AND STANDARD OF REVIEW

The issues are (1) whether the Court should reconsider and reverse its ruling on FedEx's MSJ, and grant summary judgment in FedEx's favor, and (2) whether the Court should reconsider

and reverse its ruling on Plaintiff's motion to amend her complaint. A ruling on a motion for reconsideration is generally reviewed for abuse of discretion. However, when reconsideration is based on a question of law, a *de novo* standard applies. *Buehler v. Dear*, 27 F.4th 969, 980 & n.13 (5th Cir. 2022).

## IV.    LEGAL STANDARD FOR RECONSIDERATION

A court may reconsider and amend a prior order, upon motion by a party, under either Rule 59(e) ("a motion to alter or amend a judgment. . .") or 60(b) ("the court may relieve a party or its legal representative from a final judgment, order, or proceeding …") of the Federal Rules of Civil Procedure. Among the potential reasons for reconsideration of a prior order is clear error in the decision. *Amer. Civ. Lib. Un. of Ky.v. McCreary Cty.*, 607 F.3d 439, 450 (6th Cir. 2010).

This motion contends, respectfully, that the Court's MSJ Order is clear error. Additionally, if the Court reverses its order and grants summary judgment in FedEx's favor, it should also reverse its ruling on Plaintiff's motion to amend her Complaint, because such an amendment would be futile if her discrimination/retaliation-based claims are determined to have no merit.

## V.    THE MSJ ORDER CONTAINS FACTUAL ERRORS AS TO FEDEX'S MOTION FOR SUMMARY JUDGMENT

The core of the Court's analysis, which led the Court to draw potential inferences of discrimination in Plaintiff's favor, relies upon an erroneous interpretation of facts set forth in FedEx's paper. Such errors are straightforwardly evident from the ruling and from the papers themselves, as follows.

The order states, in pertinent part:

> During Lamb's counseling and/or meetings with the plaintiff, it became clear that the plaintiff's 91.6% revenue performance was greater than at least one of her white peers. The average of 85.1% and 98.42% equals 94.8%. According to the defendant, Lamb averaged the scores of two District Sales Managers to reach the

94.8% average. A calculation that averages the scores should be based on the low of 85.01% and the high of 98.42%. It is noted that the average between the low and the high is 91.715%. By the averaging method, the plaintiff revenue performance was 0.11% below the average. This calculation also establishes that at least one white District Sales Manager's score was 9.79% below the average (91.715) or 14.99% below his/her expected goal.

The letter of termination states that the plaintiff's termination was based solely on her lack of performance. In fact, the defendant admits that job performance is measured "in part" by whether a District Sales Manager meets the defendant's revenue goal. <u>Because the plaintiff's termination was based solely on her failure to meet the defendant's revenue goal</u>, when others not of her race but in similar positions were not terminated when they did not meet their revenue goals, raises the inference that race could have been factor in the plaintiff's termination. Thereafter, the defendant's motion for summary judgment is Denied.

ECF 056 at 5-6 (emphasis added).

### A.   <u>Plaintiff Was *Not* Terminated Solely For Failure to Meet Revenue Attainment Goals</u>

### i.     *Plaintiff*'s Job Duties Include More than Just Revenue Attainment

The first, and most fundamental, incorrect factual premise in the above paragraphs is the notion that "plaintiff's termination was based solely on her failure to meet the defendant's revenue goal." *Id.* As the foregoing passage *itself acknowledges*, Plaintiff was terminated for *lack of performance*, and her performance was only measured *"in part"* by attaining her revenue goals. *Id*. As is set forth in Plaintiff's job description, her job requirements include "effective management of an account executive team," and "day to day supervision of activities including training, manpower planning, motivation and performance evaluation of Sales Representatives and support personnel." MSJ, at 7-8 (Summary of Material Facts, ¶ 4), citing to Harris Dep. 116:18-

117:9 (Apx 235-236); Ex. 3 (Apx 125)[1]. These are in addition to "ennsur[ing] sales objectives are met." *Id.*

      ii.    *Plaintiff Received a Letter of Counselling for F*ailing to Meet Job Duties, Including, but Not Limited Due, Revenue Attainment.

Plaintiff's failure to adequately perform such additional job duties is clearly set forth in the documentation of the performance management process that culminated in Plaintiff's termination. For example, the June 2019 Letter of Counseling issued to Plaintiff does highlight failures in revenue goal attainment. MSJ, at 9-10 (Summary of Material Facts, ¶ 11), citing to Harris Dep. Ex. 31 (Apx 158). However, it also highlights failures in her job duty of "training, manpower planning, motivation and performance evaluation" (from job description, cited *supra*) of subordinates. Namely, it states "[d]espite these deficiencies, and our multiple conversations on the subject, you have no performance plans in place for any members of your team.  It is your responsibility as a leader to address on-going performance deficiencies on your team." MSJ, at 9-10 (Summary of Material Facts, ¶ 11), citing to Harris Dep. Ex. 31 (Apx 158). Accordingly, the June 2019 Letter of Counseling outlines not only failures in revenue attainment, but also *failures in leadership*.

      iii.    *Plaintiff*'s First Performance Improvement Plan Included Multiple Elements Beyond Just Revenue Attainment.

In response to the June 2019 Letter of Counseling, Plaintiff and her supervisor, Ms. Lamb, agreed upon a Performance Improvement Plan, with seven elements that Plaintiff was required to work on. MSJ, at 10 (Summary of Material Facts, ¶ 12), Harris Dep. 202:14-203:18 (Apx 254-255); Exs. 32 (Apx 159); 33 (Apx 162). Those seven elements were:

---

[1] Unless otherwise noted, all factual citations refer to FedEx's appendix of evidence ("Apx.") in support of the MSJ, ECF No. 029.

Defendant's Memorandum of Law in Support of
<u>Motion for Reconsideration</u> – Page 8

(1) Use CoachForward and Coach2 Grow 2.0 to improve district performance and hold employees accountable using the scorecard (weekly), ROA (bi-weekly) and GAP to goal (bi-weekly) to measure these results. In these reports it will include their pricing activity, opportunities, calls on opportunities, closes and efforts to close gaps by service.

(2) Use reports to evaluate and hold team accountable to call management, account management, pipeline management, and territory management. MD's effectiveness will be measure based on the tracking of $250 of closed business tracked. SD's effectiveness will be measured based on the tracking of $1000 of closed business tracked. They all will be monitored and evaluated for pricing, calls/prospecting and opportunities. This Information will be evaluated weekly on a team scorecard.

(3) Collaborate to Close: Each MD AE will have 1 target account they will work per month to collaborate with their BSI AE to close.

(4) Goal is have 50% for the team over 100% in International in Q1 and continue the consistency and grow that number for FY20.

(5) Target Accounts: The success of the target accounts will be measured by calls on the target account opportunities, demonstration on the strategy, joint call engagement, pricing, solutions utilized, and activation rate once closed.

(6) Pricing: MD's pricing expectation is to average 1 pricing per week. SD's pricing expectation is to price as needed based on opportunities, earned discount growth, surcharge extensions, protecting business all pay huge part in their pricing activity.

(7) Attainment: Your goal was to finish Q1 at 100%.

MSJ, at 10- (Summary of Material Facts, ¶ 12013), Harris Dep. 202:14-203:18; 204:21-205:11; 206:1-5 (Apx 254-258); Exs. 32 (Apx 159); 33 (Apx 162); Ex. 34 (Apx. 164). Plaintiff was to complete this PIP over the first quarter of fiscal year 2020 (June 2019-August 2019). Plaintiff does not dispute that these were the terms of the First PIP. MSJ, at 10 (Summary of Material Facts, ¶ 12), Harris Dep. 202:14-203:18 (Apx 254-255); Exs. 32 (Apx 159); 33 (Apx 162).

      *iv.*     *Plaintiff Fa*iled to Meet the Terms of Her First PIP, and Received a Letter of Warning, Again for Issues in Addition to Revenue Attainment

Plaintiff failed to meet the terms of the First PIP within the prescribed time frame, and accordingly, on September 13, 2019, Ms. Lamb issued a Letter of Warning to Plaintiff. MSJ, at 10-11 (Summary of Material Facts, ¶¶ 13-14), Harris Dep. 204:21-205:11; 206:1-5; 221:1-4 (Apx 256-259); Exs. 34 (Apx 164); 37 (Apx 165). As is noted in the September meeting preceding the September 13th Warning Letter, Plaintiff met just one goal (to have 50% of the team over 100% in International in first quarter) of the seven (7) goals of the First PIP, as follows:

> (1) Use CoachForward and Coach2 Grow 2.0 to improve district performance and hold employees accountable using the scorecard (weekly), ROA (bi-weekly) and GAP to goal (bi-weekly) to measure these results.  In these reports it will include their pricing activity, opportunities, calls on opportunities, closes and efforts to close gaps by service.
> **Coaching approach and tools referenced in this objective did not result in closing gaps in performance.  Revenue gaps in District increased from $1,190,000 to $1,360,000.**
>
> (2) Use reports to evaluate and hold team accountable to call management, account management, pipeline management, and territory management.  MD's effectiveness will be measure based on the tracking of $250 of closed business tracked.   SD's effectiveness will be measured based on the tracking of $1000 of closed business tracked.  They all will be monitored and evaluated for pricing, calls/prospecting and opportunities.  This Information will be evaluated weekly on a team scorecard.
> **Jennifer did not meet this objective as only 3 out of 8 AE's in her district met this CBT expectation.**
>
> (3) Collaborate to Close:  Each MD AE will have 1 target account they will work per month to collaborate with their BSI AE to close.
> **Jennifer did not meet this objective.  3 out of 6 MD's have a Collaborate 2 Close Opportunity identified in iSell.**
>
> (4) Goal is have 50% for the team over 100% in International in Q1 and continue the consistency and grow that number for FY20.
> **Jennifer did meet this objective.  6 out of 8 AE's on her team hit international plan in Q1 (unadjusted.)**

(5) Target Accounts:  The success of the target accounts will be measured by calls on the target account opportunities, demonstration on the strategy, joint call engagement, pricing, solutions utilized, and activation rate once closed.
**Jennifer's target account, Global Healing, did not close in Q1.**

(6) Pricing:  MD's pricing expectation is to average 1 pricing per week.  SD's pricing expectation is to price as needed based on opportunities, earned discount growth, surcharge extensions, protecting business all pay huge part in their pricing activity.
**Jennifer did not meet this objective.  0 out of 6 MD's submitting pricing request per week.**

(7) Attainment:  Your goal was to finish Q1 at 100%.
**Jennifer did not meet this objective.  She finished Q1 at 91.6% (unadjusted).**

MSJ, at 10 (Summary of Material Facts, ¶ 13), Harris Dep. 204:21-205:11; 206:1-5 (Apx 256-258); Exs. 34 (Apx 164). In the Letter of Warning, Plaintiff was informed that her district failed to meet plan in FY20 Q1, had the lowest pricing activity in the Region, and she did not meet the PIP objectives "which [Plaintiff] created to improve performance." MSJ, at 10-11 (Summary of Material Facts, ¶ 14), Harris Dep. 221:1-4 (Apx 259); Exs. 37 (Apx 165). The Warning Letter also states in conclusion that "Recurring patterns of this performance will not be tolerated.  A repeat of this or any other performance or behavior issue may result in more severe corrective action up to and including termination."  *Id.* Plaintiff does not dispute that she failed to meet the terms of the First PIP as described in the Letter of Warning. Rather, Plaintiff's purported disputes focus on the data that underlies the First PIP, e.g. revenue numbers related to customer BJ Services, and other matters. *See e.g.* Pltf's Brief, ECF 039 at 27-28. As FedEx explained in its reply, these arguments have no merit, but in any event, they are irrelevant to the instant motion, because the Court's reasoning in its Order did not rely on Plaintiff's purported disputes, but instead relied on its own interpretation of FedEx's data, not advanced by either party. *See* ECF 056 at 5.

In conjunction with the Letter of Warning, Ms. Lamb placed Plaintiff on a Second Performance Improvement Plan ("Second PIP"). MSJ, at 11 (Summary of Material Facts, ¶ 15), Harris Dep. 221:22-24; 223:7-12 (Apx 259-260); Ex. 39 (Apx. 167).  Ms. Lamb wrote the terms of this Second PIP, and, in an effort to make the goals more feasible for Plaintiff, Ms. Lamb actually *reduced* the revenue attainment component of the Second PIP. To wit, the Second PIP provided that Plaintiff must during the second quarter of Fiscal Year 2020:

> (1) Closed Business tracking:  100% of MD's need to track $250 adnr CBT in order to close territory gaps in Q2.  100% of SD's need to track $1000 adnr CBT in order to close territory gaps in Q2.
>
> (2) International:  Evidence of success in the area will be measured by improved International attainment across all AE's as measured by the time the period of this Action Plan begins and the end of Q2.  Current attainment = 86.1% with 6 out of 8 AE's missing international plan.
>
> (3) Pricing:  Success will be measured based on MD pricing submissions averaging out of 1 per week in Q2.
>
> (4) Collaborate to Close:  Each MD on team needs to be working at least 1 Collaborate to Close opportunity in Q2.
>
> (5) Performance:  Goal is to meet/exceed avg attainment in LHR (currently 94.8%) in Q2.  Goal is to meet/exceed avg attainment for each service based on LHR overall performance in Q2.
> FXF (Currently 85.01%)
> International (Currently 92.05%)
> Express (Currently 97.87%)
> Ground + SP (Currently 98.42%)

MSJ, at 11 (Summary of Material Facts, ¶ 15), Harris Dep. 91:2-5; 224:20-225:5; 229:24-230:3 (Apx 229; 261-262; 264-265); Ex. 38 (Apx 167). Plaintiff does not dispute that these were the terms of the Second PIP. It should be noted that, with respect to revenue attainment specifically, as is further discussed below, item 5 in the Second PIP (revenue attainment goal of meeting or exceeding the average attainment in the Region (at 94.8% at start of Second PIP)) is a lower standard than the corresponding goal in the First PIP (item 7 - revenue attainment goal of 100%).

The result of this reduction, which was *intentional*, was to make it more feasible for Plaintiff to meet this specific category of the Second PIP.  MSJ, at 11 (Summary of Material Facts, ¶ 16), Burchett Dep. 27:1-11; 28:23-29:11 (Apx 316-317); Harris Dep. Ex. 38 (Apx 167). Plaintiff cannot dispute that this reduced number made her revenue attainment easier to achieve than during her first PIP.

> *v.*    *Plaintiff Failed to Meet* the Terms of the Second PIP, Including Items Not Related to Revenue Attainment, and Plaintiff Was Terminated.

As of December 6, 2019, Plaintiff had met only one (1) out of five (5) requirements set forth in her Second PIP, namely:

> (1) Closed Business tracking:  100% of MD's need to track $250 adnr CBT in order to close territory gaps in Q2.  **Requirement not met.  12/5/2019 – 1 MD failed to meet this requirement.**  100% of SD's need to track $1000 adnr CBT in order to close territory gaps in Q2.  **Requirement not met. 12/5/2019 – 2 SD's failed to meet this requirement.**

> (2) International:  Evidence of success in the area will be measured by improved International attainment across all AE's as measured by the time the period of this Action Plan begins and the end of Q2.  Current attainment = 86.1% with 6 out of 8 AE's missing international plan.  **Requirement has been met.**

> (3) Pricing:  Success will be measured based on MD pricing submissions averaging out of 1 per week in Q2.  **Requirement not met.  4 out of 6 MD's did not meet this requirement.**

> (4) Collaborate to Close:  Each MD on team needs to be working at least 1 Collaborate to Close opportunity in Q2.  **Requirement has been met.**

> (5) Performance:  Goal is to meet/exceed avg attainment in LHR (currently 94.8%) in Q2.  Goal is to meet/exceed avg attainment for each service based on LHR overall performance in Q2.
> > FXF (Currently 85.01%)
> > International (Currently 92.05%)
> > Express (Currently 97.87%)
> > Ground + SP (Currently 98.42%)
> > **Requirement not met.  Revenue goal was 92.1%**

MSJ, at 12 (Summary of Material Facts, ¶ 18), Ex. I (OneNote summary of 12/619 meeting (Apx 40). While Ms. Harris does not dispute that she participated in a meeting about her Second PIP, she does not remember the specifics of the meeting. *Id.* Harris Dep. 231:20-235:11 (Apx. 266-270). Plaintiff's failure to meet the terms of the Second PIP formed the basis of the Request for Termination that Ms. Lamb submitted to FedEx Human Resources, which led to Plaintiff's termination. MSJ, at 12 (Summary of Material Facts, ¶ 19), Lamb Dep. 71:22-72:20 (Apx 303-304; Ex. G (Harris Request for Termination) (Apx 34). As detailed in both the First PIP and Second PIP, Plaintiff was being measured on more than just her revenue number.

> vi.   *The Court*'s Analysis of Plaintiff's Revenue Attainment Numbers is Manifestly Incorrect

In analyzing Plaintiff's revenue attainment numbers, the Court attempted to compare Plaintiff's performance numbers to her White peers, both individually and in terms of averages. ECF 056 at 5. The Court's analysis does not cite to specific documents, but FedEx has undertaken to determine what documents the Court is referring to.

The Court starts by noting that:

The statistics relied upon by the defendant to establish the plaintiff's failing are direct evidence of disparity in treatment. During Lamb's counseling and/or meetings with the plaintiff, it became clear that the plaintiff's 91.6% revenue performance was greater than at least one of her white peers. The average of 85.1% and 98.42% equals 94.8%.

ECF 056 at 5. It appears the Court may be getting Plaintiff's revenue attainment percentage not from either the First PIP or the Second PIP, but rather is taking Plaintiff's FY19 Revenue Attainment number (91.6%), which was highlighted in Plaintiff's June 26, 2019 Letter of Counseling. MSJ, at 9-10 (Summary of Material Facts, ¶ 11), Harris Dep. Ex. 31 (Apx 158) ("At 91.6% (unadjusted) YTD attainment in FY19, your district had the lowest YTD goal attainment in [Ms. Lamb's Region.]"). Further, it appears the Court is averaging not total manager revenue

attainment, but two of the indicated FedEx service offerings/segments (i.e., Express shipments, International shipments, FedEx Ground and SmartPost shipments, FXF/Freight shipments) revenue attainment percentages. *See* Second PIP (Apx 167). As highlighted in FedEx's Statement of Fact 16, which is based on the language of the Second PIP, Plaintiff was expected to meet/exceed the average attainment of Lamb's Region (not just the average of the highest and lowest manager's revenue performance) *AND* to meet/exceed the average attainment of the four service offerings that FedEx was tracking. MSJ, at 11 (Summary of Material Facts, ¶ 16), Burchett Dep. 27:1-11; 28:23-29:11 (Apx 316-317) Harris Dep. Ex. 38 (Apx. 167).

Again, Lamb averaged all of her managers' revenue attainment numbers (not just the highest and lowest) to get an average of 94.8% at the start of Plaintiff's Second PIP. *Id.* Plaintiff's peer managers were performing at an average of 94.8% of their respective revenue attainment goals, which is why Lamb used that number in the Second PIP. *Id.* This means that *in addition to meeting the other four goals outlined in the Second PIP*, Plaintiff was required to achieve revenue attainment equal to or greater than the then-current average of Plaintiff's peers both in total and in the four identified FedEx service offerings. *Id.*

Of course, it should be noted that the use of this metric, which is based on the average of all of Lamb's managers, *specifically contemplates* that Plaintiff might have better performance than one or two of her peers at the conclusion of the time period for the Second PIP, but still fail to meet the Performance objective goal of her Second PIP, because the intent was to measure her performance against an average, not against the worst performer. *Id.* This is not indicative of discrimination. Rather, it is simply one among many objective criteria of Plaintiff's PIPs that she failed to meet.

In any event, the analysis that the Court conducted to arrive at the conclusion that Plaintiff's performance was below average, is also factually incorrect in and of itself.  To wit, the Court states:

> A calculation that averages the scores should be based on the low of 85.01% and the high of 98.42%. It is noted that the average between the low and the high is 91.715%. By the averaging method, the plaintiff revenue performance was 0.11% below the average. This calculation also establishes that at least one white District Sales Manager's score was 9.79% below the average (91.715) or 14.99% below his/her expected goal.

ECF 056 at 5. The Court's use of the 91.715% average figure (derived from a range of average revenue attainment by Ms. Lamb's reports across a range of four types of FedEx service offerings, e.g. Ground, Freight, etc.) is incorrect based on the terms of the Second PIP. MSJ, at 11 (Summary of Material Facts, ¶ 16), Burchett Dep. 27:1-11; 28:23-29:11 (Apx 316-317) Harris Dep. Ex. 38 (Apx. 167).  The requirement of the Second PIP was that Plaintiff must both (1) achieve at least average performance (compared to her peers) in *overall* ("primary") revenue attainment, and (2) in revenue attainment with respect to revenue received from four separate types of FedEx services (Express shipments, International shipments, Ground and SmartPost shipments, Freight shipments).  While Plaintiff failed to meet or exceed the average revenue attainment when she was at 92.1% (Region average at end of Second PIP was 93.7%) and she failed to meet or exceed the Region average for all four types of FedEx services.  MSJ, at 12 (Summary of Material Facts, ¶ 18), Harris Dep. 231:20-235:11 (Apx 266-270); Ex. I (Apx 40).  And, the fact that one of Plaintiff's White peers may have had worse performance than her in one of the fiscal quarters in the relevant time period was of no moment. Plaintiff's requirement was to fulfill the terms of her PIPs (the first of which were terms that *she* drafted), which she failed to do. MSJ, at 10 (Summary of Material Facts, ¶ 13-14, First PIP)), Harris Dep. 204:21-205:11; 206:1-5 (Apx. 256-258); Ex. 34 (Apx 165);

MSJ, at 12 (Summary of Material Facts, ¶ 18 (Second PIP), Harris Dep. 231:20-235:11 (Apx 266-270); Ex. I (Apx 40).

## VI.   THE MSJ ORDER CONTAINS LEGAL ERRORS AS TO FEDEX'S MOTION FOR SUMMARY JUDGMENT

### A.   **The Court Failed to Follow, or even Discuss, the *Owens* Case.**

In its brief in support of the MSJ, and in its reply, FedEx cited and discussed the case of *Owens v. Circassia Pharms, Inc.*, 33 F.4th 814 (5th Cir. 2022). ECF 028 at 18-19, ECF 043 at 11-13. As FedEx pointed out in its briefing, *Owens* is analogous to the case at bar in that it involved alleged race discrimination by a former sales manager (for a pharmaceutical company). *Owens*, 33 F.4th at 820. The plaintiff in *Owens*, like the Plaintiff here, was criticized for inadequate leadership and management of subordinates *Id.* at 820-821. She was placed on a performance improvement plan, but failed to improve, and was terminated. *Id* at 822-823. The plaintiff sought to introduce evidence of pretext to defeat summary judgment, including evidence that one of her peers had a worse performance rating than her in at least one category. *Id* at 828. Additionally, the *Owens* Court noted that

> Several declarations attest to specific facts which, if credited by a factfinder, could lead to a reasonable rejection of Circassia's proffered reason for firing Owens. Further, Owens presents objective evidence that Circassia acted in a way that does not logically comport with its assessment of her performance. Three of the underlying reasons for placing Owens on a PIP and eventually terminating her were that she was failing to develop her team, she was doing the work of her team and acting as a "super rep" rather than a manager, and she was not conducting proper field visits. Owens presents substantial evidence to contest each.

*Id* at 831. The *Owens* plaintiff's evidence included (1) declarations from her subordinates that she in fact *was* managing them in a manner that should have been deemed adequate, (2) more than one of her subordinates was promoted, and (3) the plaintiff's "region consistently ranked among the

best in the company in overall sales revenue." *Id* at 832. The Fifth Circuit ultimately concluded that the plaintiff had "presented evidence that directly and specifically contradicts several factual bases for her placement on the PIP and her eventual termination." *Id* at 833.

Nevertheless, despite all of that contrary evidence presented by the *Owens* plaintiff, the Fifth Circuit held that the defendant was entitled to summary judgment. The reason:  Plaintiff failed to present evidence from which a factfinder could infer *discrimination on the basis of race*, rather than just errors in judgment in handling a personnel matter. In the Court's words,

> Thus, although Owens likely presents enough evidence of illogic to permit a rational factfinder to think Circassia's proffered reason might be false, Owens does not present the type of evidence necessary to permit an inference of discrimination. Instead, this is a case where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. [] In other words, a juror could reasonably conclude that Circassia wanted Owens gone for some reason other than her performance, but an inference of discrimination [would] be weak or nonexistent. []

*Owens*, 33 F.4th at 833 (internal quotations and citations omitted). Accordingly, in the case at bar, the fact that one or two of Plaintiff's peers may have performed better in a particular revenue metric is irrelevant. Even if that analysis were correct, it still does no more than challenge one among several of the items in Plaintiff's PIPs. As in *Owens*, there is no evidence in this case from which an actual inference of *discrimination* can be drawn. The Court's MSJ Order is error under *Owens*, and should be reconsidered.

### B.  The Court's Analysis Appears to Confuse Direct and Indirect Evidence

Additionally, FedEx notes that the Court's ruling refers to the statistics relied upon by Plaintiff as being "direct" evidence of disparate treatment (ECF 056 at 5), however it goes on to analyze Plaintiff's evidence under the rubric of pretext/inference of discrimination. *Id.* FedEx

presumes that the Court is aware of the difference between direct evidence of discrimination (for example overt evidence of racial bias such as a racist comment, etc.) and indirect evidence employed to deem an employer's proffered reasons for a termination as being pretext, based on the burden-shifting framework established by the U.S. Supreme Court in the *McDonnell Douglass* case. *See Owens*, 33 F.4th at 825-827; *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir.2003) ("Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption."). Plaintiff's opposition presents no direct evidence of discrimination, focusing instead on indirect evidence and pretext (ECF 039 at 18-23). Likewise, the Court's analysis seems to indicate that, as in *Owens*, the "crux" of the analysis was pretext. However, if the Court's reference to "direct" evidence was intentional, this would be clear error as well.

## VII.   THE COURT SHOULD RECONSIDER AND REVERSE ITS RULING GRANTING PLAINTIFF LEAVE TO AMEND

### C.   If Summary Judgment is Granted in FedEx's Favor, Amendment to Allow Plaintiff's Title VII Claim Would be Futile

The MSJ Order also grants Plaintiff's motion for leave to amend her complaint to add a claim for discrimination under Title VII of the Civil Rights Act of 1964. ECF 056 at 001. Among the bases of this ruling is that "the burden of proof for a § 1981 claim is indistinguishable from the burden of proof for a Title VII. Therefore, the defendant is not prejudiced by the added basis for the plaintiff's claims." ECF 056 at 4. By the same reasoning, however, if FedEx is correct and its motion for summary judgment on Plaintiff's section 1981 claim should have been granted because Plaintiff failed to submit adequate evidence of pretext (*see discussion, supra*), then her Title VII claim would fail is well and any amendment would be futile. *See Rosenzweig v. Azurix Corp.*, 332

F.3d 854, 864-865 (5th Cir. 2003). Accordingly, if the Court reverses its ruling regarding the motion for summary judgment, it should also reverse its ruling on the motion to amend.

   **D.  <u>The Court's Ruling on FedEx's Contractual Limitation Period Is Incorrect</u>**.

   The Court held as follows

> [t]he contractual six-month period of limitations within which 'any' suit might be filed against the defendant, cuts against public policy and sidesteps a federal administrative process designed to meet and defeat long-standing policies of bias and discrimination in the workplace.

ECF 056 at 4. The Court employed this as a basis to deny FedEx's motion for summary judgment on Plaintiff's Section 1981 claim, which as of the date of the MSJ Order was the only claim at issue in the Pleadings (*see* ECF 011). And, unlike Title VII claims, section 1981 claims have no "federal administrative process." There is no exhaustion requirement in a section 1981 claim, as FedEx pointed out in its reply brief. ECF 043 at 5 (citing *Morgan v. Fed. Express Corp*., 114 F. Supp. 3d 434, 443-444 (S.D. Tx. 2015)). Accordingly, this is clear error. Even if the Court rules that the Title VII claim may proceed based on this legal reasoning, then at a minimum, FedEx should be entitled to summary judgment on the Section 1981 claim.

   And, this not an error without consequences. Title VII claims are subject to a "cap" on certain types of compensatory damages, and punitive damages, of $300,000. 42 U.S.C. § 1981a(b)(3)(D). Section 1981 contains no such provision. Accordingly, unless the Court reverses this aspect of its MSJ Order (denying summary judgment as to the contractual limitation period on the Section 1981 claim), FedEx may be subject to substantial damages that it would not otherwise be exposed to. The Court should reverse its ruling due to this now increased risk of prejudice to FedEx.

Additionally, as FedEx explained with detailed citations in its opposition to the motion to amend (ECF 049 at 11-12), the Fifth Circuit has repeatedly ruled against plaintiffs who move to amend their complaints in an effort to defeat summary judgment. The Court does not discuss or address these Fifth Circuit opinions in its order.

## VIII.   PLAINTIFF'S RETALIATION CLAIMS

As is outlined in the MSJ Order and in the parties' papers, in the case at bar, Plaintiff's retaliation claims (those based on Section 1981 and under Title VII respectively) rise and fall on essentially the same legal and factual bases as the discrimination claims. *See* ECF 056 at 4. Accordingly, FedEx requests that the Court apply its ruling on this motion to Plaintiff's retaliation claims in the same manner and based on the same reasoning.

## IX.   CONCLUSION

Accordingly, the Court should reverse its MSJ order, deny Plaintiff's motion to amend, and grant summary judgment in FedEx's favor.

Respectfully submitted,

*/s/ Christopher M. Ahearn*
Barak J. Babcock
Tennessee Bar No. 024021
SD No. 2522941
ATTORNEY-IN-CHARGE
FEDERAL EXPRESS CORPORATION
3620 Hacks Cross Road
Bldg. B, 3rd Floor
Memphis, TN 38125-8800
Telephone: (901) 434-8523
Facsimile: (901) 492-9930
Email: barak.babcock@fedex.com

Christopher M. Ahearn (*pro hac vice*)
California Bar No. 239089
3620 Hacks Cross Road
Bldg. B, 3rd Floor
Memphis, TN 38125-8800

Telephone: (901) 434-8523
Facsimile: (901) 492-9930
Email: christopher.ahearn@fedex.com

Michael V. Abcarian
Texas Bar No. 00799900
SD No. 19980
Brent Sedge
Texas Bar No. 24082120
SD No. 2904547
FISHER & PHILLIPS LLP
500 N. Akard Street, Suite 3550
Dallas, Texas 75201
Telephone: (214) 220-9100
Facsimile: (214) 220-9122
*mabcarian@fisherphillips.com*
*bsedge@fisherphillips.com*

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF CONFERENCE**

In accordance with Local Rule CV-7(h), (i), I certify that on September 7, 2022, I conferred with counsel for Plaintiff by email communication regarding this motion. Counsel indicated that Plaintiff is opposed to the relief requested in the Motion.

s/ *Christopher M. Ahearn*
Christopher M. Ahearn

**CERTIFICATE OF SERVICE**

I hereby certify that on September 7, 2022, a copy of this instrument was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's Electronic Filing System. Parties may access this filing through the Court's CM/ECF System.

s/ *Christopher M. Ahearn*
Christopher M. Ahearn