**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| JENNIFER HARRIS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | Civil Action 4:21-cv-1651 |
| | ) | |
| FEDEX CORPORATION, | ) | |
| | ) | |
| *Defendant.* | ) | |

## DEFENDANT FEDEX CORPORATE SERVICES, INC.'S OPPOSITON TO MOTION FOR ENTRY OF JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

I.   NATURE AND STAGE OF THE PROCEEDINGS .........................................1

II.  STATEMENT OF ISSUES ...............................................................................1

III. SUMMARY OF ARGUMENT ..........................................................................2

IV. THE COURT SHOULD SET ASIDE THE JURYS UNWARRANTED VERDICT IN
    ITS ENTIRETY AND ENTER JUDGMENT FOR FEDEX ...............................2

V.  THE JURYS MONETARY AWARD IS UNWARRANED AS A MATTER OF LAW...3

    A.  The punitive damages award is unlawful ................................................3
    B.  Even if Putative Damages are Warranted Based on the Evidence, They Should Not
        Exceed Any Compensatory Damages Award ........................................6
    C.  The Award of Future Emotional Distress is Plainly Excessive .............................11
    D.  The Amount of Plaintiff's Emotional Distress Award Violated the Fifth Circuit's
        Maximum Recovery Rule ......................................................................13
    E.  Any Damages Award Must Conform to the Title VII damages Cap......................14

VI. PLAINITFF IS NOT ENTITLES TO ANY INJUNCTIVE RELEIF ...........................15

VII. PLAINTIFF SEEKS AN UNLAWFUL PRIOR RESTRAINT ON SPEECH ...............18

CONCLUSION.......................................................................................................19

## **TABLE OF AUTHORITIES**

**Cases**                                                                                           **Page(s)**

*Bernard v. Gulf Oil Co.*,
    619 F.2d 459 (5th Cir. 1982) ....................................................................................22

*BMW of North America v. Gore*,
    517 U.S. 559 (1996)................................................................................................10

*Bogan v. MTD Consumer Group, Inc.*,
    No. 14-cv-225, 2020 WL 957414 (N.D. Miss. Feb. 27, 2020)................................20

*Brown v. Mississippi Department of Health*,
    256 Fed. Appx. 710 (5th Cir. 2007)........................................................................5

*E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*,
    731 F.3d 444 (5th Cir. 2013) ...............................................................................7, 9

*Garner v. BP Amoco Chemical Company*,
    No. 3:07-cv-00221, 2010 WL 1049794 (S.D. Tex. Mar. 16, 2010) (*reversed
    on other grounds as stated in Pearson v. BP Products North Am., Inc.*, 449
    Fed.Appx. 389 (5th Cir. Nov. 10, 2011))..............................................................7, 8

*Gordon v. JKP Enterprises Inc.*,
    35 Fed. Appx. 386 (5th Cir. 2002)........................................................................19

*In K.J.P. v. Cnty of San Diego*,
    No. 15-cv-02692, 2022 U.S. Dist. LEXIS 221068 (S.D. Cal. Aug. 17, 2022)......13

*Interco Inc. v. F.T.C.*,
    478 F. Supp. 103 (D.D.C. 1979) ......................................................................20, 21

*Kalina v. Brazoria County, et al.*,
    No. G-10-96, 2011 U.S. Dist. LEXIS 105212 (S.D. Tex. Sept. 16, 2011)............14

*Kolstad v. Am. Dental Ass'n*,
    527 U.S. 526 (1999)................................................................................................8

*Lincoln v. Case*,
    340 F.3d 283 (5th Cir. 2003) (Fifth Circuit applied *State Farm* and *Gore*
    under the Fair Housing Act to reduce a punitive damages award from
    $100,000 to $55,000) ............................................................................................13

*Marshall v. Goodyear Tire & Rubber Co.*,
    554 F.2d 730 (5th Cir. 1977) ................................................................................19

*Puga v. RCX Sols., Inc.*,
    922 F.3d 285 (5th Cir. 2019) ...................................................................................17

*1Refrigeration Engineering Corp. v. Frick Co.*,
    370 F. Supp. 702 (W.D.Tex.1974)............................................................................20

*Rubinstein v. Admins. of Tulane Educ. Fund*,
    218 F.3d 392 (5th Cir. 2000) ...................................................................................14

*Salinas v. O'Neil*,
    286 F.3d 827 (5th Cir. 2002) ...................................................................................17

*State Farm Mutual Auto Ins. Co. v. Campbell*,
    538 U.S. 408 (2003)..........................................................................10, 11, 12, 15

*Stelly v. W. Gulf Mar. Ass'n*,
    407 F. Supp. 3d 673 (S.D. Tex. 2019) ....................................................................14

*Thomas v. Tx. Dept. of Crim. Just.*,
    297 F.3d 361 (2002)...................................................................................15, 16, 18

*Turley v. ISG Lackawanna, Inc.*,
    774 F.3d 140 (2nd Cir. 2014)...................................................................................13

*U.S. v. Criminal Sheriff, Parish of Orleans*,
    19 F.3d 238 (5th Cir. 1994) ...............................................................................19, 21

*United States v. W.T. Grant Co.*,
    345 U.S. 629 (1953)..................................................................................................19

*Vadie v. Mississippi State University*,
    218 F.3d 365 (5th Cir. 2000) .............................................................................17, 18

## **Statutes**

42 U.S.C. 1981a(b)(3)........................................................................................................18

42 U.S.C. Sec. 1981(a).........................................................................................................5

42 U.S.C. § 1981a(b)(1).......................................................................................................7

42 U.S.C. § 1983................................................................................................................14

*State Farm, and Recent Case Law* ....................................................................................12

## Other Authorities

First Amendment ...................................................................................................................22

Fed. R. Civ. P. R. 65(d)..........................................................................................................20

Rule 56 .....................................................................................................................................5

Rule 702 ...................................................................................................................................5

Rules 50 and 59.................................................................................................................5, 6, 23

U.S. Constitution......................................................................................................................5

Defendant FedEx Corporate Services, Inc. (hereinafter, "Defendant" or "FedEx") hereby opposes Plaintiff's Motion for Entry of Judgment filed on November 21, 2022 (ECF No. 116). Plaintiff is seeking entry of Judgment as well as sweeping, company-wide injunctive relief. FedEx intends to file motions pursuant to Rules 50 and 59 no later than January 13, 2023.[1] FedEx respectfully requests that the Court postpone entry of judgment until after it has considered FedEx's post-trial motions.

## I.      NATURE AND STAGE OF THE PROCEEDING

Trial has been held, and the jury has reached a verdict. Plaintiff has moved for judgment to be entered based on the verdict.

## II.      STATEMENT OF ISSUES

The issue to be decided on this motion is whether judgment should be entered against FedEx in the form and according to the terms proposed by Plaintiff. The legal standards that apply

---

[1] The motion(s) will argue, *inter alia*, that (1) Plaintiff's Section 1981 claim is barred by a 6-month contractual limitation period, thereby limiting any emotional distress and punitive damages award (combined) to $300,000 by way of Title VII's statutory "cap" on such damages (see 42 U.S.C. Sec. 1981(a)); (2) Plaintiff failed to meet her burden of proof on her retaliation claim, and defenses such as FedEx's legitimate, non-retaliatory business reason for its adverse actions against Plaintiff, bar Plaintiff's retaliation claims; (3) allowing Plaintiff's expert Coneisha Sherrod to testify was reversible error, including because the foundation requirements of Rule 702 were not met, and she offered improper legal opinion testimony that prejudiced the jury; (4) Plaintiff's counsel was permitted to lead and argue throughout the material portions of Plaintiff's testimony, including lecturing the jury from the content of documents, without foundation; (5) the Court improperly sustained Plaintiff's *Batson* challenge to FedEx's peremptory challenge to juror No. 2; (6) allowing Plaintiff to amend her complaint (with FedEx's Rule 56 motion pending) to add a Title VII claim was reversible error; (7) the award rendered to the jury for future emotional distress is excessive and not justified by the evidence presented; (8) any award of compensatory damages for emotional distress must comport with the "maximum recovery rule"; (9) the evidence presented at trial does not justify a punitive damages award; and (10) any award of punitive damages must comport with the due process requirements of the U.S. Constitution as recognized by the U.S. Supreme Court.

vary according to the different items in the proposed judgment and are as set forth below in this opposition.

### III.  <u>SUMMARY OF ARGUMENT</u>

As was set forth in FedEx's motion for summary judgment, and as will be more fully set forth in forthcoming post-trial motions, including based on Rules 50 and 59, the jury's verdict is unwarranted and should be set aside.

The monetary amount of the verdict is also unwarranted in that (1) there is no factual support in the record for any award of punitive damages; (2) based on Supreme Court precedent, the punitive damages award must be reduced to an amount that does not exceed an award of compensatory damages; (3) the amount of the jury's future emotional distress award is excessive; (4) the emotional distress award (both past and future) violates the Fifth Circuit's maximum recovery rule; and (5) Title VII's statutory cap on compensatory and punitive damages should be applied.

Plaintiff's requested injunctive relief, in addition to seeking an improper prior restraint on free speech, does not further the purpose of Title VII and is unwarranted, including because FedEx already has sufficient measures in place to prevent future violations.

### IV.  <u>THE COURT SHOULD SET ASIDE THE JURY'S UNWARRANTED VERDICT IN ITS ENTIRETY AND ENTER JUDGMENT FOR FEDEX.</u>

For the reasons set out in FedEx's Motion for Summary Judgment (Docket Nos. 27-29) and its forthcoming motions pursuant to Rules 50 and 59, the evidence is insufficient to support the jury's verdict as a matter of law. Consequently, Plaintiff is not entitled to any monetary award or injunctive relief. Plaintiff's Section 1981 claim is time barred; both her Section 1981 and Title VII claims fail as a matter of law; and the jury's verdict is inconsistent with the evidence. And

because Plaintiff is not entitled to any monetary relief, her request for prejudgment and post judgment interest necessarily fails, along with her other requests for relief.

V.   **THE JURY'S MONETARY AWARD IS UNWARRANTED AS A MATTER OF LAW.**

Even if the Court upholds the jury's liability determination, the jury's damages award is unlawful for multiple independent reasons and should be set aside.

A.   The Punitive Damages Award is Unlawful.

Plaintiff made no showing that punitive damages are warranted. A plaintiff may recover punitive damages upon proof that the defendant acted "with malice or reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). "This is a higher standard than the showing necessary for compensatory damages, satisfied in 'only a subset of cases involving intentional discrimination.'" *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 467 (5th Cir. 2013), citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999). "Thus, 'not every sufficient proof of pretext and discrimination is sufficient proof of malice or reckless indifference.'" *Boh Bros.*, 731 F.3d at 467, quoting *Hardin v. Caterpillar, Inc.*, 227 F.3d 268, 270 (5th Cir. 2000).

Additionally, evidence in support of a punitive damages award must be "clear and convincing." In *Garner v. BP Amoco Chemical Company*, No. 3:07-cv-00221, 2010 WL 1049794, (S.D. Tex. Mar. 16, 2010) (Apx. 15) (*reversed on other grounds as stated in Pearson v. BP Products North Am., Inc.*, 449 Fed Appx. 389 (5th Cir. Nov. 10, 2011)), multiple plaintiffs brought suit alleging BP released a toxic substance into the atmosphere at its refineries causing personal injury. A jury awarded $10 million to each plaintiff in punitive damages. *Garner*, 2010 WL

1049794, at *2. This Court set aside the entire punitive damages award, finding that the plaintiffs had produced no clear and convincing evidence of gross negligence or specific intent. *Id* at *5-*6.

Further, the Supreme Court has held that even "in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decision of managerial agents where these decisions are contrary to the employer's 'good-faith efforts to comply with Title VII.' " *Kolstad*, 527 U.S. at 529.

Given the high burden, punitive damages should only be applied in a small, unique subset of cases. This is not one of the small "subset of cases" where clear and convincing evidence demonstrates malice or reckless indifference to federal rights. Pursuant to FedEx procedure and normal practice, Michael Clark specifically reminded Lamb, following Plaintiff's initial complaint, that FedEx does not allow retaliation and directed her not to take further action until he completed his investigation.  Lamb acknowledged this in writing and agreed to comply. Trial Transcript[2] at 4-234:15 to 4:238:2. Lamb testified that she was not retaliating against Plaintiff when she placed Plaintiff on Performance Improvement Plans, issued her a Warning Letter and, eventually, terminated her employment. To the contrary, she deliberately waited until after the investigations were concluded to continue her efforts to improve Plaintiff's performance and did not terminate Plaintiff's employment until human resources reviewed the matter and determined that there were valid grounds. Trial Transcript, at 2:132-2:139:8 & Exhs. 8, 10, 13, 17, 18 and 27; 273-53:10 to 3-54:7 & Exh. 10; 3-85:18 to 3-86:5 & Exh. 14; 3-91 to 3-92:21.

The evidence at trial showed that FedEx generally made good-faith efforts to comply with Section 1981/Title VII. For example, FedEx:

---

[2] The trial transcripts are completed and have been lodged with the Court as noted at ECF 105-111.

(1) Established and publishes policies that expressly prohibit retaliation, and that provide severe consequences for engaging in retaliation, including termination of employment.

(2) Established procedures designed to implement those policies, including, absent extraordinary circumstances, disallowing a manager from taking employment action against an employee while an employee has an internal complaint of retaliation pending.

(3) Requires approval of Human Resources before any adverse action is taken against an employee, a process that involves review by Human Resources of documented evidence related to the factual basis for the proposed employment action;

(4) Trains personnel on prevention of retaliation and handling of internal complaints; and

(5) Conducts thorough investigations of internal complaints of retaliation by an independent department within HR that specializes in investigations – namely, the same department that handled the three (3) investigations into Plaintiff's complaints. The investigations into Plaintiff's complaints entailed multiple witness interviews and extensive correspondence and review of documents by an HR investigator with decades of experience.

Trial Transcript at 2-69:20 to 2-71:21; 2-73:10 to 2-78:21; 2-80:12 to 2-81:2; 2-81:11-2-82:1; 2-97:2 to 2-97:11; 2-107:10 to 2-108:2; 2-120:8 to 2-122:8 & Exh. 251; 2:132-2:139:8 & Exhs. 8, 10, 13, 17, 18 and 27; 4-162:19 to 4-164:1; 4-167:23 to 4-173:21 & Exhs. 250, 251; 4-175:5-25; 4-177:8 to 4:183:12 to 4-188:20 & Exh. 27; 4:223:24 to 4-261:20 and Exhs. 9, 17, 40, 72, 118; 5-88:12-20; 5-90:17 to 5-91:20 to 5-99:19 & Exh. 27. *See Boh Bros., supra*, 731 F.3d at 467-469 (5th Cir. 2013) (punitive damages not warranted where defendant believed in good faith that its conduct was lawful).

B. __Even if Punitive Damages are Warranted Based on the Evidence, They Should Not
Exceed Any Compensatory Damages Award.__

    1. *In Gore and State Farm, the U.S. Supreme Court Held That a Trial Court Must
Ensure Any Punitive Damages Award is Not Unconstitutionally Excessive.*

Pursuant to Supreme Court precedent, this Court should apply no more than a 1:1 ratio
between any compensatory award and punitive damages. In *BMW of North America v. Gore*, 517
U.S. 559 (1996), the U.S. Supreme Court invalidated a punitive damages award on the ground that
it was excessive under the Fourteenth Amendment. Underpinning the reasoning of the Court was
a fundamental principle of due process – a defendant should have notice of the potential financial
consequences of its conduct, and unpredictable and extreme punitive damages awards violate this
principle. *Id* at 574-575. The court observed:

> Elementary notions of fairness enshrined in our constitutional jurisprudence dictate
> that a person receive fair notice not only of the conduct that will subject him to
> punishment, but also of the severity of the penalty that a State may impose.

*Id.* In so holding, the Supreme Court instructed lower courts reviewing punitive damages awards
to consider three "guideposts" in deciding whether an award is lawful:

    (1) The degree of reprehensibility of the defendant's misconduct (described as the most
important guidepost).

    (2) The disparity between the actual or potential harm suffered by the plaintiff and the
punitive damages awarded; and

    (3) The difference between the punitive damages awarded and the civil penalties
authorized or imposed in comparable cases.

*Id.* at 575. In 2003, the Supreme Court went on to apply those guideposts in *State Farm Mutual
Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

In *State Farm*, a Utah jury found that an insurance company's bad faith in handling claims arising from a deadly car accident was sufficiently reprehensible to warrant punitive damages. *State Farm supra*, 517 U.S. at 412-415. The insured killed and severely maimed two others in a vehicle accident and was sued for damages. *Id.* at 412-413. During the course of litigation, the insurer made false promises to the insured that he would not be personally liable and directed the case toward trial and litigation despite reasonable settlement demands from the injured parties. *Id* at 413-414. There was evidence that, during litigation, State Farm's personnel had destroyed relevant evidence and engaged in a cover-up. *Id.* at 434. The insured lost the case and was hit with massive liability, whereupon State Farm personnel told the insured to sell his house. *Id.* at 419. The insured had a stroke. *Id.* at 434. The jury found for the insured and awarded $2.4 million in compensatory damages, as well as $145 million in punitive damages. *Id.* at 415.

The trial judge in *State Farm* remitted the compensatory damages to $1 million and the punitive damages to $25 million. *State Farm supra*, 517 U.S. at 415. The Utah Supreme Court reinstated the $145 million punitive damages award, relying on evidence that State Farm had engaged in a *nationwide practice of unfairly minimizing claims in bad faith*. *Id* at 415, 420-421.

Acknowledging the reprehensible conduct by *State Farm*, the U.S. Supreme Court ruled that only the conduct that led to the plaintiff's individual damages could be considered; and that as a benchmark of constitutionality, punitive damages should be considered in light of the ratio between such damages and the underlying compensatory damages to the plaintiff. *State Farm*, 538 U.S. at 425. The court noted that "single-digit multipliers are more likely to comport with due process." *Id.* Additionally, the court held that when compensatory damages are substantial (such as the $1 million award to plaintiff Campbell), "then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *Id.*

The court further directed:

> Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process. "Courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered.

*Id.* at 425.

      2.  *Under Gore, State Farm, and Recent Case Law, a Reduction in Punitive Damages is Required.*

Here, a reduction in punitive damages is required, particularly when FedEx's conduct is compared to that of the defendant in *State Farm*. Unlike in *State Farm*, there was no evidence of any general or nationwide practice of retaliating against employees in this case. To the contrary, despite the jury's finding that FedEx retaliated against Plaintiff in her specific case, the record shows that FedEx, at a minimum, (1) had compliant policies and procedures, and competent, well—informed HR personnel who implemented those policies and procedures; (2) investigated each of Plaintiff's internal complaints; (3) began to address Plaintiff's performance deficiencies BEFORE any complaint was ever made by Plaintiff; and (4) ultimately terminated Plaintiff's employment only after evaluating her leadership skills and reviewing her performance in comparison to her peers over the course of approximately one year. Trial Transcript at 2-69:20 to 2-71:21; 2-73:10 to 2-78:21; 2-80:12 to 2-81:2; 2-81:11-2-82:1; 2-97:2 to 2-97:11; 2-107:10 to 2-108:2; 2-120:8 to 2-122:8 & Exh. 251; 2:132-2:139:8 & Exhs. 8, 10, 13, 17, 18 and 27; 3-38:12 to 3-96:1 & Exhs. 10, 14, 107, 140, 145, 162, 163, 168, 169, 174, 176, 177, 179, 180, 182, 183, 186, 196, 212, 248; 4-162:19 to 4-164:1; 4-167:23 to 4-173:21 & Exh. 250; 4-175:5-25; 4-177:8 to 4:183:12 to 4-188:20 & Exh. 27; 4:223:24 to 4-261:20 and Exhs. 9, 17, 40, 72, 118; 5-88:12-20; 5-90:17 to 5-91:20 to & Exh. 27 to 5-99:19 & Exh. 27. Though the jury's verdict reflects that they stood in the shoes of FedEx and found FedEx's analysis to be in error, the fact remains that FedEx

conducted what it believed to be a thorough and correct analysis of Plaintiff's performance over the course of many months, provided Plaintiff with opportunities to contribute to her performance improvement goals, and gave Plaintiff multiple opportunities to meet performance plans before terminating her employment. There was likewise no evidence of document destruction or a cover-up. There was no evidence of fraud or that FedEx deliberately misled anyone. Indeed, the punitive damages award in this case of over $360 million is more than double the initial award that was drastically reduced *in State Farm* and is far higher than any other award permitted in cases involving more reprehensible conduct.

For example, *In K.J.P. v. Cnty of San Diego*, No. 15-cv-02692, 2022 U.S. Dist. LEXIS 221068 (S.D. Cal. Aug. 17, 2022) (Apx. 43), the jury awarded $80 million in non-economic wrongful death damages for the family of a victim who was "tased multiple times, punched, handcuffed, put in maximum restraints, strapped to a gurney, and had prolonged pressure applied to his head and torso". *Id.* at *4. The Southern District of California held that such an "award, divorced from any economic damages, was likely the result of passion or prejudice and was grossly excessive." *Id.* at *119 (internal quotations and citations omitted). In the employment context where evidence of abhorrent conduct was presented, courts have likewise reduced punitive damages awards. In *Turley v. ISG Lackawanna, Inc*., 774 F.3d 140 (2nd Cir. 2014), evidence was presented that the plaintiff was called racial slurs, the KKK was invoked, a noose was placed on the plaintiff's car, and management condoned the harassment. The Court nevertheless reduced the $24 million punitive award, concluding that a 2:1 ratio was appropriate where compensatory damages were $1.32 million. *Id.* at 148-150, 164-168.

The Fifth Circuit has consistently reduced punitive damages awards that are far less than this jury's award of over $360 Million in this case. *See Lincoln v. Case*, 340 F.3d 283 (5th Cir.

2003) (Fifth Circuit applied *State Farm* and *Gore* under the Fair Housing Act to reduce a punitive damages award from $100,000 to $55,000); *see also Rubinstein v. Admins. of Tulane Educ. Fund*, 218 F.3d 392, 409 (5th Cir. 2000) (remittitur of $75,000 punitive damages award to $25,000 where the jury found retaliation, but no discrimination or harassment).

Further, a review of U.S. District Court cases in Texas from the last several years reveals that punitive awards in comparable cases involving claims of employment discrimination and/or retaliation are typically in the range of $100,000 to $1,000,000. Examples include the following:

- In *Stelly v. W. Gulf Mar. Ass'n*, 407 F. Supp. 3d 673 (S.D. Tex. 2019), the plaintiff alleged hostile work environment and retaliation claims under Title VII. *Id* at 676-77. The jury awarded $5,400 in lost wages and $200,000 in punitive damages against one defendant and $600 in lost wages and $100,000 in punitive damages against the second defendant. *Id.* at 677. The second defendant was granted judgment as a matter of law, and the award against it was vacated. *Id* at 682. As to first defendant, the Court found that an award of punitive damages that is more than 37 times the actual damages was excessive. The court reduced the award to $55,000, which was "a tad more than ten times" compensatory damages. *Id* at 688.

- In *Kalina v. Brazoria County, et al*., No. G-10-96, 2011 U.S. Dist. LEXIS 105212 (S.D. Tex. Sept. 16, 2011) (Apx. 22), this Court found that a punitive damages award of $1 million to each plaintiff was excessive. *Id* at *13. The plaintiffs alleged that the defendant violated their civil rights, in particular their right to be free from sexual harassment, pursuant to 42 U.S.C. § 1983. *Id* at *12-*13. This court reduced the award to $100,000 for each plaintiff, noting that the original award, which was 10 to 20 times the pecuniary damages award, was excessive. *Id*.

In light of the foregoing, this Court should enter a judgment, with respect to the punitive damages amount, that is no more than equal to the compensatory damages ultimately awarded. *See State Farm*, 58 U.S. at 425 (when compensatory damages are substantial, "then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee."); at 427 ("The wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award.")

C.   <u>The Award of Future Emotional Distress is Plainly Excessive.</u>

Even in a case where the plaintiff has testified that she suffered *past* emotional distress, one should not assume that the record also supports a finding of significant *future* emotional distress. *See, e.g. Thomas v. Tx. Dept. of Crim. Just.*, 297 F.3d 361, 370-372 (2002). To support an award of emotional distress, a plaintiff (1) "must provide specific evidence of the nature and extent of the harm." and (2) "must make more than vague allegations to support his claim." *Id* at 368; *see also Brown v. Mississippi Department of Health*, 256 Fed. Appx. 710, 711 (5th Cir. 2007) (vacating award of emotional distress because plaintiff's supporting evidence was speculative and devoid of detail).

In *Thomas*, although the plaintiff testified extensively to *past* emotional distress, her evidence of *future* emotional distress was lacking. *Id* at 370-371. She testified that she enjoyed her current job and was performing well in that job. *Id*. She had prospects for future education and advancement. *Id*. The plaintiff did testify as to "continued anger and fears that the lawsuit will bar her from future promotion" as she was still employed by the defendant *Id*. at 364, 370-371. However, even in that case, the Fifth Circuit held that an award of future emotional distress of $100,000 was excessive, and "[a]t most, the jury properly could have awarded only $50,000." The

Fifth Circuit added 50% under the maximum recovery rule (see discussion below) to arrive at a figure of $75,000. *Id* at 371-372.

In contrast to *Thomas*, Plaintiff is no longer employed at FedEx. Trial Transcript, at 4-83:2-13. Rather, she is employed at a new company, with new colleagues, and "will catch up in her career, eventually." Trial Transcript, 4-83:5-19; 6-62:13-14. Although Plaintiff did testify to some ongoing conditions of distress, such as intestinal disturbances, she failed to articulate how those symptoms are actually related to the retaliation she experienced while employed by FedEx, as opposed to the ordinary stress associated with litigation and trial. Trial Transcript, at 4-84:12 to 4-87:11; 4-93:1-18.

Yet, the jury awarded $1,040,000 in future emotional distress, more than eight times the award of past emotional distress ($120,000). ECF No. 99 at 14. (Verdict). Given the requirement that future emotional distress must be supported by "specific evidence," this award is plainly in error. *See Thomas, supra*, 297 F.3d at 368, 370-371. In support of her past emotional distress award, Plaintiff testified that she experienced stress, humiliation, anxiety, financial worries, stress associated with finding new employment, loss of enjoyment, weight gain, and dry heaving. Trial Transcript, at 4-84:6 to 4-87:11; 4-88:4-12; 4-93:21-4-94:5. Yet, she testified that over time, those conditions lessened, and as of the time of trial, she had recovered through therapy and engaging a creative hobby (a t-shirt business). Trial Transcript, 4-95:5-22. Accordingly, the only "specific evidence" in the record points unequivocally toward an award of future emotional distress that is *substantially less* than the award of past emotional distress. Trial Transcript, at 4-84:6 to 4-87:11; 4-93:1-4-94:5; 4-95:5-22.

Accordingly, FedEx requests that the Court reduce the future emotional distress award to an amount (in the Court's discretion) that is less than the past emotional distress award of

$120,000. And, FedEx requests that the Court do this before, and in addition to, applying the "maximum recovery rule," on the ground that the jury's future emotional distress award is simply contrary to law and the evidence. *See* Section D, *infra*.

D.  <u>The Amount of Plaintiff's Emotional Distress Award Violates the Fifth Circuit's Maximum Recovery Rule.</u>

The Fifth Circuit bars excessive emotional distress awards via the "maximum recovery rule." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 297 (5th Cir. 2019). Under this rule, the Court must not award damages that are "disproportionate to at least one factually similar case from the relevant jurisdiction." *Id*. (quoting *Lebron v. United States*, 279 F.3d 321, 326 (5th Cir. 2002)). Doing so, the Court must measure disproportionality by applying a percentage enhancement to past similar awards – applying a 50% enhancement for jury trials. *Id*. As such, the Fifth Circuit has directed that, under this rule, the maximum amount a jury can award is "150% of the highest inflation-adjusted recovery in an analogous, published decision." *Longoria v. Hunter Express*, Ltd., 932 F.3d 360, 365 (5th Cir. 2019) (citations omitted). For federal retaliation claims, the "relevant jurisdiction" means only published cases decided by the Fifth Circuit. *Salinas v. O'Neil*, 286 F.3d 827, 831 (5th Cir. 2002).

Examples for comparison include the following cases:

In *Vadie v. Mississippi State University*, 218 F.3d 365, 378 (5th Cir. 2000), an emotional distress award was remitted from $300,000 to $10,000 in a race discrimination case. There, the plaintiff's only support for his emotional injury was his conclusory statements that his loss of promotion "destroyed" and "totally ruined him"; he became "sick, totally ill, physically, mentally, and everything"; he saw "many doctors" and took "many pills"; he could not "sleep for months," had headaches and nausea, and was under "severe doctor surveillance." *Id*. at 377. In the case, Plaintiff's statements confirm that her own symptoms and suffering were not nearly as severe as

in *Vadie*. She talked about ordinary financial stress and anxiety in looking for a new job, as well as shame, anguish and humiliation, and some dry heaving. Trial Transcript, 4-84:6 to 4-87:11; 4-88:4-12; 4-93:21-4-94:5

In *Thomas,* a $100,000 award was remitted to $75,000. *Thomas, supra*, 297 F.3d at 367. The Court held that based on the plaintiff being happy in a new position, her future emotional distress could not be greater than past distress. *Id.* Here, Plaintiff has made similar comments regarding her current position and future prospects. Trial Transcript, 4-83:2-19; 4-95:5-22

Accordingly, while the figures in the above cases would need to include an additional 50% and be adjusted for inflation in accordance with the maximum recovery rule, they clearly mandate an emotional distress award (current and future) in this case that is no more than approximately $150,000-$200,000.

E. Any Damages Award Must Conform to the Title VII Damages Cap.

Any compensatory or punitive damages award under Title VII must conform to the monetary limits set forth in 42 U.S.C. 1981a(b)(3). That statute limits Plaintiff's recovery under Title VII to $300,000. *Id.* at 1981a(b)(3)(D). As FedEx has argued previously and will argue in its forthcoming post-trial motions (*see supra* n. 1,) Plaintiff's Section 1981 claims are barred as a matter of law because they are untimely and contrary to the evidence. They, therefore, cannot support a finding of liability. And, any liability that attaches to Plaintiff's Title VII claim is bounded by Title VII's damages cap. *See* 42 U.S.C. 1981a(b)(3). Should the Court uphold the jury's liability determination as to Title VII, it should limit the jury's damages determination to no more than $300,000. *Id.*

## VI.   <u>PLAINTIFF IS NOT ENTITLED TO ANY INJUNCTIVE RELIEF.</u>

While injunctive relief in the form of reinstatement is often permitted in single-plaintiff Title VII cases, here, Plaintiff does not seek reinstatement. She seeks instead to restrain FedEx's speech, compel FedEx's actions including modification to her employment file, and force company-wide policy changes with no record support whatsoever (and vague, unspecific case support). Plaintiff did not allege a pattern or practice of retaliation in her Complaint, and the case was not tried as a pattern or practice action.  She offers no support for the notion that the broad, sweeping relief sought is proper in this single-plaintiff action. As a result, Plaintiff's injunctive relief request must be denied. *See e.g.*, *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 733 (5th Cir. 1977) (single incident of retaliatory discharge insufficient to support company-wide injunction); *See also id.* ("nationwide or companywide injunction is appropriate only when the facts indicate a company policy or practice in violation of the statute"); *Gordon v. JKP Enterprises Inc.*, 35 Fed. Appx. 386 (5th Cir. 2002) (injunctive relief not warranted where plaintiffs did not indicate an actual intent to seek re-employment in the future and "have shown no other way in which they would benefit from the injunction")..

The district court has broad discretion to fashion an injunction to serve the purpose of Title VII. *U.S. v. Criminal Sheriff, Parish of Orleans*, 19 F.3d 238, 240 (5th Cir. 1994) "But the underlying objective to be achieved in an injunctive matter is the fashioning of an order that restores the injured party to the status [s]he would have occupied were it not for the defendant's discriminatory behavior. *Id*. Also, "a trial court's discretion when fashioning injunctive relief is limited to targeting the specific acts of discrimination." *Id* at 241. Where the violation is not likely to reoccur, then the interests of Title VII are not served by injunctive relief, and such an award is not appropriate. *United States v. W.T. Grant Co.*, 345 U.S. 629, 633-636 (1953) ("the purpose of

an injunction is to prevent future violations."). Any injunctive relief awarded must further comply with Rule 65(d) of the Federal Rules of Civil Procedure which provides: "Every order granting an injunction shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained ..." Fed. R. Civ. P. 65(d). Plaintiff's company-wide injunctive requests are not specifically or narrowly tailored to further the goals of Title VII.

Here, it is notable that Plaintiff does not seek reinstatement to her prior position, or even re-employment at FedEx. By not requesting this relief, it must be inferred that she does not require it to "restore" her to any prior status, which is the usual purpose of Title VII injunctions as noted above. Yet, Plaintiff asks that she be designated eligible for re-hire, indefinitely into the future, based on the speculative notion that she might re-apply for employment at FedEx, *someday*. This request is plainly excessive and unwarranted. Injunctions must be "specific" and should not contain open-ended provisions that would be difficult to enforce, or that would require monitoring over an extended and indefinite period of time. Fed. R. Civ. P. R. 65(d); *Refrigeration Engineering Corp. v. Frick Co.*, 370 F. Supp. 702, 715 (W.D.Tex.1974) ("difficulty of enforcement is, in itself, often a sufficient reason for denying injunctive relief"); *Interco Inc. v. F.T.C.*, 478 F. Supp. 103, 106 (D.D.C. 1979) ("Injunctive relief is not appropriate to prevent the possible occurrence of an event at some indefinite future time."). Plaintiff was in a unique management position (sales manager for a specific designated district within the State of Texas) that has already been filled by another person - Virginia Solgot. Trial Transcript, 3-142:5-10; 3-145:4-22. Accordingly, FedEx cannot be ordered to designate her as eligible to re-hire into her former position. *See Bogan v. MTD Consumer Group, Inc.*, No. 14-cv-225, 2020 WL 957414, at *2 (N.D. Miss. Feb. 27, 2020) (reinstatement not appropriate when there is no comparable open position for plaintiff to fill). In

effect, this request seeks to leave open the possibility that should Plaintiff resign or be terminated from her position with a third party at some indefinite point in the future, FedEx must consider her for rehire, into *any* open position. Such open-ended injunctions are contrary to law. *See Interco,* 478 F. Supp. at 106. Nor does it serve the interest of "restoring" Plaintiff to her prior status. *See Parish of Orleans*, 19 F.3d at 240.

The undisputed evidence in the record at trial is that FedEx had, at the time of Plaintiff's employment, and continues to have, a robust set of systems, procedures, and policies, supported by human resources and legal personnel, to guard against retaliation in the workplace. For example:

(1)     Long prior to any claims of unlawful retaliation by Plaintiff, FedEx implemented strong anti-discrimination and anti-retaliation policies;

(2)     FedEx provided, and continues to provide, an effective, formal means by which employees can report and address retaliatory conduct; and

(3)     FedEx provided, and continues to provide, employees and managers with training on its anti-retaliation policies.

Trial Transcript at 2-69:20 to 2-71:21; 2-73:10 to 2-78:21; 2-80:12 to 2-81:2; 2-81:11-2-82:1; 2-97:2 to 2-97:11; 2-107:10 to 2-108:2; 2-120:8 to 2-122:8 & Exh. 251; 2:132-2:139:8 & Exhs. 8, 10, 13, 17, 18 and 27; 4-162:19 to 4-164:1; 4-167:23 to 4-173:21 & Exhs. 250, 251; 4-175:5-25; 4-177:8 to 4:183:12 to 4-188:20 & Exh. 27; 4:223:24 to 4-261:20 and Exhs. 9, 17, 40, 72, 118; 5-88:12-20; 5-90:17 to 5-91:20 to 5-99:19 & Exh. 27; Declaration of Michael Lauderdale, filed and served herewith ("Lauderdale Dec."), ¶ 6; Ex. A-B. (Apx. 4-5, 8)[3]

---

[3] The Lauderdale Declaration and accompanying exhibits are offered in response to Plaintiff's vague and unsupported request for company-wide injunctive relief, which is untethered to the evidence presented at trial in this single-plaintiff case.

Accordingly, none of Plaintiff's requested injunctive relief is needed because FedEx is already taking all reasonable steps available to guard against Title VII and Section 1981 violations. Additionally, Plaintiff's proposed restriction on the ability of FedEx employees to comment on her case is contrary to law, as is set forth below in Section IV.

### VII. PLAINTIFF SEEKS AN UNLAWFUL PRIOR RESTRAINT ON SPEECH.

Plaintiff requests that the Court order FedEx (and presumably all of its 14,000+ employees throughout the United States of America) to "refrain from stating that Ms. Harris was terminated for poor performance." ECF 116 at 6; Lauderdale Decl., ¶ 5 (Apx. 14). This is a plainly excessive request that places an improper prior restraint on free speech. *Bernard v. Gulf Oil Co.*, 619 F.2d 459, 474-475 (5th Cir. 1982) (neither the "interests of a civil litigant" nor the "interest of the judiciary in the proper administration of justice. . . authorize[s] a blanket exception for the first amendment."), quoting *Rodgers I*, 508 F.2d 152, 163 (3rd Cir. 1975). As the court in *Bernard* observed, "[t]he general presumption against prior restraints is not mitigated by a claim that the fair and orderly administration of justice is at stake." *Bernard, supra*, 619 F.2d at 475.

Moreover, Plaintiff cannot demonstrate that she would suffer any harm, or that it would be contrary to the purposes of Title VII if, for example, one FedEx employee were to state to another in an internal, private conversation that they disagree with the jury's verdict. Even a public statement by FedEx or its personnel that they disagree with the verdict could be construed as a violation of item No. 1 because the verdict was, in effect, a finding that Plaintiff was *not* terminated for poor performance.

What is more, FedEx already has a current policy, which its personnel are required to follow upon penalty of employment discipline and potential termination, of not commenting *to a*

*potential employer in response to a request for employment verification and information* that Plaintiff was terminated for poor performance. In particular, the policy states:

> FedEx Services provides verification of employment of its employees to authorized agencies and companies according to the guidelines of this policy. This policy includes all current and former FedEx Services employees.
>
> . . .
>
> <u>Releasing Information/Terminated and Retired Employees</u>
> All outside requests for employment information on terminated and retired employees should be referred to The Work Number.

Lauderdale Dec. ¶ 7; Ex. C (Apx. 11). Accordingly, the requested injunction is neither warranted nor necessary and does not serve the interests of Title VII. The request also seeks an unconstitutional restraint on free speech and should be denied.

## **<u>CONCLUSION</u>**

For the reasons set forth above and in FedEx's forthcoming motions pursuant to Rules 50 and 59, the Court should enter judgment for FedEx, order that Plaintiff takes nothing, and deny all other requests for relief, including injunctive relief. If the Court declines to enter judgment for FedEx on all claims, the Court must, based on the applicable law and evidence presented at trial: (1) enter an award for emotional distress that comports with the evidence presented at trial and the maximum recovery rule recognized by the Fifth Circuit, (2) determine that the award of punitive damages is unwarranted by the evidence, or if the court is not inclined to do so, find that the punitive damages award is excessive and enter judgment in an amount that does not exceed the amount of compensatory damages awarded, and (3) deny Plaintiff's request for injunctive relief.

DATED: December 12, 2022             Respectfully submitted,

                                     */s/ Christopher M. Ahearn*
                                     Barak J. Babcock
                                     Tennessee Bar No. 024021
                                     SD No. 2522941
                                     ATTORNEY-IN-CHARGE
                                     Christopher M. Ahearn
                                     California State Bar No. 239089
                                     Tennessee Bar No. 040043
                                     (Admitted *Pro Hac Vice*)
                                     FEDERAL EXPRESS CORPORATION
                                     3620 Hacks Cross Road
                                     Bldg. B, 3rd Floor
                                     Memphis, TN 38125-8800
                                     Telephone: (901) 434-8523
                                     Facsimile: (901) 492-9930
                                     Email: barak.babcock@fedex.com
                                     Email: Christopher.ahearn@fedex.com

                           **ATTORNEYS FOR DEFENDANT**


                           **<u>CERTIFICATE OF SERVICE</u>**


        I hereby certify that the foregoing document was filed with the Clerk of the Court using

the CM/ECF system, which will send a copy to all attorneys of record.


                                     s/Christopher M. Ahearn