IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JENNIFER HARRIS, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| vs. | § | Civil Action 4:21-cv-1651 |
| | § | |
| FEDEX CORPORATE SERVICES, INC., | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFF'S REPLY TO RESPONSE
TO MOTION FOR ENTRY OF JUDGMENT**

TO THE HONORABLE KENNETH M. HOYT:

Respectfully submitted,

*/s/  Brian P. Sanford*
Brian P. Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com
Elizabeth "BB" Sanford
Texas Bar No. 24100618
esanford@sanfordfirm.com

**THE SANFORD FIRM**
1910 Pacific Ave., Suite 15400
Dallas, Texas 75201
Telephone: (214) 717-6653
Facsimile:  (214) 919-0113

**ATTORNEYS FOR
PLAINTIFF JENNIFER HARRIS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

I. FedEx's Global Argument ............................................................. 1

II. Response May Not Be the Proper Procedure ..................................... 2

III. Punitive Damages ................................................................... 2

    A. Evidence of Punitive Damages ............................................... 2

    B. Amount of Punitive Damages .................................................. 9

        1. Reprehensibility or Culpability ........................................ 11

        2. The Relationship Between the Penalty and the Harm ........ 11

        3. The Sanctions Imposed in Other Cases for Comparable Misconduct ................................................................... 11

IV. Compensatory Damages ............................................................ 12

V. Equitable Relief ...................................................................... 17

  CERTIFICATE OF SERVICE ........................................................ 19

# INDEX OF AUTHORITIES

<u>Cases</u>                                                                                                   <u>Page(s)</u>

*Adams v. Ethyl Corp.*,
 838 F. App'x 822 (5th Cir. 2020) ..................................................................... 14

*BMW of N. Am., Inc. v. Gore*,
 517 U.S. 559 .................................................................................................. 9, 10

*Diaz v. Tesla, Inc.*,
 No. 3:17-CV-06748-WHO, 2022 WL 1105075 (N.D. Cal. Apr. 13, 2022) 11, 15, 16

*Dobbs v. Jackson Women's Health Org.*,
 213 L. Ed. 2d 545, 142 S. Ct. 2228 (2022) ......................................................... 10

*Douglass v. Delta Air Lines, Inc.*,
 897 F.2d 1336 (5th Cir. 1990) ...................................................................... 13, 14

*Echeverry v. Jazz Casino Co., L.L.C.*,
 988 F.3d 221 (5th Cir. 2021) ........................................................................ 12, 13

*Edwards v. Aaron Rents, Inc.*,
 482 F. Supp. 2d 803 (W.D. Tex. 2006) .......................................................... 12, 16

*Eiland v. Westinghouse Elec. Corp.*,
 58 F.3d 176 (5th Cir. 1995) ............................................................................... 14

*Goldstine v. FedEx Freight Inc.*,
 No. C18-1164 MJP, 2021 WL 952354 (W.D. Wash. Mar. 11, 2021) ............... 11, 15

*Greta L. Anderson v. American Airlines*,
 352 Fed. Appx. 182 (9th Cir. 2009) .................................................................... 16

*Hale v. Wood Grp. PSN, Inc.*,
 769 F. App'x 113 (5th Cir. 2019) ....................................................................... 14

*Johnson v. Offshore Express, Inc.,*
  845 F.2d 1347 (5th Cir.) ................................................................... 14

*Kingston v. Int'l Bus. Machines Corp.,*
  No. C19-1488 MJP, 2021 WL 2662216 (W.D. Wash. June 29, 2021) ................ 15

*Kolstad v. Am. Dental Ass'n,*
  527 U.S. 526 (1999) .................................................................. 2, 3, 4

*Lebron v. United States,*
  279 F.3d 321 (5th Cir. 2002) ......................................................... 13, 14

*Lowery v. Circuit City Stores, Inc.,*
  206 F.3d 431 (4th Cir. 2000) ............................................................ 3, 4

*Merritt Hawkins & Assocs., L.L.C. v. Gresham,*
  861 F.3d 143 (5th Cir. 2017) ............................................................... 4

*Passantino v. Johnson & Johnson Consumer Prods., Inc.,*
  212 F.3d 493 (9th Cir. 2000)............................................................... 16

*Rideau v. Parkem Indus. Servs., Inc.,*
  917 F.2d 892 (5th Cir. 1990) .............................................................. 4

*Smith v. Lowe's Home Centers, Inc.,*
  No. CIV.SA-03-CA-1118-XR, 2005 WL 1902544 (W.D. Tex. Aug. 10, 2005) ... 16

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
  538 U.S. 408 (2003)..................................................................... 9, 11

*Tuli v. Brigham & Women's Hosp.,*
  656 F.3d 33 (lst Cir. 2011) ............................................................... 15

*Wantou v. Wal-Mart Stores Tex., L.L.C.,*
  23 F.4th 422 (5th Cir. 2022) ............................................................. 4

*Watson v. Department of Rehabilitation,*
  212 Cal.App.3d 1271 (1989) .............................................................. 15

*Wheat v. United States,*
   860 F.2d 1256 (5th Cir.1988) ..........................................................13, 14

**Statutes**

42 U.S.C. § 1981 ................................................................................. 2, 3, 4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JENNIFER HARRIS, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| vs. | § | Civil Action 4:21-cv-1651 |
| | § | |
| FEDEX CORPORATE SERVICES, INC., | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFF'S REPLY TO RESPONSE
TO MOTION FOR ENTRY OF JUDGMENT**

TO THE HONORABLE KENNETH M. HOYT:

Plaintiff Jennifer Harris replies to the response filed by FedEx Corporate Services, Inc. to the motion for entry of entry of judgment on the verdict returned by the jury in this matter.

## I.    FedEx's Global Argument

FedEx makes a perfunctory preservative argument to include the arguments previously made in its motion for summary judgment and anticipated to be made in post-judgment motions under Rules 50 and 59. The Court has considered arguments of both parties on these matters, such as the statute of limitations and no evidence issues, before and during trial. The arguments appear to be premature and more

properly included in a post-judgment motion. Nevertheless, further argument on these previously ruled upon  issues is not necessary at this time.

## II.    Response May Not Be the Proper Procedure

FedEx's arguments in its response should more properly be made in the form of a motion, such as a Rule 50 or Rule 59 motion. The Court contemplated a response to a proposed judgment to be in the form of "a motion for new trial, a motion for reconsideration, or a motion for judgment notwithstanding." (Day 7 p. 15. Lines 9-11). FedEx is essentially having Harris respond to a motion, by a reply, to essentially post-judgment motions before a judgment is signed. Harris was given seven days under the local rules to respond to substantively a motion for judgment notwithstanding the verdict rather than replying to a response to a motion for judgment on a verdict. Nevertheless, Harris addresses the arguments made in the response.

## III.    Punitive Damages

### A. Evidence of Punitive Damages

The Supreme Court construed set the standard for punitive damages under Title VII by construing 42 U.S.C. § 1981a(b)(1), the damages statute applicable to cases under Title VII. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999). Under Section 1981a, punitive damages may be recovered if the employer "engaged

in a discriminatory practice or discriminatory practices *with malice or with reckless indifference to the federally protected rights of an aggrieved individual.*" *Id.* (Emphasis added.); 42 U.S.C. § 1981a(b)(1).

The Supreme Court held that an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's "good-faith efforts to comply with Title VII." *Id.* at 545. A factfinder may need to determine whether the employer had been making good faith efforts to enforce an antidiscrimination policy.

The Supreme Court specifically held that the common law of agency, of simply showing managerial authority, was not sufficient under Section 1981a. The Supreme Court has not construed whether this higher standard is applicable to claims under the Civil Rights Act of 1866. Section 1981a itself states, "Nothing in this section shall be construed to limit the scope of, or the relief available under, section 1977 of the Revised Statutes (42 U.S.C. § 1981)." 42 U.S.C. § 1981a(b)(4). However, the Fourth Circuit has found that the standard for punitive damages in *Kolstad* does apply to claims under the Civil Rights Act of 1866. *See Lowery v. Circuit City Stores, Inc.*, 206 F.3d 431, 441 (4th Cir. 2000).

The standard in Kolstad is showing conduct involving reckless or callous indifference to the federally protected rights of others or acting with knowledge of

falsity or reckless disregard for the truth. *Kostad*, at 536 (citations omitted). Applying this standard in the context of § 1981a, an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages. *Id.* However, the Supreme Court concluded that an employer's conduct need not be independently "egregious" to satisfy § 1981a's requirements for a punitive damages award, although evidence of egregious misconduct may be used to meet the plaintiff's burden of proof. *Id.* at 545.

The Fifth Circuit's standard of review with respect to a jury verdict is especially deferential. *Wantou v. Wal-Mart Stores Tex., L.L.C.,* 23 F.4th 422, 431 (5th Cir. 2022) (citations omitted.).  A Rule 50 motion must be denied "unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion. *Id.*

When reviewing a jury's conclusions, the Court is "bound to view the evidence and all reasonable inferences in the light most favorable to the jury's determination." *Id.* (quoting *Rideau v. Parkem Indus. Servs., Inc.*, 917 F.2d 892, 897 (5th Cir. 1990). Court's must defer to jury verdicts and interpret them most favorably to upholding the jury's decision by a finding of consistency. *Merritt Hawkins & Assocs., L.L.C. v. Gresham*, 861 F.3d 143, 154 (5th Cir. 2017) (quotations omitted.).

4

FedEx intentionally retaliated against Harris by recklessly ignoring signs of retaliation that could have prevented the harm. FedEx intentionally siloed understaffed HR departments, kept them under qualified and under trained, allowed and encouraged sham investigations, preventing the protection of those who make discrimination complaints, and training employees to defend, not to prevent. FedEx's Manager of Human Resources, supervisor to the HR investigator who investigated Harris's claims, admitted the importance to not ignoring signs of discrimination or retaliation and that it would be reckless if a company ignores several signs or red flags of discrimination and retaliation. (Day 5 p. 88. Lines 12-18); (Day 5 p. 118. Lines 2-21). FedEx ignored numerous signs of discrimination and retaliation and acted recklessly in its treatment of Harris.

Kristi Castilow, the HR Advisor who approves the disciplinary action and termination of Harris, does not know Harris is filing discrimination complaints with HR. (Day 2 p. 119. Lines 8-13). In late 2019, the same time frame that Harris is complaining about discrimination and retaliation and subsequently receiving disciplinary action, FedEx conducts training entitled "Defensible Performance Management" for Lamb and Lamb's peers. (Day 2 p. 119. Lines 7-13); (Day 2 p. 120. Line 2 – p. 122. Line 16).

Castilow testified that HR professionals should have an appropriate number of employees to monitor so they are not overwhelmed. (Day 2 p. 131. Lines 4-12). However, Castilow has about 2,000 employees to watch over. (Day 2 p.131. Lines 4-12). Castilow does not think 2,000 employees to watch over as an HR advisor is too much. (Day 2 p. 131. Lines 4-12). The jury could see that 2,000 employees might be too many for one HR Advisor.

When asked if Castilow has been trained to understand the difference between a fair and unfair EEO investigation, she responded that she does not work in that area and may have received training. (Day 2 p. 126. Lines 14-22). Castilow understands that the timing of when an employee is fired can be a sign of discrimination. (Day 2 p.125. Lines 12-25). Castilow recognizes that the timing from when Harris files her last complaint of discrimination and retaliation until he was fired is a short time frame. (Day 2 p. 125. Lines 12-21). Castilow cannot independently verify that FedEx's alleged performance reasons to terminate Harris are accurate. (Day 2 p. 124. Lines 18-25). Castilow understands that all of Harris's peers are White. (Day 2 p. 123. Lines 16-18).

Castilow confirms that Lamb's documented discussions, the first step in any progressive discipline for a FedEx employee, were not formal documents, not what

FedEx believes to be "good practice," and cannot simply be notes on Lamb's personal laptop. (Day 2 p. 117. Lines 2-25).

Castilow agrees that discrimination and retaliation in the workplace today is not always explicit with supervisors telling their employees, "I'm going to do this because of the color of your skin tone, or I am going to do this because you said I was discriminating." (Day 2 p. 112. Lines 11-17). Castilow admits that FedEx should look for red flags and warning signs of discrimination and retaliation in the workplace. (Day 2 p. 112. Lines 11-24). And yet, she ignores all of the signs by Lamb and others retaliating against Harris. FedEx knows that a manager acts on behalf of and is a representative of the company. (Day 4 p. 164. Lines 2-4).

Castilow cannot recognize that if an employee, like Harris, works at FedEx for 11 years and never received any disciplinary action, complains of discrimination or retaliation, and then immediately receives disciplinary action can be a sign of discrimination or retaliation. (Day 2 p. 110. Line 22 – p. 111. Line 24). Castilow admits that at the time Harris reports discrimination or retaliation to HR, Castilow would not know if Lamb is retaliating against Harris because the EEO investigation is done in a different HR department than the progressive discipline department in which Castilow works. (Day 2 p. 105. Line 18 – p. 106. Line 1).

Castilow admits that she relied on the manager to ensure the information in a progressive discipline action is true or not. (Day 2 p. 103. Line 20 – p. 104. Line 12). This means that Castilow, FedEx HR representative, would not know if and when Lamb falsifies or cherry picks information in Harris's disciplinary action in order to wrongfully terminate Harris in retaliation for complaining.

FedEx only had four to five investigators for its entire company to investigate any complaint of discrimination or retaliation by an employee and they all officed in Tennessee, none officed in Texas. (Day 4 p. 166. Lines 6-19). The only formal training the FedEx HR investigator who investigated Harris's complaints of discrimination and retaliation had was one training when he first started working at FedEx about 11 years ago. (Day 4 p. 168. Line 24 – p. 170. Line 2).

FedEx's HR investigator could not provide any example of how FedEx monitors the workplace to prevent discrimination or retaliation outside of its policies that state FedEx does not tolerate discrimination or retaliation. (Day 4 p. 181. Line 4 – p. 182. Line 6). FedEx expects its employees to govern themselves to follow the policies against discrimination and retaliation. (Day 4 p. 181. Lines 16-19).

FedEx knows that many employees do not report discrimination or retaliation, some out of fear of retaliation. (Day 4 p. 182. Line 22 – p. 183. Line 16). And yet

FedEx's HR investigator could not provide a response on how FedEx would know discrimination or retaliation occurs at FedEx unless a complaint is filed.

### B. Amount of Punitive Damages

The Supreme Court noted in the *BMW* case that excessive punitive damages can violate due process clause of the Fourteenth Amendment. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 and 568 (1996). Justice Scalia complained in his dissent that this was unjustified substantive due process not found the Constitution. Id. at 599. Later, in the *State Farm* case, the Supreme Court found that $145 punitive damage award was excessive in a case in which $1 million was awarded in compensatory damages. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003). The Supreme Court declines to impose a bright-line ratio which a punitive damages award cannot exceed; however, it stated that few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process. *Id*. at 425. Nonetheless, there are no rigid benchmarks that a punitive damages award may not surpass. *Id*. Justice Scalia again dissents at the application of substantive due process in the limitation of punitive damages. Id. at 429. Justice Thomas dissented stating that he continues "to believe that the Constitution does not constrain the size of punitive damage awards. Id. Recently, the Supreme Court reviewed its application of substantive due process in

9

reconsidering the right to an abortion. *Dobbs v. Jackson Women's Health Org.*, 213 L. Ed. 2d 545, 142 S. Ct. 2228, 2242 (2022). The argument of substantive due process limits on punitive damages may also be in jeopardy.

"[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996). The Supreme Court has instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. *Id.,* at 576–577, 116 S. Ct. 1589. The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect. It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence. *Id.,* at 575, 116

S. Ct. 1589. *See also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

### 1.   Reprehensibility or Culpability.

FedEx's retaliatory conduct was systemic and reckless. FedEx callously disregarded the law with conduct involving repeated actions rather than isolated incidents and the harm is a result of intentional malice, trickery, and deceit; not mere accident. There was evidence that FedEx acted in the face of a perceived risk that its actions would violate federal law.

### 2.   The Relationship Between the Penalty and the Harm.

The penalty awarded by the jury bears a direct relationship to the harm to Harris caused by FedEx's conduct: humiliation and the destruction of her career. The jury was punishing for retaliation and not for some other tangential reason.

### 3.   The Sanctions Imposed in Other Cases for Comparable Misconduct.

Punitive damages of $5 million was upheld in a disability discrimination case. *Goldstine v. FedEx Freight Inc.*, No. C18-1164 MJP, 2021 WL 952354, at *8 (W.D. Wash. Mar. 11, 2021). A jury in North Carolina awarded $10 million in punitive damages in a race discrimination case. *David Duval v. Novant Health, Inc.*, No. 3:19-CV-624-DSC (W.D. N.C.) (case pending). A federal court in California upheld $13.5 million in punitive damages in a race discrimination case. *Diaz v. Tesla, Inc.*, No.

11

3:17-CV-06748-WHO, 2022 WL 1105075, at *25 (N.D. Cal. Apr. 13, 2022). A federal court in Texas found that found $1 million in punitive damages in a Title VII case supported by the evidence but reduced it according to the statutory cap. *Edwards v. Aaron Rents, Inc.*, 482 F. Supp. 2d 803, 816 (W.D. Tex. 2006). If the Court considers a remittitur, then a suggested amount is at least nine times the compensatory damages.

## IV. Compensatory Damages

The Fifth Circuit applies a "maximum recovery rule" to determine excessive awards for intangible damages. *See Echeverry v. Jazz Casino Co., L.L.C.*, 988 F.3d 221, 236 (5th Cir. 2021). This rule has the same Constitutional issue related to the consideration of punitive damages. It unnecessarily invades the province of the jury. Each case is fact specific and a jury is in the best position to make the determination. A fixed ratio would be unconstitutional for the same reasons as applied to a punitive damage award.

In the application of the rule, he Fifth Circuit has acknowledged ambiguity: it has sometimes applied the maximum-recovery rule at the outset to determine whether the damages are excessive, and other times only to determine how much of a reduction is warranted after deciding the award is excessive. *Echeverry v. Jazz Casino Co., L.L.C.,* 988 F.3d 221, 236 (5th Cir. 2021) (citations omitted). Under the

12

latter application, if the Court determines award of the emotional distress damages in the first instance is not excessive, then the maximum recovery rule does not apply. *See id.* Each case should be considered in the context of its own facts to make the initial determination. The damages that attack he core of a person's identity are among the worst known to mankind. It is the attack on their humanity, their right to exist as a human. "For now, let us simply observe that the assault on human dignity is one of the prime goals of the visitation of fear, a prelude to the domination of the mind and the triumph of power."[1]

Because the facts of each case are different, prior damages awards are not always controlling; a departure from prior awards is merited "if unique facts are present that are not reflected within the controlling caselaw." *Lebron v. United States*, 279 F.3d 321, 326 (5th Cir. 2002) (quoting *Douglass* at 1339). This case is unique in the destruction of the career of a person who succeeded beyond all odds. This is not a run of the mill case with run of the mill damages.

District courts enjoy "wide discretion" in awarding damages. *Douglass v. Delta Air Lines, Inc.*, 897 F.2d 1336, 1339 (5th Cir. 1990); *Wheat v. United States,* 860

---

[1] Soyinka, W.*, Climate of Fear,* excerpt from book https://www.penguinrandomhouse.ca/books/170643/climate-of-fear-by-wole-soyinka/9780812974249/excerpt *(last visited December 19, 2022).*

F.2d 1256, 1259 (5th Cir.1988). A trial court's assessment of damages is a finding of fact, which is scrutinized for excessiveness under the clearly-erroneous standard. Douglass, 897 F.2d at 1339; *Wheat,* 860 F.2d at 1259; *Johnson v. Offshore Express, Inc.,* 845 F.2d 1347, 1356 (5th Cir.), *cert. denied,* 488 U.S. 968 (1988).

 In the event the Court finds that the claims are not unique and more closely related to general mental anguish damages, the following are examples of amounts awarded:

 *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 182 (5th Cir. 1995) ($3 million in noneconomic loss, including pain and suffering, disfigurement, and impairment not accounted for in lost wages);

 *Adams v. Ethyl Corp.*, 838 F. App'x 822, 832 (5th Cir. 2020) (General damages in Mesothelioma case. than $3,000,000);

 *Hale v. Wood Grp. PSN, Inc.*, 769 F. App'x 113, 114 (5th Cir. 2019) ($ 2,250,000 in general damages in personal injury case not clearly excessive); and

 *Lebron v. United States,* 279 F.3d 321, 327 (5th Cir. 2002) ($2 million loss of consortium to parents).

 If the uniqueness of the case is not enough to prevent the implication of the maximum recovery rule, the uniqueness should be enough to relate the damages more to emotional distress related to personal injuries than garden variety emotional distress in employment cases. The amount awarded by the jury falls within this range.

14

It is true that mental anguish damages awarded under the maximum recovery rule for discrimination cases are much lower than in personal injury cases, especially in the Fifth Circuit.

In other circuits, larger amounts are upheld.

*Goldstine v. FedEx Freight Inc.*, No. C18-1164 MJP, 2021 WL 952354, at *8 (W.D. Wash. Mar. 11, 2021) (award of $1.25 million in emotional distress in a disability case);

*Kingston v. Int'l Bus. Machines Corp.*, No. C19-1488 MJP, 2021 WL 2662216, at *6 (W.D. Wash. June 29, 2021) (six million in emotional distress was upheld in a race discrimination case);

*Diaz v. Tesla, Inc.*, No. 3:17-CV-06748-WHO, 2022 WL 1105075, at *15 (N.D. Cal. Apr. 13, 2022), *motion to certify appeal denied,* No. 17-CV-06748-WHO, 2022 WL 2046827 (N.D. Cal. June 7, 2022) remittitur of $1.5 million on a verdict of $6.9 million in a race discrimination case);

*Tuli v. Brigham & Women's Hosp.*, 656 F.3d 33, 44-47 (lst Cir. 2011) (Upholding award of $1.6 million dollars in compensatory damages for claims raised under federal law, which has a limit of $300,000 in non-pecuniary compensatory damages, and Massachusetts state law which does not have such a limit. The plaintiff could not sleep or eat and lost weight, had anxiety, anger, fear and nervousness which resulted in abdominal pain. The plaintiff testified that after years of hard work dedicated to her career, she was reduced to someone who could not function and could not pay her bills. The plaintiff did not present any medical documentation in support of her claims. The Court found no abuse of discretion in the district court's refusal to grant a remittitur in this case.);

*Watson v. Department of Rehabilitation*, 212 Cal.App.3d 1271 (1989) (affirming $1.6 million award for race and age discrimination);

*Greta L. Anderson v. American Airlines*, 352 Fed. Appx. 182 (9th Cir. 2009) (affirming $1,000,000 award of emotional distress damages in employment discrimination case under the California Fair Employment and Housing Act);

*Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493 (9th Cir. 2000). (affirming $1 million emotional distress award for sexual harassment where plaintiff "worried, cried, and felt trapped and upset," spent less time with her family, suffered stomach problems, rashes and headaches, and sought counseling with her pastor).

The amount awarded by the jury in compensatory damages for Harris is closely aligned to the remittitur in the Tesla case.

In the Fifth Circuit, the following cases are damages awarded for mental anguish in employment cases:

*Smith v. Lowe's Home Centers, Inc.*, No. CIV.SA-03-CA-1118-XR, 2005 WL 1902544, at *1 (W.D. Tex. Aug. 10, 2005) ($325,000 in a retaliation case for filing a worker's compensation claim – no caps involved)

*Edwards v. Aaron Rents, Inc.*, 482 F. Supp. 2d 803, 816 (W.D. Tex. 2006) ($300,000.00 in a gender discrimination case).

Witnesses testified about Harriss's increased health issues after FedEx's treatment, including stomach issues, weight gain, and going to the doctor more. (Day 4 p. 268. Lines 14-25). Harris went to a counselor to help with the emotional distress. (Day 4 p. 95. Lines 5-13). Harris testified that after her termination she was in an extremely dark place. (Day 4 p. 93. Lines 21-23). Her personality changed from being very energetic and a social butterfly to not having the strength to pull herself

together. (Day 4 p. 95. Line 21 – p. 96. Line 5). Reverend Williams witnessed Harris cry in public dur to the emotional distress caused by FedEx's discrimination, retaliation, and termination, and had to hold her while until she could compose herself. (Day 4 p. 103. Line 11 – p. 105. Line 4).

To the extent the Court is inclined to reduce the future emotional distress damages, Harris requests a proportional additur to the award of past emotional distress.

## V.    Equitable Relief

An example of equitable relief ordered in a recent case is Carter v. Transport Workers Union of America, Local 556, and Southwest Airlines Co., pending in the United States District Court, Northern District of Texas, Civil Action No. 3:17-cv-2278-X (Exhibit 1).

In the Carter case, the Court enjoined Southwest:

- from discriminating against Southwest flight attendants for their religious practices and beliefs, including—but not limited to—those expressed on social media and those concerning abortion;

- from failing to reasonably accommodate Southwest flight attendants' sincerely held religious beliefs, practices, and observances;

- from discriminating against Carter for exercising her rights, under the RLA, to resign from membership in Local 556 and to object to the forced payment of political and other nonchargeable union expenses, including—but not limited to—objections to union expenditures contained in social media posts;

17

- to post jury's verdict and the accompanying Final Judgment on company bulletin boards for a 60-day period and issue them electronically to all Southwest flight attendants; and

- to inform Southwest flight attendants that, under Title VII, they may not discriminate against Southwest flight attendants for their religious practices and beliefs, including—but not limited to—those expressed on social media and those concerning abortion. (Exhibit 1)

Harris's claims are similar. In addition, Harris is prepared to provide more specifics on training and qualifications to be ordered.

WHEREFORE, Plaintiff respectfully requests that the Court grant this motion and enter an order finding that the Plaintiff is entitled to the full verdict with interest and costs of court.

Respectfully submitted,

*/s/ Brian Sanford*
Brian Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com
Elizabeth "BB" Sanford
Texas Bar No. 24100618
esanford@sanfordfirm.com

**THE SANFORD FIRM**
1910 Pacific Ave., Suite 15400
Dallas, TX 75201
Ph:  (214) 717-6653
Fax: (214) 919-0113

**ATTORNEYS FOR PLAINTIFFS**
**JENNIFER HARRIS**


## CERTIFICATE OF SERVICE

I hereby certify that December 19, 2022, I served the foregoing document on all counsel of record via the electronic filing system of the Court.

*/s/ Elizabeth J. Sanford*

19