**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JENNIFER HARRIS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | Civil Action 4:21-cv-1651 |
| | ) | |
| FEDEX CORPORATION, | ) | |
| | ) | |
| *Defendant.* | ) | |

**<u>DEFENDANT FEDEX CORPORATE SERVICES, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW; OR, IN THE
ALTERNATIVE, MOTION TO ALTER OR AMEND VERDICT; OR IN THE
ALTERNATIVE, MOTION FOR A NEW TRIAL</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................... iii

I.    NATURE AND STAGE OF THE PROCEEDING............................................1

II.    STATEMENT OF ISSUES AND STANDARD OF REVIEW ........................1

    a.  FRCP 50(b) - Motion for Judgment as a Matter of Law...............................1

    b.  FRCP 59(e) - Motion to Alter/Amend Verdict (Monetary Amounts) ..........2

    c.  FRCP 59 – Motion for a New Trial ...............................................................3

        i.  FRCP 59(a)(1) - Verdict is Against the Clear Weight of the
           Evidence..........................................................................................3

        ii.  FRCP 59(a)(1) - Procedural and Evidentiary Issues........................4

III.    SUMMARY OF ARGUMENT .........................................................................4

IV.    FEDEX IS ENTITLED TO JUDGMENT AS A MATTER OF LAW .............7

    A.  Plaintiff's Section 1981 Claim is Barred by a Contractual Limitation
        Period ...........................................................................................................7

    B.  Plaintiff's Retaliation Claims Under Both Section 1981 and
        Title VII Fail ...............................................................................................9

        a.  The Fifth Circuit Has Expressly Held that Merely Questioning the
           Factual Basis of a Termination Decision Cannot Support a
           Retaliation Claim ..........................................................................10

        b.  Plaintiff's Proof Falls Well Short of the Standard Set by the Fifth
           Circuit ...........................................................................................12

    C.  Punitive Damages are Improper as a Matter of Law ..................................16

    D.  The Court Erred in Permitting Plaintiff to Amend Her Complaint ............19

V.      IN THE ALTNERATIVE, THE COURT SHOULD ALTER OR AMEND THE JUDGMENT ........................................................ 20

     a.  The Punitive Damages Award is Unconstitutional and Excessive............ 21

         i.   In *Gore* and *State Farm*, the U.S. Supreme Court Held That a Trial Court Must Ensure Any Punitive Damages Award is Not Unconstitutionally Excessive ........................................................ 21

         ii.  Under *Gore, State Farm*, and Recent Case Law, a Reduction in Punitive Damages is Required ........................................................ 23

         iii.  Punitive Damages are Subject to Title VII's $300,000 Cap .......... 26

         iv.  Plaintiff is Not Entitled to Elect a New Trial if Damages are Set Aside or Reduced ........................................................ 26

     b.  The Emotional Distress Awards are Excessive ........................................ 27

         i.   The Future Emotional Distress Award is Void, or at a Minimum Excessive in Light of the Evidence Presented at Trial ................. 27

         ii.  The Past and Future Emotional Distress Awards are Improper under the Maximum Recovery Rule ............................................. 29

         iii.  Punitive and Emotional Distress Damages Must Conform to the Title VII Damages Cap if Plaintiff's Title VII Cap Survives Defendant's Rule 50 Motion ........................................................ 31

VI.     FEDEX IS ENTITLED TO A NEW TRIAL .................................................. 31

     a.  The Retaliation Verdict is Against the Weight of the Evidence ............... 31

     b.  Plaintiff's "Human Resources Expert" Offered Prejudicial Legal Conclusions and Had No Foundation to Offer Opinion Testimony .......... 31

     c.  The Court Improperly Sustained Plaintiff's *Batson* Challenge to Juror No. 10 ........................................................ 36

VII.    CONCLUSION ........................................................40

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*In re Actos (Pioglitazone) Prod. Liab. Litigation,*
  No. 6:11-md-2299, 2014 WL 5461859 (W.D. La. Oct. 27, 2014) ....................................3, 26

*American Textile Mfrs. Inst., Inc. v. Donovan,*
  452 U.S. 490 (1981) .............................................................................................34

*Askanase v. Fatjo,*
  130 F.3d 657 (5th Cir. 1997) ...........................................................................32, 33

*Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.,*
  933 F.3d 314 (5th Cir. 1991) .................................................................................19

*Barfield v. Federal Express Corp.,*
  351 F.Supp.3d 1041 (S.D. Tex. 2019) ......................................................................7

*Basse Truck Line, Inc. v. First State Bank,*
  949 S.W.2d 17 (Tex. App. 1997) .............................................................................7

*Batson v. Kentucky,*
  476 U.S. 79 (1986) ............................................................4, 6, 36, 37, 38, 39

*Bertucci Contracting Corp. v. M/V Antwerpen,*
  465 F.3d 254 (5th Cir. 2006) .................................................................................3

*BMW of North America v. Gore,*
  517 U.S. 559 (1996) ...................................................................................2, 21, 23

*Brown v. Mississippi Department of Health,*
  256 Fed. Appx. 710 (5th Cir. 2007) .......................................................................27

*Bryant v. Compass Group USA Inc.,*
  413 F.3d 471 (5th 2005) ...................................................................................9, 11

*C.P. Interests, Inc. v. Calif. Pools Inc.,*
  238 F.3d 690 (5th Cir. 2001) ...............................................................................32

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
  509 U.S. 579 (1993) .........................................................................................31, 32

*E.E.O.C. v. Boh Bros. Const. Co., L.L.C.,*
  731 F.3d 444 (5th Cir. 2013) ...........................................................................16, 18

*Est. of Sowell v. United States,*
  198 F.3d 169 (5th Cir. 1999) ...............................................................................33

*EZ Pawn Corp. v. The Honorable Fernando Mancias*,
  934 S.W.2d 87 (Tex. 1996) ..............................................................................7

*Garner v. BP Amoco Chemical Company*,
  No. 3:07-cv-00221, 2010 WL 1049794 (S.D. Tex. Mar. 16, 2010) ........................16

*Goodman v. Harris County*,
  571 F.3d 388 (5th Cir. 2009) ............................................................................33

*Estate of Haeuser v. Westchester Surplus Lines Ins. Co.*,
  No. 135631 2015 WL 1040439 (E.D. La. Mar. 10, 2015) ..................................34

*Hernandez v. City of Vancouver*,
  C04-5539 FDB, 2009 WL 279038 (W.D. Wash. Feb. 5, 2009) ............................33

*Hernandez v. New York*,
  500 U.S. 352 (2000) ....................................................................................4, 37

*Hernandez v. Rush Enterprises, Inc.*,
  No. 4:19-CV-00638, 2021 WL 857987 (E.D. Tex. Mar. 8, 2021) .........................35

*Hines v. Tex-Tube Co.*,
  No. CV H-09-0221, 2010 WL 11583240 (S.D. Tex. June 2, 2010) ......................33

*Huss v. Gayden*,
  571 F.3d 442 (5th Cir. 2009) ..............................................................................4

*In K.J.P. v. Cnty of San Diego*,
  No. 15-cv-02692, 2022 U.S. Dist. LEXIS 221068 (S.D. Cal. Aug. 17, 2022) ......24

*Jacobs v. Northern King Shipping Co.*,
  No. 97-772, 1998 WL 28234 (E.D. La. Jan. 23, 1998) .......................................34

*Johansen v. Combustion Eng'g, Inc.*,
  170 F.3d 1320 (11th Cir. 1999) ..............................................................3, 26, 27

*Johnson v. United States*,
  597 F. Supp. 374 (D. Kan. 1984) ......................................................................34

*Jones v. Slay*,
  No. 4:12-CV-2109 CAS, 2014 WL 2804407 (E.D. Mo. June 20, 2014) ..........33, 36

*Kalina v. Brazoria County, et al.*,
  No. G-10-96, 2011 U.S. Dist. LEXIS 105212 (S.D. Tex. Sept. 16, 2011) ......25, 26

*Kidis v. Reid*,
  976 F.3d 708 (6th Cir. 2020) ............................................................................21

*Kolstad v. Am. Dental Ass'n*,
    527 U.S. 526 (1999)............................................................................17

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999)................................................................31, 32, 33

*Lebron v. United States*,
    279 F.3d 321 (5th Cir. 2002) ..............................................................29

*Lincoln v. Case*,
    340 F.3d 283 (5th Cir. 2003) ..............................................................25

*Little v. Liquid Air Corp.*,
    952 F.2d 841 (5th Cir. 1992) ..............................................................19

*Longoria v. Hunter Express, Ltd.*,
    932 F.3d 360 (5th Cir. 2019) ..........................................................2, 29

*Meritor Sav. Bank v. Vinson*,
    477 U.S. 57 (1986)..............................................................................34

*Moore v. Ashland Chem. Inc.*,
    151 F.3d 269 276 (5th Cir. 1998) .......................................................32

*Morgan v. Federal Express Corp.*,
    114 F.Supp.3d 434 (S.D. Tex. 2015) .................................................7, 8

*Neely v. PSEG Texas, LP*,
    MO-10-CV-030, 2012 WL 12877923 (W.D. Tex. May 29, 2012) .........33

*Nilsen v. City of Moss Point, Miss.*,
    621 F.2d 117 (5th Cir. 1980) ..............................................................19

*Orthoflex, Inc. v. ThermoTek, Inc.*,
    986 F.Supp.2d 776 (N.D. Tex. 2013) ..................................................32

*Overseas Inns, S.A. P.A. v. United States*,
    911 F.2d 1146 (5th Cir. 1990) ............................................................19

*Owens v Circassia Pharms.*,
    33 F.4th 814 (5th Cir. 2022) ..............................................9,10, 11, 12, 13, 15

*Pipitone v. Biomatrix, Inc.*,
    288 F.3d 239 (5th Cir. 2002) ..............................................................32

*Price v. Federal Exp. Corp.*,
    283 F.3d 715 (5th Cir. 2002) ..............................................................12

*Puga v. RCX Sols., Inc.*,
    922 F.3d 285 (5th Cir. 2019) ..........................................................................29

*Purkett v. Elem*,
    514 U.S. 765 (1995)........................................................................................37

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133 (2000)......................................................................................1, 2

*Ross v. Kansas City Power & Light Co.*,
    293 F.3d 1041 (8th Cir. 2002) ....................................................................3, 26

*Rubinstein v. Admins. of Tulane Educ. Fund*,
    218 F.3d 392 (5th Cir. 2000) ..........................................................................25

*Salinas v. O'Neil*,
    286 F.3d 827 (5th Cir. 2002) ..........................................................................29

*Sasketoo Admins. of Tulane Educ. Fund*,
    31 F.4th 990, 999 (5th Cir. 2022) ...................................................................15

*Sherrod v. United Way of Tarrant County*,
    4:17-cv-00758-0, 2018 WL 10435245 (N.D. Tex. Dec. 11, 2018) ................35

*Shu-Hui Wu v. Miss. State Univ.*,
    626 Fed.Appx. 535 (5th Cir. Sept. 29, 2015)..................................................13

*Smith v. EMC Corp.*,
    393 F.3d 590 (5th Cir. 2004) ..........................................................................19

*Smith v. Transworld Drilling Co.*,
    773 F.2d 610 (5th Cir. 1985) ....................................................................3, 9, 31

*State Farm Mutual Auto Ins. Co. v. Campbell*,
    538 U.S. 408 (2003)....................................................................21, 22, 23, 26

*Stelly v. W. Gulf Mar. Ass'n*,
    407 F. Supp. 3d 673 (S.D. Tex. 2019) ............................................................25

*Strong v. Univ. Healthcare Sys., L.L.C.*,
    482 F.3d 802 (5th Cir. 2007) ...........................................................................9,

*Thomas v. Tx. Dept. of Crim. Just.*,
    297 F.3d 361 (5th Cir. 2002) ....................................................2, 27, 28, 30

*Thomson v. Rook*,
    255 F. Supp. 2d 584 (E.D. Tex. 2001) ............................................................34

*Turley v. ISG Lackawanna, Inc.*,
   774 F.3d 140 (2nd Cir. 2014) ..................................................................24

*U.S. v. Broussard*,
   987 F.2d 215 (5th Cir. 1993) ...............................................................4, 37

*U.S. v. Kimbrel*,
   532 F.3d 461 (6th Cir. 2008) ..................................................................38

*U.S. v. McFerron*,
   163 F.3d 952 (6th Cir. 1998) ...............................................................4, 37

*United States v. Pofahl*,
   990 F.2d 1456 (5th Cir. 1993) ................................................................38

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
   570 U.S. 338 (2013) ..................................................................................9

*Vadie v. Mississippi State University*,
   218 F.3d 365 (5th Cir. 2000) ...........................................................29, 30

*Wallace v. Methodist Hosp. Sys.*,
   271 F.3d 212 (5th Cir. 2001) ....................................................................1

*Weaver v. Metro. Life Ins. Co.*,
   287 F.Supp.3d 645 (N.D. TX. 2017) .........................................................8

*Weisgram v. Marley Co.*,
   528 U.S. 440 (2000) ...................................................................................1

*Wells v. SmithKline Beecham Corp.*,
   601 F.3d 375 (5th Cir. 2010) ...................................................................32

*Wimm v. Jack Eckerd Corp.*,
   3 F.3d 137 (5th Cir. 1993) .......................................................................19

## Statutes

42 U.S.C. § 1981 ...................................................................1, 9, 17, 31

42 U.S.C. § 1981a ..........................................................................16, 26, 29

42 U.S.C. § 1983 .........................................................................................25

## Other Authorities

Fed. R. Civ. P. 15 .....................................................................................19

Fed. R. Civ. P. 30(b)(6) ............................................................................20

Fed. R. Civ. P. 50 ...................................................................................................1, 8, 20, 31

Fed. R. Civ. P. 59 ...................................................................................................2, 3, 4,  20

Federal Rule of Evidence 702 ............................................................................6, 31, 32, 33, 36

Federal Rules of Evidence 704 ......................................................................................32, 35

U.S. Const. Amd. 5 ...................................................................................................21

U.S. Const. Amd. 14 ...................................................................................................21

## I.     NATURE AND STAGE OF THE PROCEEDING.

Trial was held; the jury reached a verdict; and Plaintiff filed a Motion For Entry of Judgment. ECF No. 116. That motion is fully briefed. ECF Nos. 116-119.

## II.     STATEMENT OF ISSUES AND STANDARD OF REVIEW.

The issues to be decided on this motion and applicable standards of review are as follows:

### A.     FRCP 50(b) - Motion for Judgment as a Matter of Law.

Issues raised in this motion include: (1) whether the Court should enter judgment as a matter of law for FedEx on Plaintiff's Section 1981 retaliation claim based on a contractual limitation period[1]; (2) whether the Court should enter judgment as a matter of law for FedEx on Plaintiff's retaliation causes of action under both 42 U.S.C. § 1981 and Title VII based on the proof at trial; and (3) whether punitive damages are warranted as a matter of law.

The standard for granting judgment as a matter of law "mirrors" the standard for granting a pretrial motion for summary judgment. FRCP 50, Adv. Comm. Notes, 1991 Amend.; *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 150 (2000). A JMOL motion requires the court to determine whether there is any "legally sufficient evidentiary basis" for a reasonable jury to find for the party opposing the motion. *Weisgram v. Marley Co*., 528 U.S. 440, 457 (2000). Credence must be given to evidence "supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Wallace v. Methodist Hosp. Sys*., 271 F.3d 212 (5th Cir. 2001). A "mere scintilla of evidence" is generally insufficient to prevent entry of judgment as a matter of law. *Wallace, supra*, 271 F.3d at 219. When ruling on

---

[1] As is further discussed below in Section V.A.3, *infra*, this would have the effect of reducing the amount of the jury award to $300,000 as a matter of law, because Plaintiff's only remaining claim would be under Title VII, which "caps" damages in that amount.

a JMOL motion, the court must review the entire record, not just evidence favorable to the nonmoving party. *Reeves, supra*, 530 US at 149-150.

### B.  FRCP 59(e) - Motion to Alter/Amend Verdict (Monetary Amounts).

The issues to be decided also include the following matters concerning the monetary amount of the jury's verdict:

(1) if allowed, whether the punitive damages award is unconstitutionally excessive. The standard on this issue is whether the award is lawful, in light of the degree of reprehensibility of FedEx's conduct, the disparity between the harm suffered by Plaintiff and the punitive damages awarded, and the difference between the award in the instant case in comparison to comparable cases. *BMW of North America v. Gore*, 517 U.S. 559, 575 (1996).

(2) whether the award of future emotional distress to Plaintiff should be set aside or reduced in light of the evidence at trial. The standard on this issue is the extent to which the record supports the amount of such damages. *Thomas v. Tx. Dept. of Crim. Just.*, 297 F.3d 361, 370-372 (5th Cir. 2002).

(3) whether the award of emotional distress damages to Plaintiff (past and future) should be remitted in light of the Fifth Circuit's maximum recovery rule. The standard on this issue is whether the award is more than "150% of the highest inflation-adjusted recovery in an analogous, published decision." *Longoria v. Hunter Express, Ltd.*, 932 F.3d 360, 365 (5th Cir. 2019); and

(4) whether punitive damages are subject to Title VII's $300,000 statutory "cap." The standard on this issue is whether, as is referenced above, FedEx is entitled to judgment as a matter of law on Plaintiff's Section 1981 claim, pursuant to the standards noted above; and

(5) whether, in the event the Court reduces the amount of the damages award, Plaintiff is entitled, under the doctrine of remittitur, to elect between a new trial on damages or accept the

reduction. The standard on this issue is whether the reduction is based on a matter of law or is a substitution of the Court's judgment for that of the jury. FedEx submits that it is the former in the case of all the issues set forth above, and so an offer of a new trial would not be required. *See In re Actos (Pioglitazone) Prod. Liab. Litigation*, No. 6:11-md-2299, 2014 WL 5461859, at *49-*53 (W.D. La. Oct. 27, 2014) (Apx. 36); *Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1049-1050 (8th Cir. 2002); *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1331-32 (11th Cir. 1999).

### C.  FRCP 59 – Motion for a New Trial.

#### 1.  FRCP 59(a)(1) - Verdict is Against the Clear Weight of the Evidence.

Even if the Court does not grant FedEx's motion for judgment as a matter of law, the Court may still grant a new trial if, in its view, the verdict is against the clear weight of the evidence. *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612-613 (5th Cir. 1985). "A new trial may be granted. . . if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Id* at 613. As the Fifth Circuit stated in *Smith*:

> In making this determination, the district court weighs all the evidence, but need not view it in the light most favorable to the nonmoving party. While the court is to respect the jury's collective wisdom and must not simply substitute its opinion for the jury's, if the trial judge is not satisfied with the verdict of a jury, he has the right—and indeed the duty—to set the verdict aside and order a new trial.

*Id.* (internal quotations omitted).

A verdict should be set aside where, after giving full respect to the jury's findings, the judge "is left with the definite and firm conviction that a mistake has been committed [by the jury]." *Bertucci Contracting Corp. v. M/V Antwerpen*, 465 F.3d 254, 259 (5th Cir. 2006) (quoting *Walker v. Braus*, 995 F.2d 77, 80 (5th Cir.1993)).

2.  <u>FRCP 59(a)(1) - Procedural and Evidentiary Issues</u>.

An additional issue to be decided is whether the Court should grant FedEx a new trial based on erroneous procedural and evidentiary rulings. The standard of review on procedural matters in general (except as noted below with respect to the *Batson* issue) is whether FedEx was prejudiced. *Huss v. Gayden*, 571 F.3d 442, 456 (5th Cir. 2009).

Regarding the issue of the Court's substantive ruling on Plaintiff's *Batson* challenge to Juror No. 10 in particular, the standard is whether, given FedEx's proffered race-neutral reason for striking the juror, Plaintiff "established purposeful discrimination." *Hernandez v. New York*, 500 U.S. 352, 363 (2000). However, as is discussed further in section VI.C, *infra*, if it is determined that the Court failed to follow the three-step *Batson* analysis provided by the U.S. Supreme Court, the verdict must be automatically set aside regardless of any issue of prejudice or "harmless error." *U.S. v. McFerron*, 163 F.3d 952, 953-956 (6th Cir. 1998); *U.S. v. Broussard*, 987 F.2d 215, 221 (5th Cir. 1993)*, abrogated on other grounds as stated in J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 130-131 (1994).

## III.   <u>SUMMARY OF ARGUMENT.</u>

The jury's verdict is contrary to law in multiple respects, and the Court should enter judgment in FedEx's favor. In the alternative, the Court should conform the judgment to the law, and grant FedEx a new trial.

Plaintiff's Section 1981 claim is time-barred. At trial, Plaintiff admitted that she submitted an employment application to FedEx in which she agreed to bring employment-related claims within six (6) months after they arose. Plaintiff filed her present action more than six (6) months after her termination, and consequently, Plaintiff's only remaining claim is her Title VII claim.

Although that claim is deficient as well and should not have been allowed, as is discussed below, Title VII's "cap" on compensatory and punitive damages limits any award to $300,000.

The jury found against Plaintiff on her discrimination claim. The verdict and judgment are based entirely on the notion that FedEx retaliated against Plaintiff for filing internal complaints with its human resources department. That conclusion is not only unsupported by the evidence, it is also in *direct and absolute contravention of the evidence*, in that the record shows that the management of Plaintiff's performance deficiencies began *before* she ever filed a complaint. Plaintiff was required to prove at trial that "but for" her internal complaints, FedEx would not have taken personnel actions against her. Plaintiff simply failed to carry this burden. Given this fundamental defect in her retaliation claim (that the management of her performance that led to her termination began before she made her first complaint), she simply cannot meet this standard.

What is more, at every stage of Plaintiff's performance management process, FedEx refrained from taking any action against Plaintiff while her complaints were pending with Human Resources. FedEx's independent HR investigation team investigated the details of each complaint, and no action was taken until such investigations were completed (with a detailed written report issued) and it was determined that Plaintiff's allegations of discrimination and retaliation were unsubstantiated. FedEx also put in substantial evidence that the true reason for Plaintiff's termination was her unsatisfactory performance over a period of many months, despite multiple opportunities to improve.

Additionally, Plaintiff's trial proof fails to establish any basis for an award of punitive damages which requires "clear and convincing" evidence of actual malice by FedEx. To the contrary, all the proof points squarely to the conclusion that FedEx, at a minimum, believed in good faith that its policies and procedures and its handling of the processes for evaluating

Plaintiff's performance and complaints were legally compliant. Based on unequivocal Fifth Circuit case law, FedEx's good faith belief in this regard negates any claim for punitive damages.

If punitive damages are permitted, any award of punitive damages must comply with the limitations placed on such awards by the U.S. Supreme Court. FedEx's robust system of anti-discrimination policies and procedures, including its employment of a team of highly experienced human resources personnel, and other measures taken, were evident at trial and compel a significant reduction in any punitive damages award.

The emotional distress award in Plaintiff's favor must also be reduced. First, future emotional distress, which comprises the bulk of the award, is unwarranted in light of the clear testimony by Plaintiff that her level of distress had dissipated significantly by the time of trial, including because she had found another job in which she was succeeding. Second, the Fifth Circuit's "maximum recovery rule" limits recovery of emotional distress damages to an inflation-adjusted amount no greater than 150% of the highest such award approved to date by the Fifth Circuit in a comparable case. The jury's award far exceeds this limitation.

In the alternative, FedEx is entitled to a new trial due to erroneous procedural and evidentiary rulings by the Court. The Court allowing Plaintiff's "human resources" expert (Coneisha Sherrod) to testify was particularly prejudicial. Sherrod's testimony, which lacked any foundation in the facts of this case whatsoever, consisted largely of legal opinions, and misleading legal opinions at that, which distorted the legal standards that applied to FedEx's conduct in violation of Federal Rule of Evidence 702. The Court also mis-handled and ruled in error on Plaintiff's *Batson* challenge to Juror No. 10. The Court sustained that objection based on its own arguments without Plaintiff having met her considerable burden of proof to overcome FedEx's right to exercise peremptory strikes on race-neutral grounds.

Finally, the Court erred in granting Plaintiff's pre-trial motion to amend her Complaint to add claims under Title VII which Plaintiff filed after the close of discovery and while FedEx's motion for summary judgment was pending. This was an improper end-run around dismissal of her complaint due to the untimeliness of her Section 1981 claim and was contrary to the Fifth Circuit's stance on the use of such tactics.

## IV.   FEDEX IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.

### A.   Plaintiff's Section 1981 Claim is Barred by a Contractual Limitation Period.

In Texas, both state and federal courts have recognized that contractual limitation periods are enforceable, even if they shorten limitation periods established by statute. *Basse Truck Line, Inc. v. First State Bank*, 949 S.W.2d 17, 21-22 (Tex. App. 1997). Additionally, Texas courts have found that a six-month contractual statute of limitations is reasonable. *See e.g., EZ Pawn Corp. v. The Honorable Fernando Mancias*, 934 S.W.2d 87, 88-91 (Tex. 1996). U.S. District Courts in Texas have upheld contractual limitation provisions in retaliation cases. *Morgan v. Federal Express Corp.*, 114 F.Supp.3d 434, 441-444 (S.D. Tex. 2015); *Barfield v. Federal Express Corp.*, 351 F.Supp.3d 1041, 1045, 1049-1052 (S.D. Tex. 2019). This is especially so when the claim arises out of an alleged violation of 42 U.S.C. § 1981 which does not require pre-suit exhaustion with an administrative agency such as the EEOC. *See Morgan*, 114 F.Supp.3d at 411-444. At trial, Plaintiff admitted that she signed an employment application containing a provision requiring her to bring claims within six (6) months. Trial Transcript[2] at 4[3]-131:11-23 & Exh. 2.[4]

---

[2] The trial transcripts are completed and have been lodged with the Court as noted at ECF 105-111.

[3] The pagination for the transcript of each day of trial is not preceded with the prefix of the day of trial.." However, we have added such a prefix to these citations for clarity. Where that prefix appears, we are referring to that trial day's transcript.

[4] FedEx will file a copy of the Trial Exhibits cited in this Memorandum of Law as one of its Evidentiary Appendix.

The agreement states, at paragraph 15:

> This agreement constitutes the entire and final agreement between the parties and all other prior agreements, arrangements, or understandings, oral or written, are merged into and superseded by the terms of this agreement. I understand that should any part of this agreement be held unenforceable, the enforceability of the remaining provisions shall not be impaired. To the extent the law allows an employee to bring legal action against the Company, I agree to bring that complaint within the time prescribed by law or 6 months from the date of the event forming the basis of my lawsuit, whichever expires first.

*Id*. Plaintiff's employment with FedEx terminated on January 7, 2020. Trial Transcript at 4-77:6-8. Plaintiff filed her complaint in this case on May 20, 2021, more than one year later. ECF 001. Accordingly, her Section 1981 claim is time-barred.

At trial, when FedEx moved for judgment under Rule 50(a), the Court denied FedEx's motion based on a reading of the foregoing contractual provision as applying only to claims arising from the contractual obligations set forth in the agreement. Trial Transcript at 5-21:12 to 5-22:16. This interpretation is incorrect. The application does not create any legal duty flowing from FedEx to Plaintiff, so Plaintiff would have no claims to bring against FedEx based solely on the terms of the agreement. Trial Exh. 2 at ¶15. Accordingly, a limitation clause speaking to time periods for bringing claims arising out of such duties cannot be said to be restricted to matters within the application itself, or the limitation clause would be mere surplusage without any meaning or application whatsoever. *See id.* Such a strained reading of the application would violate the basic principle that all the terms of a written contract should be given effect. *See Weaver v. Metro. Life Ins. Co.*, 287 F.Supp.3d 645, 649 (N.D. TX. 2017).

///

///

///

///

### B. **Plaintiff's Retaliation Claims[5] Under Both Section 1981 and Title VII Fail.**

On a JMOL motion, the burden-shifting framework of *McDonnell Douglas* (applicable to summary judgment motions) does not apply to Plaintiff's retaliation claims. "Instead, [the inquiry is] whether the record contains sufficient evidence to support the jury's ultimate findings." *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 475-76 (5th 2005). Also, a new trial should be granted if the verdict is "against the clear weight of the evidence." *Smith, supra.*, 773 F.2d at 612-613.

To prevail, Plaintiff was required to establish that "1) she engaged in a protected activity; 2) she suffered an adverse employment action; and 3) there is a causal connection between the two." *Owens v Circassia Pharms.*, 33 F.4th 814, 835 (5th Cir. 2022). Plaintiff had to show that "but for" her internal complaints, she would not have been terminated. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013); *Owens, supra*, at 835. "This inquiry requires a greater showing than mere causal connection. It requires that the plaintiff show that protected conduct was *the* reason for the adverse action." *Id.* (emphasis in original). "In other words, even if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct." *Id.* (internal citations and quotations omitted). And while "[p]laintiffs may combine "suspicious timing with other significant evidence of pretext," *Owens*, 33 F.4th at 835 (5th Cir. 2022), "temporal proximity alone is insufficient to prove but for causation," *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).

///

///

---

[5] The burden of proof and defenses are the same on Plaintiff's Section 1981 claim and her Title VII claim. *Owens, supra.*, 33 F.4th at 834-835 & n.18. The jury's verdict was in Plaintiff's favor on both such retaliation claims. ECF 099.

1.   <u>The Fifth Circuit Has Expressly Held that Merely Questioning the Factual Basis of a Termination Decision Cannot Support a Retaliation Claim.</u>

An attack by Plaintiff on the factual basis of FedEx's proffered reason for terminating her employment is not sufficient to prevail on a claim of retaliation as held in a remarkably similar and recent case decided by the Fifth Circuit. *Owens, supra,* 33 F.4th at 825. In *Owens*, the plaintiff, an Asian sales manager, worked in her position for several years. *Id.* at 820. She received three semi-annual performance reviews during that time in which she was rated 3 out of 5 overall and was criticized for failing to lead and coach her sales team. *Id.* at 820-821. The second and third reports noted a lack of improvement in this area, with the third report expressing "concern" and acknowledging that plaintiff was "not meeting expectations." *Id* at 821. These assessments were made despite the fact that plaintiff's sales region ranked high in terms of overall revenue. *Id* at 821. At one point, the plaintiff (Owens) received verbal criticism from a superior (an Accounts Director) resulting in an internal discrimination complaint by the plaintiff. *Id* at 822. The plaintiff was placed on a performance improvement plan ("PIP"). *Id* at 823. Plaintiff was terminated for failing to meet the terms of the PIP despite plaintiff's contention that she and her team were top sales performers, and plaintiff had made an additional internal "whistleblower" complaint. *Id.*

The district court granted summary judgment for the defendant in *Owens*, which the Fifth Circuit upheld, explaining:

> [The Plaintiff] may meet her burden through use of various forms of circumstantial evidence, including evidence of disparate treatment or evidence tending to show that [the Defendant's] explanation is unworthy of credence. But employment laws do not transform federal courts into human resources managers, so the inquiry is not whether Circassia made a wise or even correct decision to terminate [the Plaintiff]. Instead, [t]he ultimate determination, in every case, is whether, viewing all of the evidence in a light most favorable to the plaintiff, a reasonable factfinder could infer discrimination. Thus, evidence must be of sufficient "nature, extent, and quality" to permit a jury to reasonably infer [retaliation].

*Id* at 826. Employers are "entitled to be unreasonable" in terminating their employees "so long as [they] do [ ] not act with discriminatory animus." *Id* at 826. This reasoning applies with equal force in the retaliation context. *See id* at 835.

The *Owens* court elaborated that the plaintiff offered "specific facts which, if credited by a factfinder, could lead to a reasonable rejection of Circassia's proffered reason for firing Owens" and "objective evidence that Circassia acted in a way that does not logically comport with its assessment of her performance." *Id* at 833. Nevertheless, the Court rejected the plaintiff's legal claims for discrimination and retaliation, explaining that "although Owens likely presents enough evidence of illogic to permit a rational factfinder to think Circassia's proffered reason might be false, Owens does not present the type of evidence necessary to permit an inference of ***discrimination***." *Id*. at 833 (internal quotations and citations omitted; emphasis added). The *Owens* court went on to hold that even subjective criteria such as a supervisor's judgment that the plaintiff was failing in leadership and team development is sufficient to defeat a retaliation claim because even if the supervisor is wrong, or irrational, it is not the Court's place to make human resources decisions. *Id*. at 833-834; *see also id.* ("Owens provides no . . . support for the proposition that employers are barred from using subjective criteria to evaluate employees, and we reject this argument.").

The holding in *Owens* is nothing new. The Fifth Circuit has repeatedly rejected plaintiffs' efforts to manufacture legally actionable claims from what amounts to nothing more than a questioning of the legitimate business judgment of managers and human resources professionals. *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ("evidence that the employer's investigation merely came to an incorrect conclusion does not establish a racial motivation behind an adverse employment decision. Management does not have to make proper

decisions, only non-discriminatory ones."); s*ee also Price v. Federal Exp. Corp.*, 283 F.3d 715, 723 (5th Cir. 2002) (rejecting plaintiff's evidence and argument, in a failure to promote case, that he was better qualified than another employee who received a promotion). That is precisely what Plaintiff does here and precisely why her claims fail as a matter of law.

        2.    Plaintiff's Proof Falls Well Short of the Standard Set by the Fifth Circuit.

This case presents an even more stark example of why the Fifth Circuit bars retaliation claims that do nothing more than question the factual basis of a performance assessment without any evidence of unlawful *animus*. In *Owens*, the plaintiff was apparently a top performer in terms of sales numbers and revenue attainment. *Owens, supra*, 33 F.4th at 820-823. Here, by contrast, while certain of Plaintiff's metrics at certain points in time were not the lowest, Plaintiff was undisputedly *failing* to meet revenue goals. In fact, she had the only district in the United States, and in the living memory of the Vice President of Sales, whose district's revenue numbers *declined* from year to year. Trial Transcript at 3-35:17-20; 5-155:15 to 5-156:14 & Exh. 247. As is explained below, if the plaintiff in *Owens* had no legal basis for her claims, then surely, neither does Plaintiff Harris.

Here, as in *Owens*, the protected activity at issue consisted of making internal complaints of discrimination and retaliation to human resources, in addition to filing a charge with the EEOC. Trial Transcript at Exhs. 6, 7, 9, 11, 13, 15-17; *Owens, supra*, 33 F.4th at 835. Concerns about Plaintiff Harris's performance arose and were discussed with her *before* any complaint was made by Plaintiff. Trial Transcript at 3-51:7-14; 5-153:16 to 5-154:11 & Exh. 140. In fact, the conversation that prompted Plaintiff to submit her initial complaint in March 2019 involved a discussion of whether she would like to step down out of a management role due to ongoing performance deficiencies, refuting any potential claim that FedEx's assessment of Plaintiff's

performance was solely the result of her complaints.  Trial Transcript at 3-52:18 to 3-53:9; 3-215:20 to 3-216:9; 4-106:9-20.   Accordingly, because the negative assessments of Plaintiff's performance, which ultimately culminated in discipline and termination, pre-dated her first complaint, no retaliatory motive can reasonably be attributed to those assessments of her performance. *See Shu-Hui Wu v. Miss. State Univ.*, 626 Fed.Appx. 535, 538 (5th Cir. Sept. 29, 2015) ("The substantial similarities between [the supervisor's] prior. . . reviews and the negative review recommending against [plaintiff's] promotion negate a retaliatory motive for his negative assessment. As a result, [plaintiff] has failed to produce sufficient evidence that Marcus acted with retaliatory animus.")

The personnel actions in this case consist of a June 26, 2019, Letter of Counseling (Trial Exhibit 10), a September 16, 2019, Letter of Warning (Trial Exhibit 14), and Plaintiff's involuntary termination on January 8, 2020. Trial Transcript at 4-77:7-8 & Exh. 212. As in *Owens*, there was no overt evidence of retaliation, such as a comment to the plaintiff that the counseling, warning, or termination was issued because she made complaints. Trial Transcript at 4-110:13-18. To the contrary, FedEx investigated each of Plaintiff's complaints, and no personnel actions were taken against Plaintiff while those complaints were pending. Trial Transcript at 2-132:19 to 2:139:8 & Exhs. 8, 10, 13, 17, 18 and 27; 273-53:10 to 3-54:7 & Exh. 10; 3-85:18 to 3-86:5 & Exhs. 14; 3-91:25 to 3-92:21; 4-69:22 to 4-70:10; 4-71:17-21; 4-234:15 to 3-238:2. Only when FedEx Human Resources concluded that Plaintiff's internal complaints were not substantiated did Plaintiff's managers proceed with each respective action. *Id*.

It is important to understand as well that Plaintiff's internal complaints, like her complaint initiating this lawsuit, were based primarily on allegations that she was being discriminated against based on her race. Specifically, she complained that the performance of several of her White peers

was lower than hers in certain metrics, but these peers were not disciplined or terminated in the same manner. Trial Transcript at 4-117:10-15; 4-118:9-11; 4-140:20 to 141:8; 4-158:5-8. The jury did not agree with Plaintiff. They found in favor of FedEx on this claim, concluding that the comparisons made by FedEx between Plaintiff and her peers when evaluating her performance were not pretextual and FedEx did not take action against Plaintiff because of her race.

This conclusion by the jury significantly weakens Plaintiff's retaliation claim given that it is based on the same foundational allegation, i.e., the legitimate reason offered by FedEx for Plaintiff's discipline and termination must be pretextual because Plaintiff performed better than her peers in certain metrics. To support her argument that FedEx's assessment of her performance was unworthy of belief and thus pretextual, Plaintiff offered very little actual evidence.  Indeed, to support her erroneous argument that FedEx's managers somehow got it wrong, and Plaintiff was an excellent performer, the *entirety* of Plaintiff's factual evidence presentation at trial, aside from expert testimony and testimony relating to emotional distress, consisted of Plaintiff's counsel reading to the jury from highly selective bits and pieces of performance data, taken out of context from various time periods, with Plaintiff simply affirming her attorney's statements. Trial Transcript at 4-60:11 to 4-62:17; 4-68:23 to 4-71:21; 4-74:2 to 4-75:21; *see also* 4-41:24 to 4-45:17. Of course, as the Court instructed the jury, an attorney's statements are *not* evidence and should be disregarded. ECF 099 at 5-6. This was nothing more than an effort to confuse the jury and artificially bolster its perception of her performance.

In contrast to this presentation by Plaintiff's counsel, there was clear and unrebutted testimony that Plaintiff's performance was *indisputably* worse than her peers in key areas identified by FedEx in its business judgment. For example, it was undisputed that Plaintiff was the only District Sales Manager who had overall declining revenue in Fiscal Year 2019 and the only

District Sales Manager whose direct reports were all below revenue goal in the fourth quarter of that fiscal year. Trial Exhibits 243, 246-248. This evidence is *unrebutted*. *See, e.g., Sasketoo Admins. of Tulane Educ. Fund*, 31 F.4th 990, 999 (5th Cir. 2022) (judgment entered for defendant where plaintiff failed to rebut evidence supporting employer's comparison of performance with plaintiff's peers).

Also, notwithstanding her attorney's attempts to distract the jury with irrelevant, cherry-picked data excerpts, Plaintiff *expressly admitted* during cross-examination that her objections to the discipline against her were based *entirely* on the notion that the initial June 2019 counseling (which led to the warning and ultimately termination) was a "house of cards" because, in her own subjective opinion, her revenue numbers listed in the counseling improperly included an adjustment related to a particular customer – BJ Services. Trial Transcript at 4-140:20 to 4-141:11; 4-151:16 to 4-155:8; Exhs. 6, 60. Yet, Plaintiff admitted to the jury, as did her own witness (Brian Conrey), that the adjustment was proper and correct based on FedEx policy and practice. Trial Transcript at 3-138:21 to 3-139:1; 3-121:23 to 3-124:2; 3-124:22 to 3-125:10; 3-135:6 to 3-136:14; 4-154:19 to 4-155:8 & Exh. 6.

Accordingly, the question on this motion is whether the exact same evidence regarding Plaintiff's performance that the jury found believable when ruling in favor of FedEx on the discrimination claim could subsequently be found unbelievable when ruling in favor of Plaintiff on her retaliation claim.  Was sufficient evidence presented that could support a conclusion that Plaintiff's internal complaints were *the* reason for FedEx's performance actions taken against her as opposed to her performance deficiencies? *Owens, supra,* 33 F.4th at 835. Aside from Plaintiff's facile presentation of various pieces of highly selective performance data, there is *no* such evidence. According to the Fifth Circuit in *Owens*, this is insufficient, and judgment must be

entered in FedEx's favor as a matter of law as to Plaintiff's claim of retaliation under both Title VII and 42 U.S.C. §1981. *Id.*

## C. Punitive Damages are Improper as a Matter of Law.

Plaintiff made no showing that punitive damages are warranted. Accordingly, judgment should be entered as a matter of law in FedEx's favor on the punitive damages claim. *See E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 467-470 (5th Cir. 2013). A plaintiff may recover punitive damages upon proof that the defendant acted "with malice or reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). "This is a higher standard than the showing necessary for compensatory damages, satisfied in 'only a subset of cases involving intentional discrimination.'" *Boh Bros., supra*, 731 F.3d at 467, citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999). "Thus, 'not every sufficient proof of pretext and discrimination is sufficient proof of malice or reckless indifference.'" *Boh Bros.*, 731 F.3d at 467, (quoting *Hardin v. Caterpillar, Inc.*, 227 F.3d 268, 270 (5th Cir. 2000)).

Additionally, evidence in support of a punitive damages award must be "clear and convincing." In *Garner v. BP Amoco Chemical Company*, No. 3:07-cv-00221, 2010 WL 1049794, (S.D. Tex. Mar. 16, 2010) (Apx.10) (*reversed on other grounds as stated in Pearson v. BP Products North Am., Inc.*, 449 Fed.Appx. 389 (5th Cir. Nov. 10, 2011)), multiple plaintiffs brought suit alleging BP released a toxic substance into the atmosphere at its refineries causing personal injury. A jury awarded $10 million to each plaintiff in punitive damages. *Garner*, 2010 WL 1049794, at *2. This Court set aside the entire punitive damages award, finding that the plaintiffs had produced no clear and convincing evidence of gross negligence or specific intent. *Id* at *5-*6.

Further, the Supreme Court has held that even "in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial

agents where these decisions are contrary to the employer's 'good-faith efforts to comply with Title VII.'" *Kolstad*, 527 U.S. at 529.

Given the high burden, punitive damages should only be allowed in a small, unique subset of cases. This is not one of the small "subset of cases" where clear and convincing evidence demonstrates malice or reckless indifference to federal rights. Pursuant to FedEx procedure and normal practice, Michael Clark (Human Resources) specifically reminded Michelle Lamb, Plaintiff's supervisor, following Plaintiff's initial complaint, that FedEx does not allow retaliation and directed her not to take further action until his investigation was complete. Lamb acknowledged this in writing and agreed to comply. Trial Transcript at 4-234:15 to 4-238:2. Lamb testified that she was not retaliating against Plaintiff when she issued Plaintiff a counseling, placed Plaintiff on Performance Improvement Plans, issued her a Warning Letter and, eventually, terminated her employment. To the contrary, she deliberately waited until after the investigations were concluded to continue her efforts to improve Plaintiff's performance and did not terminate Plaintiff's employment until Human Resources reviewed the matter and determined that there were valid grounds. Trial Transcript, at 2-132 to 2:139:8 & Exhs. 8, 10, 13, 17, 18 and 27; 273-53:10 to 3-54:7 & Exh. 10; 3-85:18 to 3-86:5 & Exh. 14; 3-91:25 to 3-92:21.

The evidence at trial showed that FedEx made good-faith efforts to comply with Section 1981 and Title VII. For example, FedEx:

(1) Established and publishes policies that expressly prohibit retaliation and provide severe consequences for engaging in retaliation, including termination of employment;

(2) Established procedures designed to implement those policies, including, absent extraordinary circumstances, disallowing a manager from taking employment action

against an employee while an employee has an internal complaint of retaliation pending;

(3) Requires approval of Human Resources before any adverse action is taken against an employee, a process that involves review by Human Resources of documented evidence related to the factual basis for the proposed employment action;

(4) Trains personnel on prevention of retaliation and handling of internal complaints; and

(5) Conducts thorough investigations of internal complaints of retaliation by an independent department within HR that specializes in investigations – namely, the same department that handled the three investigations into Plaintiff's complaints. The investigations into Plaintiff's complaints entailed multiple witness interviews and extensive correspondence and review of documents by an HR investigator with decades of experience.

Trial Transcript at 2-69:20 to 2-71:21; 2-73:10 to 2-78:21; 2-80:12 to 2-81:2; 2-81:11 to 2-82:1; 2-97:2 to 2-97:11; 2-107:10 to 2-108:2; 2-120:8 to 2-122:8 & Exh. 251; 2:132 to 2:139:8 & Exhs. 8, 10, 13, 17, 18 and 27; 4-162:19 to 4-164:1; 4-167:23 to 4-173:21 & Exhs. 250, 251; 4-175:5-25; 4-177:8 to 4:183:12 to 4-188:20 & Exh. 27; 4-223:24 to 4-261:20 and Exhs. 9, 13, 17, 40, 72[6]; 5-88:12-20; 5-90:17 to 5-91:20 to 5-99:19 & Exh. 27. *See Boh Bros., supra*, 731 F.3d at 467-469 (5th Cir. 2013) (punitive damages not warranted where defendant believed in good faith that its conduct was lawful).

In light of the foregoing, FedEx is entitled to judgment as a matter of law with respect to Plaintiff's claims for punitive damages.

///

---

[6] Although Exhibit 118 is referenced in the Transcript, it is a duplicate of Exhibit 13, which is the copy that was submitted to the jury. Trial Transcript 4-260:18 to 4-261:20.

**D.  The Court Erred in Permitting Plaintiff to Amend Her Complaint.**

The Court erred when it permitted Plaintiff to add a Title VII cause of action to her complaint after the close of discovery and while FedEx's summary judgment motion was pending. The courts in the Fifth Circuit routinely employ a five-factor test to consider motions to amend under Federal Rule of Civil Procedure 15: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment. *See e.g., Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). While Rule 15 does allow amendments at a late stage of a case, the burden is on the party seeking to amend to show that the delay was excusable. *Nilsen v. City of Moss Point, Miss.*, 621 F.2d 117, 122 (5th Cir. 1980). The Fifth Circuit and this District have long looked with disfavor on parties who wait until after a motion for summary judgment is filed to seek leave to amend to add new claims. *See e.g., Overseas Inns, S.A. P.A. v. United States*, 911 F.2d 1146, 1150 (5th Cir. 1990) *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.3d 314, 321 (5th Cir. 1991); *Little v. Liquid Air Corp.*, 952 F.2d 841, 846-847 (5th Cir. 1992); *see also Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

Plaintiff originally filed this case as a Section 1981 claim only. Plaintiff admitted that the decision to omit the Title VII claim was strategic and intentional because Section 1981 is "sufficient" and "more expansive than Title VII concerning damages." ECF 042 at 4.

Additionally, Plaintiff and her current attorney filed an Amended Charge of Discrimination with the EEOC in April 2020, less than three months after her termination. The essential function of the EEOC is to enforce Title VII and other laws that prohibit workplace discrimination, but not to enforce Section 1981. Her current attorney began representing her in January 2020. ECF 050-11 (Harris Dep. 221:11-17); ECF 109-44 at 48. Plaintiff's right to sue notice from the EEOC is

dated May 13, 2021, and Plaintiff filed her complaint on May 20, 2021. The 100+ factual paragraphs in Plaintiff's Complaint mirror the allegations in the Charge. *Compare* Complaint (ECF 001) and Amended Complaint (ECF 011) with Amended Charge (Docket No. 44-3 at 2-7). Plaintiff could have easily included a single paragraph in her Complaint to plead Title VII in the alternative but intentionally chose not to do so.

Instead, Plaintiff chose not to add a Title VII claim to her complaint until FedEx moved for summary judgment on the ground that her Section 1981 claim was time-barred by a contractual limitation clause. ECF 028 at 16-17. Plaintiff should have been aware of the timeliness issue involving her Section 1981 claim as the document containing the contractual limitations period was produced in September 2021, early in the discovery process. ECF 049 at 10; ECF 50-01 at 2 (Ressler Decl., ¶ 5). And, in fact, it appears that she was aware as she requested that FedEx produce a Fed. R. Civ. P. 30(b)(6) deponent to offer testimony on any contractual agreements between FedEx and Plaintiff. ECF 049 at 10; ECF 50-01 at 2, 50-7 at 6 (Ressler Decl., ¶ 9 & Exh. U). This negates Plaintiff's only purported excuse for her unreasonable delay in seeking leave to amend, which was that had she been "notified earlier, the amendment would have been earlier." ECF 042 at 3. Accordingly, allowing Plaintiff to amend her complaint over FedEx's objection was error.

## V.  **IN THE ALTNERATIVE, THE COURT SHOULD ALTER OR AMEND THE JUDGMENT**.

In the event that the Court declines to dismiss Plaintiff's claims in their entirety pursuant to Fed. R. Civ. P. 50, the Court should alter the requested judgment pursuant to Rule 59 in order to comport with well-established law.

///

///

///

**A. <u>The Punitive Damages Award is Unconstitutional and Excessive.</u>**

    1. <u>In *Gore* and *State Farm*, the U.S. Supreme Court Held That a Trial Court Must Ensure Any Punitive Damages Award is Not Unconstitutionally Excessive</u>.

Pursuant to Supreme Court precedent, this Court should apply no more than a 1:1 ratio between any compensatory award and punitive damages. In *BMW of North America v. Gore*, 517 U.S. 559 (1996), the U.S. Supreme Court invalidated a punitive damages award on the ground that it was excessive under the Fourteenth Amendment[7]. Underpinning the reasoning of the Court was a fundamental principle of due process – a defendant should have notice of the potential financial consequences of its conduct, and unpredictable and extreme punitive damages awards violate this principle. *Id* at 574-575. The court observed:

> Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose.

*Id.* In so holding, the Supreme Court instructed lower courts reviewing punitive damages awards to consider three "guideposts" in deciding whether an award is lawful:

    (1) The degree of reprehensibility of the defendant's misconduct (described as the most important guidepost);

    (2) The disparity between the actual or potential harm suffered by the plaintiff and the punitive damages awarded; and

    (3) The difference between the punitive damages awarded and the civil penalties authorized or imposed in comparable cases.

*Id.* at 575. In 2003, the Supreme Court went on to apply those guideposts in *State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

---

[7] Although the *Gore* case discusses the Fourteenth Amendment (applicable to state law), its holdings and those of *State Farm* (*see discussion, infra*) apply with equal force to federal claims, which are subject to the same due process principles pursuant to the Fifth Amendment. *See Kidis v. Reid*, 976 F.3d 708, 715 (6th Cir. 2020).

In *State Farm*, a Utah jury found that an insurance company's bad faith in handling claims arising from a deadly car accident was sufficiently reprehensible to warrant punitive damages. *State Farm supra*, 517 U.S. at 412-415. The insured killed and severely maimed two others in a vehicle accident and was sued for damages. *Id.* at 412-413. During the course of litigation, the insurer made false promises to the insured that he would not be personally liable and directed the case toward trial and litigation despite reasonable settlement demands from the injured parties. *Id* at 413-414. There was evidence that, during litigation, State Farm's personnel destroyed relevant evidence and engaged in a cover-up. *Id.* at 434. The insured lost the case and was hit with massive liability, whereupon State Farm personnel told the insured to sell his house. *Id.* at 419. The insured had a stroke. *Id.* at 434. The jury found for the insured and awarded $2.4 million in compensatory damages, as well as $145 million in punitive damages. *Id.* at 415.

The trial judge in *State Farm* remitted the compensatory damages to $1 million and the punitive damages to $25 million. *State Farm supra*, 517 U.S. at 415. The Utah Supreme Court reinstated the $145 million punitive damages award, relying on evidence that State Farm had engaged in a *nationwide practice of unfairly minimizing claims in bad faith*. *Id* at 415, 420-421.

Acknowledging the reprehensible conduct by *State Farm*, the U.S. Supreme Court ruled that only the conduct that led to the plaintiff's individual damages could be considered; and that as a benchmark of constitutionality, punitive damages should be considered in light of the ratio between such damages and the underlying compensatory damages to the plaintiff. *State Farm*, 538 U.S. at 425. The court noted that "single-digit multipliers are more likely to comport with due process." *Id.* Additionally, the court held that when compensatory damages are substantial (such as the $1 million award to plaintiff Campbell), "then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *Id.*

The court further directed:

> Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process. "Courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered.

*Id.* at 425.

2. Under *Gore, State Farm*, and Recent Case Law, a Reduction in Punitive Damages is Required.

Here, a reduction in punitive damages is required, particularly when FedEx's conduct is compared to that of the defendant in *State Farm*. Unlike in *State Farm*, there was no evidence of any general or nationwide practice of retaliating against employees in this case. To the contrary, despite the jury's finding that FedEx retaliated against Plaintiff in her specific case, the record shows that FedEx, at a minimum, (1) had compliant policies and procedures, and competent, well—informed HR personnel who implemented those policies and procedures; (2) investigated each of Plaintiff's internal complaints; (3) began to address Plaintiff's performance deficiencies BEFORE any complaint was ever made by Plaintiff; and (4) ultimately terminated Plaintiff's employment only after evaluating her leadership skills and reviewing her performance in comparison to her peers over the course of approximately one year. Trial Transcript at 2-69:20 to 2-71:21; 2-73:10 to 2-78:21; 2-80:12 to 2-81:2; 2-81:11-2-82:1; 2-97:2 to 2-97:11; 2-107:10 to 2-108:2; 2-120:8 to 2-122:8 & Exh. 251; 2-132:19 to 2:139:8 & Exhs. 8, 10, 13, 17, 18 and 27; 3-38:12 to 3-96:1 & Exhs. 10, 14, 107, 140, 145, 162, 163, 168, 169, 174, 176, 177, 179, 180, 182, 183, 186, 196, 212, 248; 4-162:19 to 4-164:1; 4-167:23 to 4-173:21 & Exh. 250; 4-175:5-25; 4-177:8 to 4:183:12 to 4-188:20 & Exh. 27; 4:223:24 to 4-261:20 and Exhs. 9, 13, 17, 40, 72; 5-88:12-20; 5-90:17 to 5-91:20 to & Exh. 27 to 5-99:19 & Exh. 27.

Though the jury's verdict reflects that they stood in the shoes of FedEx and found FedEx's analysis to be in error, the fact remains that FedEx conducted what it believed to be a thorough and correct analysis of Plaintiff's performance over the course of many months, provided Plaintiff with opportunities to contribute to her performance improvement goals, and gave Plaintiff multiple opportunities to meet performance plans before terminating her employment. There was likewise no evidence of document destruction or a cover-up. There was no evidence of fraud or that FedEx deliberately misled anyone. Indeed, the punitive damages award in this case of over $360 million is more than double the initial award that was drastically reduced *in State Farm* and is far higher than any other award permitted in cases involving more reprehensible conduct.

As a further example, *In K.J.P. v. Cnty of San Diego*, No. 15-cv-02692, 2022 U.S. Dist. LEXIS 221068 (S.D. Cal. Aug. 17, 2022) (Apx. 121), the jury awarded $80 million in non-economic wrongful death damages for the family of a victim who was "tased multiple times, punched, handcuffed, put in maximum restraints, strapped to a gurney, and had prolonged pressure applied to his head and torso". *Id.* at *4. The Southern District of California held that such an "award, divorced from any economic damages, was likely the result of passion or prejudice and was grossly excessive." *Id.* at *119 (internal quotations and citations omitted). In the employment context where evidence of abhorrent conduct was presented, courts have likewise reduced punitive damages awards. In *Turley v. ISG Lackawanna, Inc*., 774 F.3d 140 (2nd Cir. 2014), evidence was presented that the plaintiff was called racial slurs, the KKK was invoked, a noose was placed on the plaintiff's car, and management condoned the harassment. The Court nevertheless reduced the $24 million punitive award, concluding that a 2:1 ratio was appropriate where compensatory damages were $1.32 million. *Id.* at 148-150, 164-168.

The Fifth Circuit has consistently reduced punitive damages awards that are far less than this jury's award of over $360 Million in this case. *See Lincoln v. Case*, 340 F.3d 283 (5th Cir. 2003) (Fifth Circuit applied *State Farm* and *Gore* under the Fair Housing Act to reduce a punitive damages award from $100,000 to $55,000); *see also Rubinstein v. Admins. of Tulane Educ. Fund*, 218 F.3d 392, 409 (5th Cir. 2000) (remittitur of $75,000 punitive damages award to $25,000 where the jury found retaliation, but no discrimination or harassment).

A review of U.S. District Court cases in Texas from the last several years also reveals that punitive awards in comparable cases involving claims of employment discrimination and/or retaliation are typically in the range of $100,000 to $1,000,000. Examples include the following:

- In *Stelly v. W. Gulf Mar. Ass'n*, 407 F. Supp. 3d 673 (S.D. Tex. 2019), the plaintiff alleged hostile work environment and retaliation claims under Title VII. *Id* at 676-77. The jury awarded $5,400 in lost wages and $200,000 in punitive damages against one defendant and $600 in lost wages and $100,000 in punitive damages against the second defendant. *Id.* at 677. The second defendant was granted judgment as a matter of law, and the award against it was vacated. *Id* at 682. As to first defendant, the Court found that an award of punitive damages that is more than 37 times the actual damages was excessive. The court reduced the award to $55,000, which was "a tad more than ten times" compensatory damages. *Id* at 688.

- In *Kalina v. Brazoria County, et al.*, No. G-10-96, 2011 U.S. Dist. LEXIS 105212 (S.D. Tex. Sept. 16, 2011) (Apx. 158), this Court found that a punitive damages award of $1 million to each plaintiff was excessive. *Id* at *13. The plaintiffs alleged that the defendant violated their civil rights, in particular their right to be free from sexual harassment, pursuant to 42 U.S.C. § 1983. *Id* at *12-*13. This court reduced the award

to $100,000 for each plaintiff, noting that the original award, which was 10 to 20 times the pecuniary damages award, was excessive. *Id.*

Based on the evidence presented at trial, punitive damages in this case must be reduced and should be no more than the compensatory damages ultimately awarded. *See State Farm*, 58 U.S. at 425 (when compensatory damages are substantial, "then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee."); at 427 ("The wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award.").

      3.  <u>Punitive Damages are Subject to Title VII's $300,000 Cap.</u>

Because Plaintiff's Section 1981 claim is time-barred as is discussed in Section IV.A *supra*, the maximum amount Plaintiff can recover as to both compensatory *and* punitive damages (combined) is $300,000 *if* Plaintiff's Title VII claim survives. *See* 42 U.S.C. § 1981a(b)(3). Accordingly, any award of punitive damages must be consistent with that statutory maximum.

      4.  <u>Plaintiff is Not Entitled to Elect a New Trial if Damages are Set Aside or Reduced.</u>

Further, it should be noted that because the reductions in damages FedEx seeks, as set forth above, are based on legal questions, Plaintiff is *not* entitled to a new trial on damages if Court sets them aside or reduces them. This is because the Court would not be substituting its judgment for that of the jury on the question of the amount or existence of damages, but rather would be ruling as a matter of law that such damages are not available and/or are excessive. *See in re Actos supra*, 2014 WL 5461859, at *49-*53; *Ross, supra*, 293 F.3d at 1049-1050; *Johansen, supra*, 170 F.3d 1320, 1331-32 (11th Cir. 1999). In *Johansen*, the Eleventh Circuit explained that, for example in the case of a reduction based on constitutional limits, such a reduction "is really not a remittitur at all" because "[u]nlike a remittitur, which is discretionary with the court. . . a court has a

mandatory duty to correct an unconstitutionally excessive verdict." *Johansen*, *supra,* 170 F.3d at 1049.

      **B.**  **The Emotional Distress Awards are Excessive.**

          1.  The Future Emotional Distress Award is Void, or at a Minimum, Excessive in Light of the Evidence Presented at Trial.

Even in a case where the plaintiff has testified that she suffered *past* emotional distress, one should not assume the record also supports a finding of *future* emotional distress. *See, e.g., Thomas v. Tx. Dept. of Crim. Just.*, 297 F.3d 361, 370-372 (5th Cir. 2002). To support an award of emotional distress, a plaintiff (1) "must provide specific evidence of the nature and extent of the harm." and (2) "must make more than vague allegations to support his claim." *Id.* at 368; *see also Brown v. Mississippi Department of Health*, 256 Fed. Appx. 710, 711 (5th Cir. 2007) (vacating award of emotional distress because plaintiff's supporting evidence was speculative and devoid of detail).

In *Thomas*, although the plaintiff testified extensively to *past* emotional distress, her evidence of *future* emotional distress was lacking. *Id* at 370-371. She testified that she enjoyed her current job and was performing well in that job. *Id.* She had prospects for future education and advancement. *Id*. The plaintiff did testify as to "continued anger and fears that the lawsuit will bar her from future promotion" as she was still employed by the defendant *Id.* at 364, 370-371. However, the Fifth Circuit held that an award of future emotional distress of $100,000 was excessive, and "[a]t most, the jury properly could have awarded only $50,000." The Fifth Circuit added 50% under the maximum recovery rule (see discussion below) to arrive at a figure of $75,000. *Id* at 371-372.

In contrast to *Thomas*, Plaintiff is no longer employed at FedEx. Trial Transcript at 4-83:2-13. Rather, she is employed at a new company, with new colleagues, and "will catch up in her

career, eventually." Trial Transcript, 4-83:5-19; 6-62:13-14. Although Plaintiff did testify to some ongoing conditions of distress, such as intestinal disturbances, she failed to articulate how those symptoms are actually related to the retaliation she experienced while employed by FedEx, as opposed to the ordinary stress associated with litigation and trial or any of her other experiences. Trial Transcript at 4-84:12 to 4-87:11; 4-93:1-18.

The jury awarded $1,040,000 in future emotional distress, more than eight times the award of past emotional distress ($120,000). ECF No. 99 at 14. (Verdict). Given the requirement that future emotional distress must be supported by "specific evidence," this award is plainly in error. *See Thomas, supra*, 297 F.3d at 368, 370-371. In support of her past emotional distress award, Plaintiff testified that she experienced stress, humiliation, anxiety, financial worries, stress associated with finding new employment, loss of enjoyment, weight gain, and dry heaving. Trial Transcript at 4-84:6 to 4-87:11; 4-88:4-12; 4-93:21-4-94:5. Yet, she testified that over time, those conditions lessened; and as of the time of trial, she had recovered through therapy and engaging in a creative hobby (a t-shirt business). Trial Transcript at 4-95:5-22. Accordingly, the only "specific evidence" in the record points unequivocally toward an award of future emotional distress, if any, that is *substantially less* than the award of past emotional distress. Trial Transcript at 4-84:6 to 4-87:11; 4-93:1-4-94:5; 4-95:5-22.

FedEx requests that the Court set aside the award of future emotional distress, or at a minimum, reduce the future emotional distress award to an amount (in the Court's discretion) that is less than the past emotional distress award of $120,000. And, FedEx requests that the Court do this before, and in addition to, applying the "maximum recovery rule," on the ground that the jury's future emotional distress award is simply contrary to law and the evidence. *See* Section V.B.2, *infra*.

2. <u>The Past and Future Emotional Distress Awards are Improper under the Maximum Recovery Rule</u>.

As is discussed in Section IV.A *supra*, Plaintiff's Section 1981 claim is time-barred. This means that Plaintiff's only potential recovery is limited to her Title VII claim, which provides for a "cap" on compensatory and punitive damages (combined) of $300,000. 42 U.S.C. § 1981a(b)(3). In addition to being subject to such cap, emotional distress damages are further limited by the Fifth Circuit's "maximum recovery" rule. *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 297 (5th Cir. 2019). Under this rule, the Court must not award damages that are "disproportionate to at least one factually similar case from the relevant jurisdiction." *Id*. (quoting *Lebron v. United States*, 279 F.3d 321, 326 (5th Cir. 2002)). Doing so, the Court must measure disproportionality by applying a percentage enhancement to past similar awards – applying a 50% enhancement for jury trials. *Id*. As such, the Fifth Circuit has directed that under this rule, the maximum amount a jury can award is "150% of the highest inflation-adjusted recovery in an analogous, published decision." *Longoria v. Hunter Express*, Ltd., 932 F.3d 360, 365 (5th Cir. 2019) (citations omitted). For federal retaliation claims, the "relevant jurisdiction" means only published cases decided by the Fifth Circuit. *Salinas v. O'Neil*, 286 F.3d 827, 831 (5th Cir. 2002).

A departure from prior awards is only merited "if unique facts are present that are not reflected within the controlling caselaw." *Lebron v. United States*, 279 f.3d 321, 326 (5th Cir. 2002).  That is far from true here.  For example, factually similar cases include:

- In *Vadie v. Mississippi State University*, 218 F.3d 365, 378 (5th Cir. 2000), an emotional distress award was remitted from $300,000 to $10,000 in a race discrimination case. There, the plaintiff's support for his emotional injury consisted of his conclusory statements that his loss of promotion "destroyed" and "totally ruined him"; he became "sick, totally ill, physically, mentally, and everything"; he

saw "many doctors" and took "many pills"; he could not "sleep for months," had headaches and nausea, and was under "severe doctor surveillance." *Id*. at 377. In the case, Plaintiff's statements confirm that her own symptoms and suffering were not nearly as severe as in *Vadie*. She talked about ordinary financial stress and anxiety in looking for a new job, as well as shame, anguish and humiliation, weight loss and dry heaving. Trial Transcript at 4-84:6 to 4-87:11; 4-88:4-12; 4-93:21 to 4-94:5.

- In *Thomas, supra,* a $100,000 award was remitted to $75,000 by the Fifth Circuit. *Thomas, supra*, 297 F.3d at 367. The Court held that based on the plaintiff being happy in a new position, her future emotional distress could not be greater than past distress. *Id*. Here, Plaintiff has made similar comments regarding her current position and future prospects. Trial Transcript at 4-83:2-19; 4-95:5-22.

As Plaintiff acknowledged in her Reply In Support of Entry of Judgment, "mental anguish damages awarded under the maximum recover rule for discrimination cases are much lower than personal injury cases, especially in the Fifth Circuit. ECF 119 at 20. This is particularly so where, as here, a plaintiff presents no evidence that future distress is likely to exceed past distress. Accordingly, while the figures in the above cases would need to include an additional 50% and be adjusted for inflation in accordance with the maximum recovery rule, they clearly mandate an emotional distress award (current and future) in this case that is no more than the award approved in *Thomas*, or $112,500 ($75,000 + 50%), a figure which the Court should adjust to 2022 currency based on inflation.

///

///

3.  <u>Punitive and Emotional Distress Damages Must Conform to the Title VII Damages Cap if Plaintiff's Title VII Cap Survives Defendant's Rule 50 Motion.</u>

If the Court grants FedEx's JMOL as to Plaintiff's 42 U.S.C. Sec. 1981 claim but denies it with respect to Plaintiff's Title VII claim, any compensatory or punitive damages award must conform to the monetary limits set forth in 42 U.S.C. 1981a(b)(3). That statute limits Plaintiff's recovery under Title VII to $300,000. *Id.* at 1981a(b)(3)(D).

## VI.   <u>FEDEX IS ENTITLED TO A NEW TRIAL.</u>

### A.   <u>The Retaliation Verdict is Against the Weight of the Evidence.</u>

Even if the Court does not grant FedEx's motion for judgment as a matter of law on Plaintiff's retaliation claims for the reasons set forth in Section IV.B *supra*, the Court should nevertheless set aside the verdict and grant a new trial because, for those same reasons, the weight of the evidence so strongly supports FedEx that the jury's verdict is simply in error. *Smith, supra*, 773 F.2d at 612-613.

### B.   <u>Plaintiff's "Human Resources Expert" Offered Prejudicial Legal Conclusions and Had No Foundation to Offer Opinion Testimony.</u>

Allowing Plaintiff's expert Coneisha Sherrod to testify was reversible error, primarily because the foundation requirements of Federal Rule of Evidence 702 were not met, and Sherrod offered improper legal opinion testimony that prejudiced the jury.

In *Daubert*, the Supreme Court held that Rule 702 of the Federal Rules of Evidence requires the trial judge to act as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 583 (1993). In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court clarified that Daubert applies to all expert matters described in Rule 702. *Id* at 149. Rule 702 allows opinion testimony from an expert when (a) the expert's technical or specialized knowledge

will help the trier of fact understand the evidence or decide a fact issue; (b) when "the testimony is based on sufficient facts or data"; (c) when "the testimony is the product of reliable principals and methods"; and (d) when "the expert has reliably applied the principles and methods *to the facts of the case.*" Fed. R. Evid. 702 (emphasis added). The party submitting "expert testimony must demonstrate that the expert's findings and conclusions are based on scientific method, and, therefore, are reliable." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269 276 (5th Cir. 1998). "This requires some objective, independent validation of the expert's methodology. The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Id.*

As gatekeepers, "trial courts make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Id.* (quoting *Daubert*, 509 U.S. at 592-593); *see also Pipitone v. Biomatrix, Inc*., 288 F.3d 239, 2444 (5th Cir. 2002) ("This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony.") Courts must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co*., 526 U.S. at 152. Neither Rule 702 nor Rule 704 "permits expert witnesses to offer conclusions of law." *C.P. Interests, Inc. v. Calif. Pools Inc.*, 238 F.3d 690, 697 (5th Cir. 2001); *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997); *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F.Supp.2d 776, 811 (N.D. Tex. 2013) (striking portions of expert's opinions because they improperly "attribute[d] legal significance to certain facts, which is not helpful to the trier of fact and must be excluded under Rule 702"). Expert testimony must also demonstrate "the necessary indicia of intellectual rigor." *Wells v. SmithKline Beecham Corp*., 601 F.3d 375, 379 (5th Cir. 2010).

Testimony from human resources "experts" in discrimination and retaliation cases is particularly problematic, as courts have recognized, because such testimony often consists of legal opinions on the one hand, and, on the other, the type of common-sense matters that the jury can easily decide for themselves. *See e.g., Neely v. PSEG Texas, LP*, MO-10-CV-030, 2012 WL 12877923 at *3 (W.D. Tex. May 29, 2012) (Apx. 96); *Hernandez v. City of Vancouver*, C04-5539 FDB, 2009 WL 279038 at *5 (W.D. Wash. Feb. 5, 2009) (Apx. 21);

In the Fifth Circuit, expert testimony "as to legal matters" must "involve questions of fact." *Askanase v. Fatjo*, 130 F.3d 657, 672 (5th Cir. 1997). It is well-established that jurors defer to experts. *Id*. at 673. Because legal opinion testimony can easily confuse a jury, legal conclusions by experts are not permitted. *See Est. of Sowell v. United States*, 198 F.3d 169, 171-172 (5th Cir. 1999); *See Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009) ("Nevertheless, an expert may never render conclusions of law.");

At trial, Sherrod admitted that she has *no* knowledge whatsoever of the actual facts of the case, instead having only reviewed the allegations written by counsel in the initiating complaint. Therefore, Sherrod could not possibly have applied her knowledge to the facts of this case as required by Rule 702. Trial Transcript at 2-35:17-2-37:3. Of course the allegations in the Plaintiff's complaint, which are hearsay drafted by an attorney, are not evidence. *Hines v. Tex-Tube Co*., No. CV H-09-0221, 2010 WL 11583240 at *2 (S.D. Tex. June 2, 2010) (Apx. 33). And, accordingly, Sherrod's testimony lacked *any* factual foundation. *See Jones v. Slay*, No. 4:12-CV-2109 CAS, 2014 WL 2804407 at *6 (E.D. Mo. June 20, 2014) (Apx. 83) (striking as "impermissible" portions of expert opinion that was based on the assumptions that the complaint's allegations were all true). Also lacking at trial was any evidence that Sherrod's analysis or methodology were reliable or scientifically valid, as required. *See Kumho Tire Co*., 526 U.S. at 152.

Additionally, Sherrod should have been excluded because of bias. She is a former discrimination/retaliation plaintiff who was represented by the same attorneys as Plaintiff. Trial Transcript at 2-33:5-2-34:5. *See Estate of Haeuser v. Westchester Surplus Lines Ins. Co.*, No. 135631 2015 WL 1040439 (E.D. La. Mar. 10, 2015) (Apx. 7). She has exclusively testified on behalf of Plaintiffs and *only* in cases handled by Plaintiff's counsel's firm. *Id*.; *See also Johnson v. United States*, 597 F. Supp. 374, 411 (D. Kan. 1984). Sherrod was nothing more than an advocate for Plaintiff and her counsel in the guise of an expert. *See id.*

Ultimately, Sherrod testified that based solely on her review of the allegations in the Complaint, there was a "system failure" by FedEx to "monitor the workplace" with regard to certain "safety protocols." Trial Transcript at 2-12:24 to 2-31:5. This was based on an alleged duty FedEx had to "prevent" violations of those laws. Trial Transcript at 2-6:17 to 2-7:22. While employers may have an obligation to exercise reasonable care to prevent discrimination and retaliation, the duty does not rise to nearly the level that Sherrod advocated, which is to "monitor" the workplace to ensure employee "safety," as if an employer has the same duties under Title VII as it does under OSHA to provide a safe working environment. *See Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 72 (1986) (employers are not strictly liable for acts of employees under Title VII); *cf American Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 493- (1981) (discussing duty under OSHA to "assure" "safe and healthful working conditions"); *see Jacobs v. Northern King Shipping Co.*, No. 97-772, 1998 WL 28234, at *2 (E.D. La. Jan. 23, 1998) (Apx. 81). Accordingly, by attempting to hold FedEx to a higher standard than what Title VII and Section 1981 require, Sherrod's testimony not only lacked the proper foundation, it was, in effect, an incorrect and prejudicial instruction on the law. *See Thomson v. Rook*, 255 F. Supp. 2d 584, 587 (E.D. Tex. 2001).

Sherrod also offered testimony of various generic statistics regarding retaliation in the workplace. Yet, she admittedly could not tie those statistics to FedEx or the facts of this case. Trial Transcript at 2-10:10-2-12:9 and 2-34:6-23. In fact, when asked on cross examination whether she had done any of her own research to confirm whether the statistical information she provided is true as to FedEx, Sherrod responded "Not in particular to FedEx." Trial Transcript at 2-35: 3-7. See *Hernandez v. Rush Enterprises, Inc.*, No. 4:19-CV-00638, 2021 WL 857987 (E.D. Tex. Mar. 8, 2021) (Apx. 25) (court struck identical statistical information finding it would not assist the factfinder in deciding the case); *Sherrod v. United Way of Tarrant County*, 4:17-cv-00758-0, 2018 WL 10435245, at *1 (N.D. Tex. Dec. 11, 2018) (Apx. 110).

Sherrod further testified, without any foundational knowledge whatsoever, that FedEx's human resources personnel failed to adequately investigate Plaintiff's complaints and lacked qualifications to serve in their functions. Trial Transcript at 2-15:15 to 2-30:20. Yet, she testified that she was not personally familiar with these individuals, never saw their resumes and evaluated their actual training and experience (Trial Transcript 2-40:19 to 2-41:5; 2-43:7-20), never reviewed the investigation documents, and never spoke with any witnesses. Trial Transcript at 2-41:16 to 2-48:15. Her testimony was based entirely on reference to standards set forth in a human resources "Bible" (a copy was not provided) published by a third-party organization and her assumption, based solely on the allegations in the complaint, that retaliation occurred. Trial Transcript at 2-14:5 to 2-15:5.

Finally, Sherrod was allowed to provide an opinion, without any foundation, on the ultimate issue the jury was empaneled to decide, *i.e.*, whether or not FedEx engaged in unlawful discrimination and retaliation. While Rule 704(a) does permit expert opinion on ultimate issues, the fact that Sherrod did so without any understanding of or application to the actual facts in this

case serves to underscore the extreme prejudice suffered by FedEx in permitting her to testify without meeting the requirements of Rule 702. The following exchange was allowed to occur between Plaintiff's counsel and Sherrod over Defendant's objection:

> Question: So now, before we get into your qualifications, which I am going to do, and the tools you had to obtain your opinion, can you tell us as to HR standards what is your bottom-line opinion?
>
> [Objection by Defendant's counsel under Rule 702(a), (b), and (d) overruled.]
>
> Answer: So, my opinion is that they didn't follow normal protocol and procedure, and that discrimination and retaliation did occur.

Trial Transcript at 2-7:8-17.

The prejudicial impact of such ultimate-issue testimony by Sherrod is plain, especially considering the fact that Sherrod's testimony lacks *any* foundation in the actual factual record in the case, and the *sole* basis for Sherrod's opinion was the hearsay complaint drafted by Harris's counsel. *See, e.g., Jones, supra*, 2014 WL 2804407 at *6 (concluding that testimony based on the presumption that the facts stated in a complaint are true is nothing more than an "impermissible opinion[] that vouch[es] for the plaintiffs' credibility and invade[s] the province of the jury.")

FedEx objected to Sherrod's testimony both at trial and in a pre-trial motion to strike. Trial Transcript at 2-7:12-13 to 2-8:3 and 2-48:25 to 2-49:2; ECF 054. Nevertheless, the Court denied such motion, denied FedEx's repeated objections at trial, and allowed Sherrod to testify. Trial Transcript at 2-7:12-13 to 2-8:3 and 2-48:25 to 2-49:2; ECF 071.

### C.  **The Court Improperly Sustained Plaintiff's *Batson* Challenge to Juror No. 10.**

FedEx requests a new trial due to the Court having incorrectly sustained a *Batson* challenge to FedEx's exercise of a peremptory strike as to Juror No. 10.

The Supreme Court has outlined a three-step process for determining whether preemptory strikes have been applied in a discriminatory manner. First, the claimant must make a *prima facie*

showing that the peremptory challenges have been exercised on the basis of race. Second, if this requisite showing has been made, the burden shifts to the party accused of discrimination to articulate race-neutral explanations for the peremptory challenges. Third, the trial court must determine whether the claimant has carried his burden of proving purposeful discrimination. *Batson v. Kentucky*, 476 U.S. 79 (1986). The court must conduct each of these steps separately and in this precise sequence – the steps may not be consolidated. *Purkett v. Elem*, 514 U.S. 765, 768 (1995). The burden of persuasion lies at all times with the party making the challenge and may not be shifted to the party having exercised the peremptory strike at issue. *Id.* at 768; *McFerron*, *supra,* 163 F.3d at 953-954. Failure by the Court to properly apply the *Batson* framework automatically invalidates the jury's verdict and is *not* subject to "harmless error" review. *Id* at 955-56; *Broussard*, *supra*, 987 F.2d at 221. Even if "harmless error" review is deemed necessary, the error was not "harmless" in any way because a juror likely to be sympathetic to Plaintiff was allowed to participate in the verdict. Trial Transcript 1-101:5-17.

At the second step of the Batson framework, the issue is merely the facial validity of the explanation. "Unless a discriminatory intent is inherent in the ... explanation, the reason offered will be deemed race neutral." *Hernandez, supra*, 111 S.Ct. at 1871.

FedEx exercised a peremptory strike as to Juror No. 10, and Plaintiff made a *Batson* challenge based on the allegation that FedEx was attempting to strike this juror due to her race because she was the only African American remaining on the panel. Trial Transcript at 1-94:22-1-95:11. FedEx proffered a racially neutral reason for striking the juror, namely the fact that she is a paralegal at a law firm that has recently taken a plaintiff's civil case. Trial Transcript at 1-95:12-1-96:13. As FedEx explained, there are two separate and independent reasons for this: (1) the instant case was also a civil case on behalf of a plaintiff, meaning Juror No. 10 might be unduly

sympathetic to Plaintiff here; and (2) paralegals often work under difficult conditions reporting to demanding attorneys, and thus may be more sympathetic to claims of an ex-employee complaining about his or her working conditions. *Id*.

The Court then argued that FedEx did not strike another juror (No. 1), who the Court contended was also a paralegal. Trial Transcript at 1-96:12-16. At this moment, it should be noted that by responding directly to, and arguing with, FedEx's proffered race-neutral explanation, instead of placing the burden on the Plaintiff to respond to such neutral explanation, the Court erred in applying the *Batson* procedure and committed reversible error. *See U.S. v. Kimbrel*, 532 F.3d 461, 467-468 (6th Cir. 2008). In *Kimbrel*, the district court conflated steps two and three of the *Batson* framework when, after hearing a proffered race-neutral explanation from the party who exercised the peremptory strike at issue, the trial court argued with the proffered neutral explanation rather than seeking argument from the party making the *Batson* challenge. *Id.* The district erred by "assessing the persuasiveness of [the] proffered explanation without first acknowledging that he had come forward with a race-neutral justification." *Id* at 467, *citing Purkett*, 514 U.S. at 768. And, as in *Kimbrel*, the failure by the Court in the instant case to follow the three-steps of the *Batson* analysis separately and in sequence, and the fact that the Court effectively shifted the burden of persuasion to FedEx, committed reversible error that *automatically* requires a new trial and is *not* subject to "harmless error" review. *Kimbrel, supra*, 532 F.3d at 468-469.

FedEx then nevertheless argued that Juror No. 1 was a government lawyer (not a paralegal as the Court stated) who did not take plaintiffs' civil cases and had a different economic/social status than a paralegal. Trial Transcript at 1-96:15-20; 1-18:18-1-22:2. *See United States v. Pofahl*, 990 F.2d 1456, 1466 (5th Cir. 1993), cert. denied, 510 U.S. 898 (1993). Nevertheless, the Court

mistakenly asserted that Juror No. 1 is similar because government agencies bring civil rights suits. FedEx reminded the Court that Juror No. 1 indicated during *voir dire* that while this may be true, she does not personally work on any such matters. Trial Transcript at 1-97:14-17; 1-18:20 to 1-21:22.

      The Court next, and belatedly, turned to Plaintiff for a response, and Plaintiff's counsel proceeded to adopt the Court's erroneous arguments. Trial Transcript at 1-97:18 to 1-98:7. FedEx again pointed out the distinction between a paralegal and a lawyer and the roles they fill, yet the Court sustained the *Batson* challenge despite this race-neutral distinction and empaneled Juror No. 10. *Id* at 1-98:9-1-100:5.

      In addition to erroneously recalling the answers of Juror No. 1 and failing to follow the *Batson* three-step analysis in the proper sequence, the Court also improperly handled the procedure for the challenge by first informing counsel they should be prepared to approach the bench for a sidebar outside the presence of the jury venire if they had any questions or concerns and subsequently soliciting in open court whether the parties had any such concerns both after the initial panel was called and then after the revised panel was empaneled. Trial Transcript at 1-93:23 to 1-94:16; 1-101:8-12. Juror No. 10, who was present for all such proceedings, must have known FedEx had stricken her, and given her paralegal background, she may have even known that the Judge called her back because he believed FedEx struck her solely based on her race. Trial Transcript at 1:92:24 to 1-93:3; 1-100:25 to 1-101:7. The potential prejudicial effect on Juror No. 10 against FedEx is obvious and supports the conclusion that the Court's handling of the *Batson* challenge was reversible error. 1:92:24 to 1-93:3; 1-93:23 to 1-94:16; 1-100:25 to 1-101:7; 1-101:8-12.

      ///

## VII.    <u>CONCLUSION.</u>

For the reasons set forth above, FedEx requests the Court enter judgment in its favor, or, in the alternative, reduce the amount of monetary relief to conform with the law, or as further alternative relief, grant a new trial.

DATED: January 12, 2023

<div style="margin-left:40%">

Respectfully submitted,

<u>/s/ Barak J. Babcock</u>
Barak J. Babcock
Tennessee Bar No. 024021
SD No. 10522941
ATTORNEY-IN-CHARGE
Christopher M. Ahearn
California State Bar No. 239089
Tennessee Bar No. 040043
(Admitted *Pro Hac Vice*)
FEDERAL EXPRESS CORPORATION
3620 Hacks Cross Road,
Bldg. B, 3rd Floor
Memphis, TN 38125-8800
Telephone: (901) 434-8523
Facsimile: (901) 492-9930
Email: barak.babcock@fedex.com
Email: christopher.ahearn@fedex.com
**ATTORNEYS FOR DEFENDANT**

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was filed with the Clerk of the Court using the CM/ECF system, which will send a copy to all attorneys of record.

<div style="margin-left:40%">

s/*Barak J. Babcock*

</div>